IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-512-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., ANJELICA BROWN, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT IN INTERVENTION** |
| MINDPATH CARE CENTERS, NORTH CAROLINA, PLLC, JEFF WILLIAMS, ABIGAIL SHERIFF, SARAH WILLIAMS, | ) ) ) ) | **JURY DEMAND** |
| Defendants. | ) ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby files this Complaint in Intervention and states as follows:

## INTRODUCTION

1. This is an action brought by the United States of America ("United States" or "Government") to recover statutory damages, civil penalties, and investigative costs under the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq. ("the False Claims Act" or "the FCA"). The Government also brings this action to recover all available damages and other monetary relief under the common-law or equitable theories of fraud, unjust enrichment, and payment by mistake of fact.

2. The Government has intervened in this action, as to Defendants Mindpath Care Centers, North Carolina, PLLC; Jeff Williams; Abigail Sheriff; and Sarah Williams (collectively, "the Mindpath Defendants"), which alleges false claims to Medicare for

1

improperly billing Psychotherapy claims as "add-on" codes to Evaluation and Management ("E/M") sessions.

3. The Defendants made and caused false claims by billing Psychotherapy treatments (Current Procedural Terminology ("CPT") 90833) without documentation to establish at least 16 minutes of actual face-to-face patient time for separate and distinct Psychotherapy treatments ("Psychotherapy"), or documentation of the Psychotherapy treatment provided, goals of treatment, improvement based upon treatment plan, patient response, and rationale for Psychotherapy treatment.

4. These 90833 Psychotherapy claims were separately billed along with Evaluation and Management sessions (typically using E/M CPT codes 99213 or 99214) without adequate documentation of the Psychotherapy treatment time that was separate and distinct from the E/M office visits.

5. The Government's claims arise out of the Defendants' knowingly (including reckless disregard and deliberate ignorance) and routinely billing for both Psychotherapy and E/M claims without the required documentation, creation of false records or statements, and submission of false or fraudulent claims to the Medicare Program ("Medicare").

6. Specifically, Defendants failed to adequately document their 90833 Psychotherapy treatments in the medical records, including the minutes of separate and distinct Psychotherapy time, the clearly defined Psychotherapy treatment utilized, the goals of the Psychotherapy treatment, the expectation that treatment will improve compliance with the medical treatment plan, the response to the Psychotherapy

treatment, and the rationale for the frequency and duration of Psychotherapy treatment.

7. Stated bluntly, Defendants systematically billed for fraudulent Psychotherapy treatments, without required documentation of the separate time and Psychotherapy treatment of patients, in order to maximize their profits, all in blatant disregard of Medicare billing requirements.

8. Mindpath was paid over $1,600,000 by Medicare for 2018-2020, for just these 90833 Psychotherapy claims at issue.

## JURISDICTION AND VENUE

9. This action arises under the False Claims Act, 31 U.S.C. § 3729, et seq., as amended, and the common law. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1331, and 31 U.S.C. § 3732(a).

10. Venue is proper in the Eastern District of North Carolina pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a). Specifically, at minimum, at least some of the Defendants reside, can be found, and transact business in the Eastern District of North Carolina within the meaning of 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a). Moreover, a substantial part of the events or omissions giving rise to this complaint – i.e., many of the acts proscribed by the federal False Claims Act – also occurred within this District.

## PARTIES

11. Plaintiff United States is acting on behalf of its agency, the United States Department of Health and Human Services ("DHHS"). DHHS is an agency and

instrumentality of the United States, and its activities, operations, and contracts are paid from federal funds.

12.     Relator Anjelica Brown ("Relator Brown") is a resident of North Carolina, and worked as an office manager for Mindpath during 2019, 2020, and 2021.

13.     Defendant Mindpath Care Centers, North Carolina, PLLC, ("Mindpath") is a Professional Limited Liability Company organized under the laws of the State of North Carolina.  Mindpath previously did business as Carolina Partners in Mental Health, was founded in 1994 by Dr. Yvonne Monroe, Dr. Steven Monroe, and Stan Monroe, and was acquired by River Cities Capital Fund VI in 2018, and then by Community Psychiatry in 2021.  Mindpath is a Provider for Medicare, and is responsible for the claims billed for 2018 through 2020 for the services provided by Mindpath employees who were individual Providers, including Psychiatrists, Nurse Practitioners, and other medical professionals.

14.     Defendant Jeff Williams ("Jeff Williams") was the Chief Executive Officer of Mindpath during 2018 to 2020.  On information and belief, he is a citizen of North Carolina and a resident of Wake County.

15.     Defendant Abigail Sheriff ("Sheriff") was the Chief Operating Officer of Mindpath during 2018 to 2020.  On information and belief, she is a citizen of North Carolina and a resident of Durham County.

16.     Defendant Sarah Williams ("Sarah Williams") was the Front Office Operations and Customer Service Manager of Mindpath during 2018 to 2020.  On information and belief, she is a citizen of North Carolina and a resident of Wake County.

4

17.     Defendants advertise that they provide diagnosis, medication management, and psychiatric evaluations through in-person and telehealth appointments, as well as other mental health services.

18.     Mindpath obtained millions from Medicare during 2018 through 2020, and bills Medicare for all of its employee Providers.

## LEGAL BACKGROUND

19.     The False Claims Act establishes liability to the United States for an individual who, or entity that, "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" (31 U.S.C. § 3729(a)(l)(A)); "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" (31 U.S.C. § 3729(a)(l)(B)); "improperly avoids or decreases an obligation to pay" (31 U.S.C. § 3729(a)(l)(G)), or "conspires to commit a violation" of these provisions (31 U.S.C. § 3729(a)(l)(C)).

20.     "Knowingly" is defined under the FCA to include not just actual knowledge, but also reckless disregard and deliberate ignorance, and requires no proof of specific intent to defraud. 31 U.S.C. § 9729(b)(l).[1]

21.     Defendants are liable under the FCA because Defendants knowingly presented or caused to be presented false or fraudulent claims to Medicare for reimbursement that violate the FCA; knowingly made or used, or caused to be made or used, false records or statements material to a false or fraudulent Medicare claim;

---

[1] As used in this complaint, all references to Defendants' knowledge are intended to encompass actual knowledge, deliberate ignorance, and reckless disregard.

improperly avoided or decreased an obligation to pay or transmit money to the government; and conspired to violate the FCA.

22.    Defendants' failure to comply with Medicare policies and requirements for the services billed and the claims submitted was material to the Medicare Program's decisions to pay for these services.

## THE MEDICARE PROGRAM

### I.    OVERVIEW.

23.    Title XVIII of the Social Security Act, 42 U.S.C. § 1395, et seq., establishes the Health Insurance for Aged and Disabled Program, commonly known as the Medicare Program.  Medicare is a federally funded health care program for the elderly and the disabled.

24.    The benefits available under Medicare are prescribed by statute and by federal regulations under the auspices of DHHS, through its agency, CMS.  Individuals who receive benefits under Medicare are commonly referred to as Medicare beneficiaries.

25.    Medicare contains four parts (Parts A, B, C and D), but only Part B is at issue here.  Medicare Part B provides reimbursement for reasonable and necessary medical services by physicians, practices, and other Medicare Providers.

26.    The United States provides reimbursement for Medicare claims through CMS.   CMS, in turn, contracts with private insurance carriers called Medicare Administrative Contractors ("MAC") to administer, process, and pay claims under the Medicare Part B Program, and the MACs act on behalf of CMS.  42 U.S.C. § 1395kk-1.

6

## II. MEDICARE ENROLLMENT APPLICATIONS AND PAYMENTS TO MEDICARE PROVIDERS.

27.     Medicare generally makes payments directly to Medicare suppliers (commonly known as Medicare Providers), rather than to the Medicare beneficiary, who is the patient.

28.     Medicare makes payments directly to Medicare Providers when the Medicare patient assigns to the Provider, and the Provider accepts assignment of, the right to payment.

29.     When a Medicare patient has assigned the right to payment to the Provider, the Provider may submit its bill directly to Medicare, rather than to the patient, for payment.

30.     Medicare Providers must submit enrollment applications to CMS to establish their eligibility to participate in the Medicare Program.

31.     When a Medicare Provider signs a Medicare enrollment application, the Provider agrees to adhere to Medicare program policies, along with other federal regulations and Medicare billing instructions.

32.     Medicare requires compliance with its program policies, instructions, and guidelines (including those issued by Medicare's contractors), along with other federal laws and regulations, as a precondition for government payment under Medicare Part B.

33.     More specifically, to be eligible for payment under Medicare, physicians and certain non-physician practitioners (including physician assistants and nurse

7

practitioners) must complete a CMS Form 855-I enrollment form. That form requires the practitioners to certify in part as follows:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 4A of this application. The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor. I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare. . . . I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

34. CMS Form 855-B enrollment form, which is completed by certain clinics and group practices like Mindpath, similarly binds the practice to the laws, regulations, and instructions applicable to Medicare.

35. The required Electronic Data Interchange Enrollment Form application provided that the Mindpath Providers "agreed to abide by Medicare laws, regulations and program instructions", that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions" and the Providers "will not knowingly present or cause to be presented a false or fraudulent claim for payment."

36. The required Electronic Data Interchange Enrollment Form provided that Mindpath and its Providers would be responsible for electronic claims, that their Provider electronic signature is assurance that the claims are "accurate, complete, and

truthful", and that anyone who causes "any record or other information relating to that claim" to be falsified may be subject to fine or imprisonment.

37. On information and belief, Mindpath Providers signed the Electronic Data Interchange Enrollment application and multiple CMS Forms 855-I and 855-B for themselves and the Mindpath practice.

38. At all times relevant to this Complaint, Mindpath and its employee Providers were enrolled and participating Medicare Providers.

39. Mindpath's enrollment applications, along with the Medicare policies applicable to the types of medical services delivered by Mindpath, require that all claims submitted comply with Medicare policies, regulations, and instructions, be for medically necessary services, and be an accurate representation of the services provided.

### III. PROVIDER CLAIM FORMS AND BILLING MEDICARE PART B.

40. To be eligible to bill Medicare and thus receive reimbursement for medical services provided to Medicare patients, a physician, practice, or other Medicare Provider must have a unique National Provider Identifier ("NPI").

41. CMS contracts with an entity known as the Enumerator (or National Plan and Program Enumeration System), which assigns NPIs to Medicare health care Providers.

42. An NPI constitutes a Medicare Provider's legal electronic signature and, when used for submitting claims to Medicare, it constitutes an assurance by the Provider that services were performed as billed.

43. All claims for Medicare reimbursement must be submitted under a valid NPI.

9

44.    At all times relevant to this Complaint, Mindpath had its own NPI and its individual Providers had their own NPIs, including but not limited to Providers KW, EB, LG, and YM.

45.    To bill the Medicare Part B Program, the Medicare Provider must submit a claim form CMS 1500, or an electronic equivalent, to the appropriate MAC.

46.    Medicare requires compliance with the terms of the claim form (CMS 1500) as a precondition of government payment.

47.    CMS Form 1500 notifies the Medicare Provider submitting the claim that the Provider is "submitting this claim for payment from federal funds" and in the section entitled "Signature of Physician" requires the Provider to certify as follows:

1) the information on this [Form 1500] is <u>true, accurate and complete</u>;

2) I have <u>familiarized myself with all applicable laws, regulations, and program instructions</u>, which are available from the Medicare contractor;

3) I have provided or <u>will provide sufficient information required to allow the government to make an informed eligibility and payment decision</u>;

4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare . . . laws, regulations, and program instructions for payment . . . ;

5) the <u>services on this form were medically necessary</u> and personally furnished by me or were furnished incident to my professional service by my employee under my direct supervision, except as otherwise expressly permitted by Medicare . . . .  NOTICE: Anyone who misrepresents or falsifies essential information to receive payment from Federal funds requested by this form may upon conviction be subject to fine and imprisonment under applicable Federal laws.

(emphases supplied)

48. CMS Form 1500 also requires the Provider to acknowledge that: "Any person who knowingly files a statement of claim containing any misrepresentation or any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties."

49. Because it is not feasible for Medicare to review every medical record for the millions of claims for payments received annually, the Medicare Program relies upon Providers to comply with Medicare requirements and trusts Providers to submit truthful and accurate certifications and claims.

50. Generally, once a Provider submits CMS Form 1500 to Medicare, the claim is paid directly to the Provider without any review of supporting documentation, including required medical records, because it is not feasible to review medical documentation for every claim.

51. CMS regulations require Medicare Providers to use the American Medical Association's Current Procedural Terminology ("CPT") numeric codes to describe, in their claims to Medicare, the procedures or services rendered.

52. Medicare covers only reasonable and necessary medical services. 42 U.S.C. § 1395y(a)(l); 42 C.F.R. § 411.15(k)(l).

53. Whether services are reasonable and necessary is based upon, among other things, the accepted standards of care, CPT service or procedure requirements, and whether the services are appropriate for Medicare patients, including duration, frequency, setting, and other criteria.

54. Medicare Providers have a duty to provide services only when they are medically reasonable and necessary. 42 U.S.C. § 1320c-5(a).

11

55.    Medicare requires Providers to retain medical records and documentation in support of each claim.

56.    Medicare requires compliance with Medicare Program policies, along with other federal regulations and program instructions, as a precondition of government payment.

## PSYCHOTHERAPY TREATMENTS AT ISSUE

57.    As stated above, Medicare does not cover services that are not medically reasonable and necessary, including services for which available medical records do not document medical necessity and compliance with Medicare requirements.

58.    Medicare Providers are not entitled to bill or receive payment for Psychotherapy treatments that are not "reasonable" and medically "necessary." 42 U.S.C. § 1395y(a)(1)(A); see also 42 U.S.C. § 1320c-5(a)(l).

59.    Simply stated, Medicare allows Providers to bill and be reimbursed for an E/M code (e.g., CPT codes 99212-99215 for established outpatients), along with a Psychotherapy "add-on" code (i.e., CPT code 90833), when the Provider provides separate Psychotherapy treatment as part of a patient's regular office visit.

60.    The E/M code and the 90833 Psychotherapy code must be separately documented in the Provider's medical records.

61.    Both the E/M code and the 90833 Psychotherapy code are payable only if they are billed correctly and both are significant and separately identifiable.

62.    The E/M codes recognize several components: history, examination, medical decision making, counseling and/or coordination of care, nature of the presenting problem, and time.

12

63.     The E/M sessions are based upon multiple factors, and the typical time expected must be considered along with the other factors.

64.     The applicable CPT code book description for E/M CPT code 99213, provides for an office visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: an expanded problem focused history, an expanded problem focused examination, or medical decision making of low complexity.

65.     The applicable CPT code book description for E/M CPT code 99213 states that the presenting problems are usually of low to moderate severity and 15 minutes are typically spent face-to-face with the patient and/or family.

66.     The applicable CPT code book description for E/M CPT code 99214, provides for an office visit for the evaluation and management of an established patient, which requires at least 2 of these 3 components: a detailed history, a detailed examination, or medical decision making of moderate complexity.

67.     The applicable CPT code book description for E/M CPT code 99214 states that the presenting problems are usually of moderate to high severity and 25 minutes are typically spent face-to-face with the patient and/or family.

68.     Psychotherapy CPT Code 90833 is an "add-on" code for Psychotherapy treatment that can only be used in conjunction with an E/M code billed on the same day by the same Provider.

69.     Psychotherapy CPT Code 90833 is a time-based code of no less than 16 minutes, and up to 37 minutes.

13

70.    The applicable Local Coverage Determination (LCD L37638) provides Coverage Indications, Limitation and Medical Necessity guidance for psychological intervention, including CPT 90833 Psychotherapy treatments, and states documentation requirements for psychological intervention service as follows:

> For the intervention service, evidence to support medical necessity must include, at a minimum, the following elements:
>
> - Evidence that the patient has the capacity to understand and to respond meaningfully;
> - Clearly defined psychological intervention planned;
> - The goals of the psychological intervention;
> - The expectation that the psychological intervention will improve compliance with the medical treatment plan;
> - The response to the intervention, and;
> - Rationale for frequency and duration of services.
>
> For all claims, the time duration (stated in minutes) spent in the Health and Behavioral Assessment or Intervention encounter must be documented in the record.
>
> All coverage criteria must be clearly documented in the patient's medical record and made available to the A/B MAC upon request.

71.    Providers must document at least 16 minutes of face-to-face Psychotherapy treatment time in order to properly bill for 90833 Psychotherapy treatment claims, and the total Psychotherapy time cannot include the E/M time.

72.    Providers are required to document the start and stop times or total time devoted to the Psychotherapy treatment (as separate and distinct from the E/M time) in their medical records in order to properly bill 90833 Psychotherapy claims.

73.    The time requirement for Psychotherapy CPT Code 90833 (that is, no less than 16 minutes and no more than 37 minutes) is limited to face-to-face Psychotherapy

14

services with the patient, i.e., the patient must be present for the Psychotherapy treatment provided.

74. A 90833 Psychotherapy code must not be billed when the service is not primarily Psychotherapy treatment, that is, when the service could be more accurately described by an E/M office counseling code or other code.

75. The Psychotherapy treatment, including the required time, must be documented as a separate and distinct treatment from the E/M services that were separately billed.

76. The Provider is required to maintain medical records supporting Psychotherapy treatments billed for Medicare beneficiaries.

77. The Providers' medical records must document the actual therapeutic modality, technique, maneuver, or treatment provided to bill 90833 Psychotherapy claims.

78. These 90833 Psychotherapy modality, technique, maneuver, or treatment services can be behavior modification therapy, or supportive or interpretive interactions, that were applied to produce a therapeutic change.

79. Specifically, Providers' medical records must document the clearly defined Psychotherapy treatment utilized, the goals of the Psychotherapy treatment, the expectation that treatment will improve compliance with the medical treatment plan, the response to the Psychotherapy treatment, and the rationale for frequency and duration of Psychotherapy treatment.

80. To claim Medicare reimbursement for both E/M and 90833 Psychotherapy, the two services must be significant and separately identifiable.

15

## MEDICAL RECORDS REQUIREMENTS

81.    Medicare requires Providers to maintain complete medical records that justify the services rendered and each claim billed.

82.    Mindpath's requirement to maintain their patients' medical records was established in the Medicare participation agreements, program rules, and guidance provided.

83.    The regulations require Providers to support claims to Medicare by appropriate evidence of medical necessity and quality of the services in a form and fashion, and at such time, as required.  42 U.S.C. § 1320c-5.

84.    Mindpath was required to document and retain medical records to support the Psychotherapy and E/M services at issue.

## GENERAL FACTUAL ALLEGATIONS

## FALSE CLAIMS SUBMITTED BY THE MINDPATH DEFENDANTS

85.    In 2018-2020, Mindpath routinely billed Medicare for Psychotherapy services rendered by its Providers, using the 90833 Psychotherapy CPT code as an "add-on" to E/M office visits.

86    Mindpath failed to maintain and provide medical records to document the time and the other Psychotherapy treatment requirements for the 90833 Psychotherapy claims billed.

87.    On information and belief, from 2018 to 2020, Mindpath had over 150 Providers at approximately 20 locations in North Carolina that billed Medicare.

16

88.     On information and belief, from 2018 to 2020, most Mindpath E/M office visits in North Carolina were related to patients obtaining medication prescriptions, and did not involve substantial additional services.

89.     From 2018 to 2020, Mindpath routinely submitted 90833 Psychotherapy claims without documenting in its medical records at least 16 minutes of separate and distinct Psychotherapy time and identifiable Psychotherapy treatments as required.

90.     Mindpath and its Providers failed to document the time required for Psychotherapy claims, or overstated the time in their medical records in order to justify 90833 Psychotherapy claims.

91.     From 2018 to 2020, Mindpath submitted 90833 Psychotherapy claims to Medicare without documentation in Mindpath's medical records that its Providers rendered separate and distinct Psychotherapy treatments.

92.     From 2018 to 2020, Mindpath submitted 90833 Psychotherapy claims to Medicare without documentation in Mindpath's medical records that identified that separate and distinct Psychotherapy treatment modalities or techniques were applied to produce therapeutic change.

93.     From 2018 to 2020, Mindpath submitted 90833 Psychotherapy claims to Medicare without identifying the clearly defined Psychotherapy intervention planned, the goals of the Psychotherapy, the response to the Psychotherapy, and other required documentation in the medical records.

94.     From 2018 to 2020, Mindpath routinely failed to provide separate and distinct Psychotherapy treatment, in addition to the E/M office visit, as required for the 90833 Psychotherapy billed.

17

95. On information and belief, from 2018 to 2020, some Mindpath Providers completed their timekeeping records before patient visits occurred.

96. From 2018 to 2020, Mindpath sometimes billed Medicare for the inaccurate 90833 Psychotherapy claims for services not provided because the patient declined Psychotherapy treatment or did not attend his or her scheduled appointment.

97. From 2018 to 2020, Mindpath billed Medicare for patients who did not attend scheduled sessions, or declined Psychotherapy sessions, and did not accurately report the time for 90833 Psychotherapy sessions, or correct claims as required.

98. The medical records for a substantial percentage of the 90833 Psychotherapy treatments that Mindpath billed to Medicare from 2018 to 2020 fail to establish medical necessity for Psychotherapy treatments or Medicare Program compliance for these treatments.

## MINDPATH DEFENDANTS KNOWINGLY CAUSED FALSE CLAIMS

99. Defendants knew that Mindpath's certifications and claims for reimbursement for 90833 Psychotherapy treatments submitted to Medicare were false, or at least deliberately ignored and/or recklessly disregarded the truth or falsity of those certifications and claims.

100. Defendants made and used false records, including false timekeeping records, false records as to the separate and distinct time for the Psychotherapy treatments (in addition to the E/M office visit), and other false medical records to support their false claims.

18

101. From 2018 to 2020, Mindpath systematically submitted 90833 Psychotherapy claims to Medicare for its Providers without documentation of the minimum 16 minutes of separate Psychotherapy time required.

102. From 2018 to 2020, Mindpath systematically submitted 90833 Psychotherapy claims to Medicare for its Providers without documentation of the additional Psychotherapy treatments being provided, including but not limited to a lack of description of separately identifiable Psychotherapy treatment techniques provided, goals of the Psychotherapy treatment, compliance with the medical treatment plan, or response to Psychotherapy treatment.

103. Mindpath was aware of the time expected for 90833 and E/M billing codes before 2018.

104. For example, Defendant Sheriff stated in an email on June 1, 2015, that "Right now folks are doing 99214/90833s as a 45 minute session and 99213/90833 as 30 minutes. So if it's really legit to increase the number per hour to two and three respectively, that would be super valuable info."

105. On information and belief, before 2018, Mindpath held a staff meeting at which Mindpath officers communicated that billing E/M claims alone would not be enough for Mindpath's economic survival, and directed staff to bill 90833 Psychotherapy claims along with the E/M claims.

106. Mindpath employees used AdvancedMD software to communicate about Mindpath claims in 2018 to 2020.

107. Mindpath AdvancedMD documentation from August 17, 2018, has notes stating patient requested a call from a Mindpath supervisor because "called several

19

months ago with billing concerns," that "each new provider is billing a more expensive visit" and that the patient was "concerned with our lack of documentation of his concerns and 'what I excpect [sic] to be fraudulent billing.'" See, Exhibit A (EHR message August 17, 2018).

108.   Mindpath AdvancedMD documentation has notes stating "DOS 9/19/18 NOTE IN EHR DOES NOT HAVE 90833 DOCUMENTED, BUT IT LOOKS LIKE IT WAS PAID BY INSURANCE" and patient is asking for notes and coding to be reviewed because "FEELS THE SECONDARY CODE IS IN ERROR, WILL YOU PLEASE REVIEW?". See, Exhibit B (EHR message January 28, 2019).

109.   In December 2018, Defendant Jeff Williams was notified by a Mindpath Provider and original company founder that Mindpath Providers were engaged in Medicare billing fraud for 90833 claims.

110.   Specifically, Defendant Jeff Williams was notified by email on December 17, 2018, that Mindpath's Chief Medical Officer had been upcoding 90833 and E/M codes "for a long time", that Jeff Williams was told that "coding 2 99214s and 2 +90833s every hour was fraud", that "it only takes one patient, who looks at their … statements and adds the times of the two codes together, to call Medicare", that "for the +90833 there has to be a time in and time out separate from that of the E&M 99214 code", that the email's author was "concerned about [the Medical Officer's] past choices leading to bad outcomes for [Mindpath] … B/c Abby [Sheriff] assigned him to co-train", and Mindpath "cannot afford to have a provider training coding and documentation when he is/has engaged in years of fraudulent behavior [and] has up-coded 40%."

20

111.   Further, Defendant Jeff Williams was warned on December 17, 2018, that Medicare will ask if Mindpath knew of past coding behavior when the Chief Medical Officer is audited, that he "has not turned himself in", that others will be responsible who "didn't report to Medicare", and that "we should ask a lawyer who specializes in these situations what we should do next."

112.   Jeff Williams responded to the email on December 17 and 18, 2018, that it is "best to discuss these matters in person" and discussion "needs to be taken offline (not in email) and stay there.  Period."

113.   On January 30, 2019, Jeff Williams asked in another email "How fast can we get a coder … Like fast so we also put out a written statement as part of the calming of the nerves?"; and Jeff Williams was then asked "What is it we want in writing?  That it is ok to do a level 4 [E/M] code and 90833 add on in 30 minutes provided the documentation supports it?"; and he responded "yes …. And what the documentation needs to look like … and settle the difference between LG and YM." [Initials used in original email].

114.   Jeff Williams did not stop Mindpath from routinely billing 90833 claims without documentation of the minutes required or the separate Psychotherapy treatments provided.

115.   Mindpath and Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams held a staff improvement meeting on or about March 30, 2019 ("March 2019 Meeting"), with numerous Mindpath employees.

116.   At the March 2019 Meeting, Relator Brown and other employees stated concerns about Mindpath's improper billing practices with respect to 90833

Psychotherapy claims, including the billing requirements for Psychotherapy treatments and documentation of time.

117. At the March 2019 Meeting, Mindpath officers directed Mindpath employees to report any billing concerns to Defendant Abigail Sheriff and Mindpath Human Resources Director Crystal Campbell.

118. Defendant Jeff Williams delegated the supervision of Mindpath's submission of 90833 claims to Defendant Sheriff.

119. Before and after this March 2019 Meeting, Mindpath employees raised concerns regarding billing for Psychotherapy and E/M claims without the requisite amount of time, including that Mindpath Providers inflated the time reported.

120. Mindpath took months to respond to billing concerns raised by Mindpath employees, and continued to bill Psychotherapy claims improperly.

121. A Mindpath administrative employee emailed Crystal Campbell and Abigail Sheriff on April 2, 2019, for Medicare beneficiary 94427, and stated that billing CPT codes 90833 and 99214 for that specific patient was egregious because the appointment was 10 minutes based upon time checked in and checked out, less than the time required for the 90833 claim without the E/M visit, and that the patients "are abused financially." See, Exhibit C (April 2, 2019, email).

122. Mindpath AdvancedMD documentation from April 2, 2019, shows notes stating "PT SAID SHE WAS GOING TO REPORT TO MEDICARE FOR CODING" and patient "IS DISPUTING CODES FOR 12/4/18 SAYING IT WASN'T AN INITIAL EVAL, AND 12/26/18 SAYING IT WAS A QUICK 5 MINUTE SESSION." See, Exhibit D (EHR message April 2, 2019).

123.  Relator Brown emailed Crystal Campbell, Abigail Sheriff, and another Mindpath employee on April 3, 2019, for Medicare beneficiary 76057, and stated directly that billing for this patient "goes against the coding guidelines noting that a 90833 appointment MUST be at least 16 minutes long" and that the 90833 claim for this patient was approximately 4 minutes as patient "checked in <u>at 8:30</u> and was checking out [and] scheduling his next appointment <u>at 8:34</u>."  See, Exhibit E (April 3, 2019, email).

124.  A resignation email from the Raleigh Office Manager to Defendant Sarah Williams, sent on or about June 6, 2019, stated in part that she (manager) was "present in meetings with upper management where the administrative staff have expressed their concerns over exorbitant billing/coding practices", that "[u]pper management has stated that the complaints have been heard and are being addressed; however, the only thing we have seen effectively change is the provider request off policy" [i.e., Provider leave request policy], that staff "were specifically asked in the Staff Improvement Conference meeting on March 30th [2019] to provide real time feedback on when these events were occurring with providers and [we] began to do so as soon as the following Monday", but "I personally ceased to pass along this information after not receiving any feedback on whether to continue doing so or not" and "I did not receive any acknowledgement from Abby [Sheriff] about my initial emails until June 4th – two months later."   See, Exhibit F (11:45 AM email).

125.  On information and belief, Mindpath employee Alyssa Kijewski resigned and had an exit interview with Defendant Sarah Williams on or about June 24, 2019,

that made clear to her that Sarah Williams and Abigail Sheriff knew about the billing problems and did not deem these billing problems important at that time.

126. Mindpath AdvancedMD documentation for a claim on September 3, 2019, shows notes stating "patient called about the 90833 code on her bill. She is typically only charged 1 code. There was nothing unique about the last appt and it was only 10-15 minutes. Looking at the note, I don't see a 90833 documented. Can you check the coding for DOS 9/3/19?" See, Exhibit G (EHR message October 4, 2019).

127. Relator Brown discussed these ongoing billing problems with Defendant Sarah Williams in person on September 13, 2019, including correcting coding behaviors and time discrepancies with Providers, as well as specific Providers not seeing patients for the full time required.

128. Defendant Sarah Williams admitted to Relator Brown on September 13, 2019, that "we want to stay on top of coding behaviors for Providers because it is a legal issue for us as a company", that it is "illegal coding" and she was "not going to say it's insurance fraud because it's not technically – well, it kind of is, but whatever."

129. Defendant Sarah Williams further admitted to Relator Brown on September 13, 2019, that it is "frustrating that problems are not going to be fixed overnight" and that they have to "allow powers that be time to make changes happen."

130. Mindpath and its officers were aware of the ongoing problems of 90833 Psychotherapy billing without the required documentation of the minimum time and separate Psychotherapy treatments.

131. Defendants were aware of the 90833 Psychotherapy billing without the required documentation of both minimum time and separate and distinct

24

Psychotherapy treatment by at least December, 2018, and did not stop these fraudulent billing practices.

132. On information and belief, Defendants caused and used false timekeeping records for 90833 Psychotherapy, including falsely recording a later end-time for Psychotherapy treatments, falsely recording an earlier start-time for Psychotherapy treatments, and failing to accurately distinguish between the separate Psychotherapy treatment time that was "added on" to the E/M treatment,.

133. Mindpath's Medical Director James Smith encouraged Providers to promptly delete their Provider notes that they wanted to delete in the AdvancedMD system in anticipation of an upcoming audit around July, 2019, being conducted by Blue Cross and Blue Shield. See, Exhibit H (EHR message July 26, 2019).

134. Defendants failed to train Mindpath Providers that the 90833 codes had to be based upon a minimum of 16 minutes of time, in contrast to the separate E/M codes that were based primarily upon complexity.

135. Mindpath's Providers understood the 2019 billing policy changes, including what was conveyed at the March 2019 Meeting, from Mindpath corporate officers and Defendant Abigail Sheriff to be that the billing combination of an "add on" 90833 code with an E/M code was based upon complexity and not based upon time.

136. For example, in an August 30, 2019 message, a Mindpath Provider sought to justify billing for both 90833 and 99214 codes for one 11 minute session that he considered complex based upon 2019 policy changes, explaining that the "new coding policy (meeting with Corporate and Abby [Sheriff]) . . . is according to case complexity not to time". See, Exhibit I (EHR message August 30, 2019).

137.    On information and belief, Relator Brown reviewed some Mindpath patient files for 90833 Psychotherapy claims submitted to Medicare between 2018 and 2020, and discovered numerous instances of inaccurate and inadequate time records.  See, Exhibit J (Relator spreadsheet).

138.    On information and belief, Mindpath utilized inaccurate timekeeping records, including stating false start and stop times for the 90833 Psychotherapy treatment, not documenting separate Psychotherapy "add on" time, and failing to document at least 16 minutes of Psychotherapy time. See, Exhibit J.

139.    On information and belief, Mindpath billed Medicare for 90833 Psychotherapy claims even in situations where Mindpath's Providers checked "no" to the question whether "Covered by Medicare?" in their Provider notes.  See, Exhibit J.

140.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams were responsible for ensuring compliance with applicable Medicare regulations, and supervision over the submission of Medicare claims, in 2018 through 2020.

141.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams provided guidance and supervision over the submission of Medicare claims in 2018 through 2020.

142.    Defendants Jeff Williams and Abigail Sheriff developed and reviewed billing strategies to improve reimbursement rates and "optimize" coding for 90833 claims in 2018 through 2020, including monitoring the percentage of 90833s that were being billed with E/M claims by Mindpath Providers.

143.    Defendant Jeff Williams emailed about details of billing Psychotherapy codes for insurance on April 4, 2020,  stating that "we only need time for the 90833 [and] BCBS does require it to documented [sic] there was at least 16 minutes of therapy."

144.    Defendant Jeff Williams emailed about a Mindpath Provider's productivity on August 13, 2020, stating that the Provider had 2088 "15 min follow ups … yet she has mostly 99214 and 90833's …. A 90833 by itself has to be a minimum of 16 minutes."

145.    Defendants Jeff Williams and Abigail Sheriff were kept apprised of audit results for 90833 claims by Blue Cross and Blue Shield.

146.    Defendant Jeff Williams and Abigail Sheriff monitored and communicated with Mindpath employees regarding the percentage of E/M claims that Providers had with a related 90833 Psychotherapy "add-on" claim, the need to increase 90833 Psychotherapy claims, and the amount of payments from 90833 Psychotherapy claims.

147.    On information and belief, the Defendants failed to adequately train employees on the proper coding for 90833 Psychotherapy claims.

148.    Mindpath training for Providers was conducted, in part, by the Chief Medical Officer who was accused of regularly engaging in 90833 billing fraud.

149.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams delegated to Mindpath employees the ability to submit Medicare claims on Mindpath's behalf, but failed to adequately supervise those employees and monitor the proper coding for 90833 Psychotherapy claims.

150.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams had the authority and responsibility to stop the submission of false 90833 Psychotherapy claims, but did not stop the ongoing false claims being submitted to Medicare.

151.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams failed to adequately correct problems repeatedly raised by Mindpath employees regarding past and ongoing false claims for 90833 Psychotherapy claims.

27

152.     Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams allowed Mindpath to continue billing Medicare for false 90833 Psychotherapy claims, and did not take effective action to stop these false claims.

153.     Defendants did not take any action to correct past false claims for 90833 Psychotherapy claims, and did not repay the amounts falsely obtained from Medicare.

154.     Defendants caused Mindpath to submit false 90833 Psychotherapy claims to Medicare from 2018 to 2020.

155.     Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams enabled and caused Mindpath Providers and employees to improperly bill Psychotherapy and E/M claims without documentation of the required time and the required description for the Psychotherapy treatments provided.

156.     From 2018 to 2020, Mindpath and Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams demonstrated a pattern of reckless disregard or deliberate ignorance toward stated concerns about billing fraud, including falsely billing 90833 Psychotherapy claims to Medicare.

157.     On information and belief, the Defendants were primarily focused on generating income, and expanding the Mindpath business.

158.     For example, the Mindpath Board was informed of the average reimbursement for 90833 claims, and the utilization percentages.

159.     On information and belief, from 2018 to 2020, Mindpath compensated its Providers based in part upon the 90833 Psychotherapy claims billed and the Relative Value Units (RVU) of each individual Provider, including specifically the number of Psychotherapy claims that were "add ons" to E/M services.

28

160. Mindpath profited from the delivery of overbilled services and false claims for 90833 Psychotherapy treatments paid by Medicare.

161. Mindpath is responsible for the acts and knowledge of its employees, officers, and Providers related to claims for 90833 Psychotherapy treatments paid by Medicare.

162. Defendants acted with at least reckless disregard or deliberate ignorance regarding the falsity of the 90833 Psychotherapy claims.

## PARTICULAR FALSE BILLINGS

163. As set out above, Mindpath billed Medicare for thousands of Psychotherapy and E/M services each year from 2018 to 2020.

164. Mindpath was paid over $1,600,000 by Medicare for 90833 Psychotherapy claims from 2018 to 2020, for almost 16,000 individual claims by Mindpath Providers.

165. A substantial percentage of those nearly 16,000 Psychotherapy claims paid by Medicare were false.

166. Based upon the volume of false claims, the fraudulent scheme and amount of damages will be established based in part upon a statistically valid random sample ("Sample") and expert review of available Mindpath medical records for that Sample.

167. Through a Civil Investigative Demand ("CID") issued by the United States on April 29, 2021, the Defendants were required to produce all medical records in support of Psychotherapy and E/M claims for 60 specific Sample Medicare beneficiaries in 2018-2020, which included demand of all medical records and electronic records, as well as all related check-in and check-out records, office calendars, policies, training

29

materials, and all communications related to the 60 Sample claims that were billed to Medicare.

168. Defendants provided medical records and documents on a rolling basis in 2021 and 2022.

169. In a letter dated November 29, 2022, the United States notified the Defendants that their medical records failed to establish that many of their Sample claims were properly documented, including that 90833 Psychotherapy claims did not have at least 16 minutes documented.

170. The United States demanded all records responsive to the 2021 CID through numerous emails and letters, including by letter dated January 12, 2023, which stated the Government's understanding from email exchanges that Defendants asserted that they "fully complied with the Government's 2021 CID (after agreed delays), and that no additional responsive documents were available."

171. The Defendants provided additional electronic data and Medical Records on January 6, 2023, January 10, 2023 and January 19, 2023, purportedly based upon deficiencies that Defendants discovered in their prior electronic data and medical record productions.

172. By letter dated January 12, 2023, the United States demanded that Defendants sign and return the Declaration of Compliance provided with the 2021 CID, which required Mindpath to certify that "I hereby certify that all the documentary material required by the Civil Investigative Demand and in the possession, custody, or control of the person to whom the Demand is directed has been produced and made available to the false claims law investigator or custodian identified in the Demand."

30

*See* 31 U.S.C. § 3733(f)(1) ("The production of documentary material in response to a civil investigative demand served under this section shall be made under a sworn certificate, in such form as the demand designates. . . .  The certificate shall state that all of the documentary material required by the demand and in the possession, custody, or control of the person to whom the demand is directed has been produced and made available to the [United States].").

173.   On January 24, 2023, the Defendants provided the United States with a signed Declaration of Compliance, but contrary to their statutory obligations under the False Claims Act, the Defendants changed the language of the standard Declaration of Compliance provided with the CID on April 29, 2021.

174.   The Defendants certified through a Chief Legal Officer that "I hereby certify to the best of my knowledge and based upon the word searches designed to narrow the scope of the request and in the possession, custody, or control of the agreed custodians, that the applicable documentary materials have been produced and made available to the investigator identified in the CID as required." *Compare* 31 U.S.C. § 3733(f)(1) (requiring CID recipients to sign the certification provided in the CID, and requiring that the certification "state that all of the documentary material required by the demand and in the possession, custody, or control of" the recipient has been produced).

175.   Mindpath has the duty to retain medical records and documentation in support of their Medicare claims to establish the medical necessity and other requirements of Psychotherapy and E/M services billed to Medicare.

176. Defendants failed to produce required documentation from the medical records to establish the separate time and Psychotherapy treatments for many of the Sample claims billed to Medicare, despite compulsory process.

177. The substantial number of Psychotherapy treatments billed without documentation of the required time and Psychotherapy treatment establishes a broad scheme by the Defendants to falsely bill these treatments to Medicare.

178. Numerous patient examples will demonstrate the false claims of the Defendants, provided by categories below.[2]

179. Mindpath has failed to provide medical record documentation for numerous patients in the Sample to establish that at least 16 minutes of separate and distinct Psychotherapy treatment was provided.

180. Patient examples from the Sample without documentation of at least 16 minutes of separate and distinct 90833 Psychotherapy treatments include, but are not limited to, the following: CA 5/3/19, SC 5/9/18, JF 2/18/18, RG 7/26/18, RJ 12/3/18, NK 6/8/18, NM 7/13/20, PP 11/12/18, PS 9/3/20, AS 5/21/18; WW 10/31/19, and LW 7/31/19.

181. Mindpath's medical records for numerous patients in the Sample for 90833 Psychotherapy fail to document that separate and distinct Psychotherapy treatments were provided on the relevant date of service, including identifying specific

---

[2] The patients identified by initials and date of service were from the Sample of patients previously identified to Defendants in the 2021 Civil Investigative Demand. Initials will be utilized in this filed document based upon the Privacy Act and rules of this Court. Patients previously identified by initials in Relator's Complaint will also be identified by initials, and several Mindpath Providers will be identified by initials. Full names are known or available to Defendants, but can also be provided by the Government upon request.

Psychotherapy treatments provided, progress toward goals, or the treatment plan. Specifically, those patients and dates of service include, but are not limited to, the following: MA 11/23/20, CB 8/14/19, RB 11/4/19, GB 2/28/20, MC 5/7/19, SC 5/9/18, LC 2/5/19, RD 1/3/18, JF 2/8/18, HG 12/4/19, RG 7/26/18, MJ 5/7/19, NK 6/8/18, ML 5/19/20, CM 12/7/20, TM 12/20/18, GN 2/27/18, CP 6/15/20, PP 11/12/18, DR 5/14/19, JR 8/6/20, MS 6/26/19, LV 10/23/20, DW 2/10/20, and WW 10/31/19.

182.   As one example, for patient MJ on May 7, 2019, Medicare paid Mindpath $125 for 90833 Psychotherapy and $130 for 99214 E/M session based on claims submitted by Mindpath, but the corresponding Mindpath records reflect that the patient deferred the recommended Psychotherapy on this date.   Furthermore, Mindpath's records fail to document the separate and distinct time for Psychotherapy treatment (minutes for Psychotherapy portion), and fail to document separate and distinct Psychotherapy treatment actually provided (because, in reality, none was).

183.   As a second example, for patient CA on May 3, 2019, Mindpath was paid for both 90833 Psychotherapy and a 99214 E/M session, $125 and $130 respectively, but the Mindpath records provided fail to document the separate and distinct time for Psychotherapy treatment (minutes for Psychotherapy portion), the records fail to document separate and distinct Psychotherapy treatment actually provided, and the records demonstrate that the patient was with the provider for a total of 9 minutes (the difference between the start time stated in the patient chart until check-out time stated in EHR record).

184.   As a third example, for patient SC on May 9, 2018, Mindpath was paid for both 90833 Psychotherapy and a 99213 E/M session (which has moderate complexity

33

and expected time of 15 minutes), $75 and $85 respectively, but the Mindpath records provided fail to accurately document the minutes of separate and distinct time for Psychotherapy treatment claimed (minutes for Psychotherapy portion), the records fail to document separate and distinct Psychotherapy treatment actually provided, and the records demonstrate that the patient was with the provider for a total of 18 minutes (the difference between the start time stated in the patient chart until check-out time stated in EHR record).

185.   As a fourth example, for patient LW on July 31, 2019, Mindpath was paid for both 90833 Psychotherapy and a 99213 E/M session, $125 and $85 respectively, but the Mindpath records provided fail to accurately document the minutes of separate and distinct time for Psychotherapy treatment claimed (minutes for Psychotherapy portion), and the records demonstrate that the patient was with the provider for a total of 28 minutes (the difference between the start time stated in the patient chart until check-out time stated in EHR record).

186.   As a fifth example, for patient JR on August 6, 2020, Mindpath was paid for both 90833 Psychotherapy and a 99214 E/M session (which has higher complexity and expected time of 25 minutes), $125 and $170 respectively, but the Mindpath records provided fail to accurately document the minutes of separate and distinct time for Psychotherapy treatment claimed (minutes for Psychotherapy portion), the records fail to document separate and distinct Psychotherapy treatment actually provided, and the records demonstrate that the patient was with the provider for a total of 30 minutes

34

187.   Relator provided additional example claims not in the Sample, including that Defendants caused the submission of false 90833 Psychotherapy claims, on information and belief,  for services purportedly provided by Nurse Practitioner KW on numerous occasions in which the recorded "add-on" time in the medical records for Psychotherapy failed to  match with patient check-in/check-out times, including for the following patients and dates of service: CG 10/30/18, CC 11/12/18, FH 11/15/18, CA 12/19/18, ED 1/30/19, CH 2/12/19, DB 3/5/19, NM 3/7/19, CH 3/13/19, TC 3/20/19, PY 4/1/19, DW 4/8/19, and PB 4/10/19.  See, Exhibit J.

188.   On information and belief, Defendants also caused the submission of false 90833 Psychotherapy claims for services purportedly provided by Nurse Practitioner EB on numerous occasions in which the recorded "add-on" time in the medical records for Psychotherapy was false and did not match with patient check-in/check-out times, including for the following patients and dates of service: MC 11/6/17, PS 9/4/18, RS 10/19/18, KHH 12/20/18, BS 1/10/19, RS 1/11/19, ML 1/11/19, GS 4/4/19, BS 4/2/19, MC 4/30/18, JD 5/2/19, GS 6/27/19, RS 8/13/19, and AB 8/13/19. See, Exhibit J.

189.   On information and belief, Defendants also caused the submission of false 90833 Psychotherapy claims for services purportedly provided by Dr. LG on numerous occasions in which the "add-on" time was not documented in the medical records for Psychotherapy treatment, including for the following patients and dates of service: CS 7/2/17, FJ 5/17/18, CS 6/25/18, LH 8/16/18, LR 10/18/18, JL 11/8/18, ZD 9/17/19, LH 9/24/18, NB 11/26/18, LR 2/28/19, LH 3/4/19, and JWM 5/9/19.  See, Exhibit J.

190.   Further, on information and belief, many of these example claims by Providers KW, EB and LG were billed to Medicare with less than 16 minutes and after

35

the Providers stated in their notes that treatments were not covered by Medicare. See, Exhibit J.

191.     Defendants each caused false Psychotherapy claims, and each acted with at least reckless disregard regarding the accuracy of these Medicare claims.

## FIRST CAUSE OF ACTION
### False Claims Act: Submission of False Claims
### (31 U.S.C. § 3729(a)(1)(A))

192.     The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

193.     By virtue of the acts and described above, Defendants each knowingly (including reckless disregard and deliberate ignorance) presented or caused to be presented to the United States false or fraudulent Medicare claims for payment in violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(A)), in that the services for which Government reimbursement was claimed were not eligible for reimbursement because the Psychotherapy treatments were billed without required documentation of the treatment time and otherwise did not meet billing requirements for Psychotherapy treatment, because the claims were not supported by adequate documentation, and because the claims violated Medicare policies, regulations, and instructions.

194.     The actions and omissions alleged in this complaint constitute a fraudulent course of conduct.

195.     Each claim that the Defendants knowingly (including reckless disregard and deliberate ignorance) presented or caused to be presented to Medicare was a materially false or fraudulent claim, in violation of the False Claims Act.

196.     The false or fraudulent claims that the Defendants knowingly (including reckless disregard and deliberate ignorance) presented or caused to be presented were material to the payment of Medicare funds, and caused the Government to disburse federal funds to which the Defendants were not entitled.

197.     Medicare does not allow payment for 90833 claims without documentation of the requisite time and Psychotherapy treatment, and has sought administrative recovery and brought actions for claims improperly paid.

198.     By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial, but in any event no less than $500,000.

## SECOND CAUSE OF ACTION
### False Claims Act: False Statements Material to a False Claim
### (31 U.S.C. § 3729(a)(1)(B))

199.     The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

200.     By virtue of the acts and omissions described above, Defendants each knowingly (including reckless disregard and deliberate ignorance) made or used, or caused to be made or used, a false record or statement material to a false or fraudulent Medicare claim in violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(B), as amended) in that the records and statements that the Defendants made or used, or caused to be made or used, to claim Medicare reimbursement were false and the Psychotherapy treatments for which Government reimbursement was claimed were not eligible for reimbursement because the Psychotherapy treatments were billed without documentation of the time and without satisfying other billing requirements for

37

Psychotherapy treatment, because the services were not provided as billed, and because the claims violated Medicare policies, regulations, and instructions.

201. The actions and omissions alleged in this complaint constitute a fraudulent course of conduct.

202. The false or fraudulent statements or records that the Defendants knowingly (including reckless disregard and deliberate ignorance) made or used, or caused to be made or used, were material to the payment of Medicare funds, and caused the Government to disburse federal funds to which the Defendants were not entitled.

203. By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial, but in any event no less than $500,000.

### THIRD CAUSE OF ACTION
**False Claims Act: Reverse False Claims**
**(31 U.S.C. § 3729(a)(1)(G))**

204. Plaintiff United States realleges and incorporates by reference the paragraphs above as if fully set forth herein.

205. By virtue of the acts and omissions described above, Defendants knowingly (including reckless disregard and deliberate ignorance) concealed or knowingly (including reckless disregard and deliberate ignorance) and improperly avoided or decreased an obligation to pay or transmit money to the government in violation of the False Claims Act (31 U.S.C. § 3729(a)(1)(G)), in that, as described above, Defendants failed to repay the Medicare funds paid based on the false or fraudulent claims that Defendants presented or caused to be presented or the false statements or records that Defendants made, used, or caused to be made or used, despite knowing (including

38

reckless disregard and deliberate ignorance) that the claims, statements, and records were false or fraudulent.

206.    By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial, but in any event no less than $500,000.

## FOURTH CAUSE OF ACTION
### False Claims Act: Conspiracy
### (31 U.S.C. § 3729(a)(1)(C))

207.    The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

208.    By virtue of the acts and omissions described above, Defendants each conspired to knowingly (including reckless disregard and deliberate ignorance) present or cause to be presented false or fraudulent claims to Medicare; to knowingly (including reckless disregard and deliberate ignorance) make or use, or cause to be made or used, a false record or statement material to a false or fraudulent Medicare claim; and to knowingly (including reckless disregard and deliberate ignorance) conceal or knowingly (including reckless disregard and deliberate ignorance) and improperly avoid or decrease an obligation to pay or transmit money to the government, in violation of the False Claims Act (31 U.S.C. § 3729(a)(l)(C), as amended).

209.    As described above, Defendants conspired with others to submit claims for Psychotherapy treatments that were billed without required documentation of the time and without satisfying other billing requirements for Psychotherapy treatment, because the claims were not supported by adequate documentation, and because the claims

violated Medicare policies, regulations, and instructions, and to make and use records and statements to support these false Medicare claims.

210.    By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### Common Law Fraud

211.    The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

212.    The above-described affirmative and reverse false claims are (1) false representations or concealments of material facts, (2) reasonably calculated to deceive the Medicare Program, (3) made with intent to deceive the Program, (4) which did in fact deceive the Program, and (5) resulted in damage to the Medicare Program.  Based on the certifications in  Mindpath's executed enrollment forms, and the certification on each CMS Form 1500 claim form, the Government reasonably relied on the certification that appropriate, non-deceptive claims for reimbursement would be and were filed on behalf of  Mindpath.  As a result of the Defendants' false claims, false certifications, false records, and fraudulent course of conduct described above, the Medicare Program reimbursed for services that were not medically necessary, that were not supported by adequate or accurate records, or that were billed in violation of Program policies, regulations, and instructions, which the Government would not have paid had the Defendants not presented or caused to be presented false claims for payment; and made, used, or caused to be made or used, false records and statements material to false or fraudulent claims, or conspired to do the same.

40

213.    By virtue of the Defendants' actions and omissions, Plaintiff United States, acting on the accuracy and truthfulness of the information contained in the claims submitted, paid certain sums of money to which the Defendants were not entitled, and the Defendants are thus liable to account for and repay such amounts to be determined at trial.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

214.    The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

215.    By virtue of the acts and omissions described above, by presenting or causing to be presented claims for Medicare reimbursement that violated the applicable Program policies, regulations, and instructions, by making or using, or causing to be made or used, false records and statements material to false or fraudulent claims, by avoiding, concealing, or decreasing their obligation to repay ill-gotten funds to Medicare, and by conspiring to do the same, Defendants received and/or benefited from certain federal funds to which they were not entitled.

216.    As a result of the acts and omissions set forth above, the Defendants were unjustly enriched at the expense of the United States, under circumstances dictating that, in equity and good conscience, the money should he returned to the Government.

217.    By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial.

41

## SEVENTH CAUSE OF ACTION

### Payment By Mistake

218.    The Government re-alleges and incorporates by reference the paragraphs above as if fully set forth herein.

219.    By virtue of the acts and omissions described above, by presenting or causing to be presented claims for Medicare reimbursement that violated the applicable Program policies, regulations, and instructions, and by making or using, or causing to be made or used, false records and statements material to false or fraudulent claims, Defendants caused the United States to pay certain federal funds to which the Defendants were not entitled.

220.    At the time the United States made such payments, the Government was unaware of the Defendants' conduct described herein.   The Government's erroneous belief that the Defendants were submitting valid Medicare claims was material to making the payments at issue. Had the Government known of the conduct at issue, it would not have made the payments.

221.    As a result of the acts set forth above, the United States has been damaged and is entitled to recover the money that was paid by mistake.

222.    By reason of the foregoing, Plaintiff United States suffered actual damages in an amount to be determined at trial, but in any event no less than $500,000.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States respectfully request that the Court enter judgment against Defendants Mindpath Care Centers, North Carolina, PLLC; Jeff Williams; Abigail Sheriff; and Sarah Williams:

1.    For the First, Second, Third and Fourth Causes of Action, treble damages, plus the costs of investigation and prosecution, and civil penalties for each false claim as allowed by law;

2.    For the Fifth, Sixth, and Seventh Causes of Action, for the amount the United States paid as a result of these Defendants' fraud, the amount these Defendants were unjustly enriched, the amount the United States mistakenly paid, and/or the amount the United States paid for services with respect to which these Defendants did not maintain medical records or otherwise bill accurately and correctly, as a result of these Defendants' actions and omissions;

3.    For the costs of this action, plus interest, and investigative costs as provided by law;

4.    That a trial by jury be held on all issues so triable; and

5.    For any other relief that the Court deems just and proper.

Respectfully submitted, this 19th day of October, 2023.

MICHAEL F. EASLEY, JR.
United States Attorney


BY:     /s/ NEAL I. FOWLER
            NEAL I. FOWLER
Assistant United States Attorney
Civil Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
E-mail: neal.fowler@usdoj.gov
NC Bar #27371