IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:19-CV-512-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., ANJELICA BROWN,<br><br>        Plaintiff,<br><br>        v.<br><br>MINDPATH CARE CENTERS, NORTH CAROLINA, PLLC; JEFF WILLIAMS; ABIGAIL SHERIFF, and SARAH WILLIAMS,<br><br>        Defendants. | **UNITED STATES' RESPONSE TO STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, AND ADDITIONAL GENUINE ISSUES OF MATERIAL FACT** |

The United States of America, by and the through the United States Attorney for the Eastern District of North Carolina, hereby files this Statement of Material Facts to oppose Defendants' motion for summary judgment [DE 73, DE 74] and controverts the statement of material facts [DE 75] pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Civil Rules of Practice and Procedure for the Eastern District of North Carolina. Plaintiff is contemporaneously filing a Plaintiff's Appendix ("PA") containing record evidence cited to herein. [See, Plaintiff's Appendix ("PA"), pages 1 - 445]. The Government also sets out additional genuine issues of material fact that preclude summary judgment after addressing Defendants' factual statements.

The Government responds to each of the 560 numbered paragraphs of Defendant's statement of material facts [DE 75], with objections to the unreasonable and unduly burdensome 560 statements of material fact that appear to be designed to obfuscate and overwhelm, responding to each statement as follows:

1

# I.    PARTIES AND OTHER PERTINENT WITNESSES

1.    Defendant Mindpath Care Centers, PLLC (hereinafter "the Physician Practice") is a provider-owned physician practice which operates a number of facilities across the State of North Carolina.  Appx. Ex. 17, ¶¶ 155 – 156; Appx. 5, p. 39, l. 20.

Admitted.

2.    No owners or employees of the Physician Practice are named defendants. Appx. Ex. 17.

Admitted.

3.    Mindpath Services, LLC (hereinafter "Mindpath Services" or the "MSO") is a management services organization, which provides non-clinical services to the Physician Practice, including management of administrative personnel and billing.  Appx. Ex. 6, p. 40, l. 5; *Id*. l. 18.

Admitted.

4.    Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams were all employees of the MSO.  Appx. Ex. 5, p. 40, l. 10.

Admitted.

5.    While the named defendants were all employees of Mindpath Services and have been named individually, the MSO as an entity is not named as a defendant.  Appx. Ex. 17.

Admitted.

6.    Defendant Jeff Williams served as Mindpath Services Chief Executive Officer beginning on or around September 5, 2018, and served in that role at all times relevant to this action. Appx. Ex. 6, p. 16, l. 14; Appx. Ex. 5, p. 34, l. 7-8.

Admitted.

7.    Defendant Abigail Sheriff served as Mindpath Services' Chief Operations Officer from approximately 2017 or 2018 through April 2023, including in that role at all times relevant to this action.  Appx. Ex. 7, p. 16, l. 21; *Id.* at p. 78, l. 6.

Admitted.

8.    Defendant Sarah Williams served as Mindpath Services' Front Desk Operations Manager from November 2018 through May 2023, including in that role at all times relevant to this action.  Appx. Ex. 3, p. 12, l. 5, *Id.* at p. 16, l. 20.

 Admitted.

9.    Defendant Sarah Williams was not employed at Mindpath before November 2018. Appx. Ex. 3, p. 77, l. 13.

Admitted.

10.  During the relevant period of time, Rob Oliveri was Mindpath's Chief Financial Officer.  Appx. Ex. 15, p. 13, l. 1.

Admitted.

11.  During the relevant period of time, Blair Ferry was Mindpath's Customer Service Supervisor.  Appx. Ex. 16, p. 16, l. 12.

Admitted.

12.  During the relevant period of time, Deb Jackson served as Mindpath's Director of Operations related to billing matters.  Appx. Ex. 11, p. 13, l. 8; p. 18, l. 18.

Admitted.

13.  Kristie Richmond was a provider at Mindpath from September 2017 to May 2019. Appx. Ex. 12, p. 13, l. 7-11.

Admitted.

14.  Tory Wood was the Billing Manager at Mindpath from 2015 to 2020.  Appx. Ex. 9, p. 12, l. 1-13.

Admitted.

15.  Dr. James Smith was a provider with Mindpath from approximately 2005 to 2022, including serving as the Medical Director during some of the relevant period of time.  Appx. Ex. 8, p. 11; 20; p. 14; 6; Appx.

Admitted.

16.  Dr. Lawrence Greenberg was a provider with Mindpath who served as the Medical Director after Dr. James Smith during some of the relevant period of time.  Appx. Ex. 8, p. 26, l. 23.

Admitted.

17.  Stanley Monroe was a founder of Mindpath and served as the President of Mindpath during the relevant period of time.  Appx. Ex. 14, p. 23, l. 25.

Admitted.

18.  Elizabeth Bruce has been a provider with Mindpath since 2001 and at all times during the relevant period of time.  Appx. Ex. 13, p. 16, l. 21.

Admitted.

19.  Dr. Yvonne Monroe was a founder of Mindpath in 1994 and remains a provider at Mindpath, including at all time times during the relevant period of time.  Appx. Ex. 6,  p. 12, l. 24.

Admitted.

20.  In 1996, MISO was founded by Dr. Yvonne Monroe's brothers, Steven Monroe and Stan Monroe.  Appx. Ex. 6, p. 14, l. 10.

Admitted.

21. MISO provided administrative services to Mindpath until 2018. Appx. Ex. 6, p. 14-16.

Admitted.

22. Jennifer Arnold testified she was hired as a certified coder to perform auditing and provide education. Appx. Ex. 10, p. 29, l. 20.

Admitted that Jennifer Arnold was hired as coder in February, 2020.

23. The Relator Anjelica Brown began working at Mindpath Services in April 2018 until her employment ended in July 2020. Appx. Ex. 4, p. 25, ln. 12 – 22.

Admitted.

24. During the course of her employment, course of her employment, [sic] Relator compiled information that she believed supported her false claims act case. Appx. Ex. 4, p. 67, l. 4 – 10.

Admitted.

25. The Relator worked as an interoffice assistant and was assigned to work at approximately five different physician offices before being permanently assigned to the Bush Street location in Raleigh, North Carolina. Appx. 4, p. 30, l. 6 – 25.

Admitted.

26. The Relator has no medical training and has never taken any CPT coding classes or received any CPT coding certifications. Appx. 4, p. 21, l. 5 – 18.

Admitted.

27. Part of the Relator's job responsibilities included entering CPT codes into Mindpath Services' computer system based on charge sheets which were completed by patients' individual physicians. Appx. 4, p. 34, l. 1 – 20.

5

Admitted.

## II.    BACKGROUND ON ALLEGATIONS

28.   The Relator Angelica Brown commenced this qui tam action by filing a Complaint on November 13, 2019. ECF Docket Entry 1.

Admitted.

29.   The Relator alleged that the Defendants defrauded the Government by submitting false claims for psychotherapy through their improper use of an add-on code.  ECF DE 1, ¶ 27.

Admitted.

30.   The Government filed a Notice to Intervene in Part and to Decline to Intervene in Part on July 12, 2023. ECF DE 38.

Admitted.

31.   The Government filed its Complaint in Intervention (hereinafter "Government's Complaint") on October 19, 2023, adding claims for conspiracy, reverse false claims, and several common law claims.  ECF DE 40.

Admitted.

32.   The Government's theory of liability is that the defendants improperly billed Medicare for psychotherapy using CPT add-on code 90833 because there was inadequate documentation to support (a) compliance with Medicare guidelines and/or (b) medical necessity. Appx. Ex. 17, ¶ 98.

Disputed as characterized.  The Complaint in Intervention sets out the theory of liability. DE 40.

33.   Relying on a statistic sample of sixty records spanning over the course of 2018 – 2020, the Government alleges that a number of those records either do not support the use of the

90833-add-on code because the inadequate documentation indicates either that psychotherapy was never provided or was not medically necessary. Appx. Ex. 17, ¶¶ 175-176.

Disputed as characterized. The Complaint in Intervention sets out the theory of liability. DE 40.

34. The Government alleges the named defendants and the Physician Practice, collectively, acted with the requisite scienter because they (1) ignored employee complaints, (2) failed to properly train and supervise providers, and (3) did not have an adequate system in place to ensure compliance with Medicare billing guidelines. Appx. Ex. 17, ¶¶ 155 – 156.

Disputed as characterized. The Complaint in Intervention sets out the theory of liability. DE 40.

35. The Relator Anjelica Brown testified the first and only time she communicated concerns about billing improprieties to Jeff Williams was during a March 30, 2019, Staff Improvement Conference. Appx. Ex. 4, p. 68, l. 21.

Admitted.

36. The Relator Anjelica Brown testified that the first conversation she had with Abigail Sheriff was at the March 30, 2019, Staff Improvement Conference. Appx. Ex. 4. p. 70, l. 23.

Admitted.

### III.    MEDICARE

37. The Center for Medicare and Medicaid Services ("CMS") oversees the administration of Medicare, including Medicare Part B, which covers outpatient medical care. Appx. Ex. 17, ¶¶ 25-26.

Admitted.

38. CMS contracts with private third parties called Medicare Administrative Contractors ("MACs") to process Medicare Part B claims within a specific geographic region. Appx. 17 ¶ 26.

Admitted.

39. At all relevant times during this case, the MAC for North Carolina was Palmetto GBA. Appx. Ex. 1, 80:19-24.

Admitted.

40. Providers submitting claims to Medicare use CPT codes developed by the American Medical Association to identify the services provided. Appx. Ex. 17 ¶ 51.

Admitted

41. Reporting of CPT codes is guided by a Coding Policy Manual published by CMS.[1] CMS also periodically issues national coverage determinations ("NCDs") setting nationally applicable rules for Medicare coverage. *See* "Medicare Coverage of Items and Services," *available at* https://tinyurl.com/bdf3ntbm (last visited April 24, 2025).

Admitted.

42. Individual MACs may issue local coverage determinations ("LCDs") establishing the circumstances under which Medicare will cover an item or service within that MAC's specific geographic jurisdiction. *See* "Local Coverage Determinations," *available at* https://tinyurl.com/z4k5smmk (last visited April 24, 2025), Appx. Ex. 18, Pg. 3.

Admitted.

---

[1]https://www.cms.gov/medicare/coding-billing/national-correct-coding-initiative-ncci-edits/medicare-ncci-policy-manual (last visited April 24, 2025).

43. The only CPT code at issue in this case is CPT code 90833, which is a psychotherapy add-on code that may be billed alongside a code for Evaluation and Management ("E/M") services when both services are provided during a single appointment. Appx. Ex. 17 ¶ 59.

Denied as stated. The Complaint in Intervention sets out the theory of liability and includes claims for both 90833 psychotherapy and related E/M counseling codes. DE 40.

## IV. EVIDENCE

### A. Jeff Williams (CEO of MSO)

44. Jeff Williams testified that by the end of 2020, Mindpath had approximately 25 provider offices. Appx. Ex. 5, p. 55; l. 16.

Admitted.

45. Jeff Williams testified that by the end of 2020, Mindpath had approximately 150 providers, including between 50 to 75 medication management providers. Appx. Ex. 5, p. 56, l. 16.

Admitted.

46. Jeff Williams testified that the physician practice and the managed services organization were two distinct entities, each with its own governance. Appx. Ex. 5, p. 39, l. 1.

Disputed as characterized. The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that the MSO directed the actions of the physician practice both directly and indirectly.

47. Jeff Williams testified that the physician practice and the managed services organization did not cross lines between the caregiving practice and the management company. Appx. Ex. 5, p. 39, l. 1.

Disputed as characterized. The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that the MSO directed the actions of the physician practice both directly and indirectly.

48. Jeff Williams testified that while the corporate side of Mindpath would provide insight, guidance, suggestions, and recommendations to assist in moving things along, corporate employees did not vote in the Quality and Standards Board meetings. Appx. Ex. 5. p. 218, l. 13.

Disputed as characterized. The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that MSO officials served on the committees and boards of the practice and directed or influenced these decisions..

49. Jeff Williams testified that processes were put in place to correctly submit claims. Appx. Ex. 5, p. 66, l. 12.

Disputed as characterized. The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that Mindpath never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

50. Jeff Williams testified that providers should [sic] clinical decisions, not business people. Appx. Ex. 5, p. 69, l. 12.

Disputed as characterized. The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that the "business people" directing Mindpath never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

10

51.   Jeff Williams testified that providers delivered care, documented what they did and then coded the service provided.   The billing department then processed what the provider had coded.   Appx. Ex. 5, p. 57, l. 13.

Disputed as characterized.   The subjective and self-serving testimony of Jeff Williams is disputed, incomplete and misleading in that Mindpath never had an effective compliance program or written compliance policies despite continuing coding problems and did not adequately train providers or the billing employees, as set out more fully in the Government's factual statements below.

52.   Jeff Williams testified that his mantra was that he wanted clear and accurate billing. Appx. Ex. 5, p. 121, l. 7.

Disputed as characterized.   The self-serving testimony as to his aspirational "mantra" is disputed, incomplete and misleading in that he failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

53.   Jeff Williams testified that he wanted accurate coding.   Appx. Ex. 5, p. 121, l. 11.

Disputed as characterized.   The self-serving testimony as to his desire is disputed, incomplete, misleading and irrelevant in that he failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

54. Jeff Williams testified that Rob Oliveri advocated for proper patient care. Appx. Ex. 5, p. 205, l. 3.

Disputed as characterized. The self-serving testimony as to Rob Oliveri's advocacy is disputed, incomplete, misleading and irrelevant in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

55. Jeff Williams testified that Rob Oliveri did not advocate for more patient sessions per hour. Appx. Ex. 5, p. 205, l. 3.

Disputed as characterized. The self-serving testimony as to Rob Oliveri's advocacy is disputed, incomplete, misleading and irrelevant in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

56. Jeff Williams testified that while Rob Oliveri performed an analysis of provider coding, Oliveri desired proper documentation that was a reflection of the service performed by the provider. Appx. Ex. 5, p. 205, l. 3.

Disputed as characterized. The self-serving testimony as to Rob Oliveri's advocacy is disputed, incomplete, misleading and irrelevant in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

12

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

57.   Jeff Williams testified that it "proper hygiene" to have a professional coder on staff at Mindpath.  Appx. Ex. 5, p. 87, l. 2.

Disputed as characterized.  The self-serving testimony as to best practices is disputed, incomplete and misleading in that he failed to hire a full time professional coder until February, 2020, over fourteen months after he was informed of egregious fraud by a company founder who lead training, and never had an effective compliance program or written compliance policies despite continuing coding problems and numerous red flags because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

58.   Jeff Williams testified he believes Steve Monroe performed spot audits.  Appx. Ex. 5, p. 101, l. 14.

Disputed as characterized.  The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such spot "audits", failed to establish whether Steve Monroe had any medical experience to determine "reasonable and necessary" claims or how this alleged review stopped false claims, and failed to establish an effective compliance program or written compliance policies despite continuing coding problems and numerous red flags, as set out more fully in the Government's factual statements below.

59.   Jeff Williams testified that Rob Oliveri performed a spot audit of Dr. Lawrence Greenberg.  Appx. Ex. 5, p. 101, l. 19.

13

Disputed as characterized. The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such spot "audits" and failed to establish whether Rob Oliveri had any medical or coding experience to determine "reasonable and necessary" claims or how this alleged review stopped false claims, as set out more fully in the Government's factual statements below.

60. Jeff Williams testified that after the audit of Dr. Lawrence Greenberg, a determination was made that there was nothing to report. Appx. Ex. 5, p. 187, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such spot "audits" and failed to establish whether Rob Oliveri had any medical or coding experience to determine "reasonable and necessary" claims or how this alleged review stopped false claims, as set out more fully in the Government's factual statements below, including that Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, that no one confronted Dr. Greenberg regarding these 90833 fraud allegations, and that no audit was done of Dr. Greenberg claims. Rob Oliveri Deposition at 148:17-150:23, 175:1-20.

61. A plan was developed related to the evaluation of Dr. Lawrence Greenberg's charts. Appx. Ex. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such spot "audits" and failed to establish whether Rob Oliveri had any medical or coding experience to determine "reasonable and necessary" claims or how this alleged review stopped false claims, as set out more fully in the Government's factual statements below, including that Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, that no one

14

confronted Dr. Greenberg regarding these 90833 fraud allegations, and that no audit was done of Dr. Greenberg claims. See, Rob Oliveri Deposition at 148:17-150:23, 175:1-20.

62. Jeff Williams testified he understood Deb Jackson was cleaning and processing claims. Appx. Ex. 5, p. 45, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

63. Jeff Williams testified he understood Deb Jackson and Steve Monroe were responsible for ensuring claim submissions were clean. Appx. Ex. 5, p. 46, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

64. Jeff Williams testified Deb Jackson and Steve Monroe reviewed claims daily, looked for errors, contacted providers if necessary and downcode any codes if determined necessary. Appx. Ex. 5, p. 58, l. 9.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite

15

continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

65. Jeff Williams testified Deb Jackson and Steve Monroe conducted regular chart audits. Appx. Ex. 5, p. 110, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such "chart audits" and failed to establish whether Deb Jackson or Steve Monroe had any medical or coding experience to determine "reasonable and necessary" claims or how this alleged review stopped false claims, as set out more fully in the Government's factual statements below.

66. Jeff Williams testified that Mindpath addressed coding issues with providers with immediate remediation through training. Appx. Ex. 5, p. 76, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

67. Jeff Williams testified either the medical director or Abby Sheriff addressed remediation with providers. Appx. Ex. 5, p. 77, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

16

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

68. Jeff Williams testified that the practical operation was to one primary person on the physician practice side and one primary person on the management side to provide coding advice. Appx. Ex. 5, p. 134, l. 5.

Disputed as characterized. The self-serving testimony as to this aspirational advice is disputed, incomplete and misleading in that he failed to follow this advice and failed to address the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

69. Jeff Williams testified it was made clear that mistakes should be reported and elevated to the necessary person. Appx. Ex.5, p. 94, l. 17.

Disputed as characterized. The self-serving testimony as is disputed, incomplete and misleading in that he failed to correct the obvious overbilling problems and never had an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

70. Jeff Williams testified that mistakes were investigated, and any necessary training ensued. Appx. Ex. 5, p. 94, l. 17.

Disputed as characterized. The self-serving testimony as is disputed, incomplete and misleading in that he failed to implement effective training to correct the obvious overbilling problems and never had an effective compliance program or written

17

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

71. Jeff Williams testified that onboard training of providers including compliance. Appx. Ex. 5, p. 95, l. 15

Disputed as characterized. The self-serving testimony as is disputed, incomplete and misleading in that he failed to implement an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

72. Jeff Williams testified that Medicare compliance was discussed at Mindpath on a routine basis. Appx. Ex. 5, p. 96, l. 5.

Disputed as characterized. The self-serving testimony as is disputed, incomplete and misleading in that Mindpath discouraged warning providers about coding fraud and failed to implement an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

73. Jeff Williams testified that Deb Jackson and Steve Monroe would investigate a provider if an issue was raised. Appx. Ex. 5, p. 104, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete and misleading in that he failed to provide a time frame for any such "investigations" and failed to establish whether Deb Jackson or Steve Monroe took effective action to correct

18

providers or stop false claims, as set out more fully in the Government's factual statements below.

74. Jeff Williams testified that coding was constantly discussed, including at the Quality and Standards Board meetings and in other meetings held by Mindpath. Appx. Ex. 5, p. 98, l. 1.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

75. In September 2018, Mindpath formed the Quality and Standards Board to "improve continually the quality of clinic services." Appx. Ex. 33.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

76. In October 2018, Mindpath's Quality and Standards Board formed the Practice Management Subcommittee. Appx. Ex. 34.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

19

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri directed that there would be no practice wide guidelines for duration of combination 90822 and E&M codes at the Practice Management Committee meeting on December 19, 2018. [PA 00077] Ex. 61.

77. The purpose of the Practice Management Subcommittee was to standardize the management of the practice, increase efficiency and compliance. Appx. Ex. 35.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri directed that there would be no practice wide guidelines for duration of combination 90833 and E&M codes at the Practice Management Committee meeting on December 19, 2018. [PA 00077] Ex. 61.

78. In October 2018, Mindpath's Quality and Standards Board tasked the Practice Management Subcommittee with updating training procedures to assure proper coding efficiency and documentation standards. Appx. Ex. 35.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri directed that there would be no practice wide guidelines for duration of combination 90833 and E&M codes at the Practice Management Committee meeting on December 19, 2018. [PA 00077] Ex. 61.

79. In November 2018, Mindpath's Quality and Standards Board referred to the Practice Management Subcommittee the task of coding efficiency, including training. Appx. Ex. 37

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri directed that there would be no practice wide guidelines for duration of combination 90833 and E&M codes at the Practice Management Committee meeting on December 19, 2018. [PA 00077] Ex. 61.

80. In December 2018, Steve Monroe was regarded as the Medicare Compliance Officer. Appx. Ex. 38.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to officially identify a Compliance Officer to guide providers and employees, and failed to implement an effective compliance program or written compliance policies despite continuing coding problems, as set out more fully in the Government's factual statements below, including Sarah Williams did not know if they had a Compliance Officer, Abigail Sheriff testified she did not know whether

providers were aware of who Compliance Officers were, Rob Oliveri testified that he did not recall anyone with the title compliance officer, and Dr. Yvonne Monroe testified that Steve Monroe would not have interacted with providers as the Compliance Officer because he had social phobia, and she was not aware of written compliance policies in effect in 2018-2020. See, Government's factual statements below, including Abigail Sheriff Deposition at 103:21-106:16; Sarah Williams Deposition at 219:3-221:25; Yvonne Monroe Deposition at 24:7-27:13; 34:24-37:21; Rob Oliveri Deposition at 74:1-76:25, 95:18-97:4.

81. In January 2019, Mindpath's Quality and Standards Board discussed training standards to ensure the highest clinical documentation. Appx. Ex. 39.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

82. In January 2019, Jeff Williams advocated for a coding opinion in writing. Appx. Ex. 99.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that the "coding opinion" appears to be merely cover for misconduct and Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and

undermined profit growth, as set out more fully in the Government's factual statements below.

83. In January 2019, Mindpath's Quality and Standards Board discussed coding, including an online training module. Appx. Ex. 24.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

84. In February 2019, Mindpath's Quality and Standards Board discussed coding documentation and Dr. Lawrence Greenberg, the medical director, was tasked with creating coding documentation guidelines. Appx. Ex. 40.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Dr. Yvonne Monroe credibly alleged that Dr. Greenberg had been fraudulently upcoding 90833 and E&M codes for a long time and Mindpath "cannot afford to have a provider training coding and documentation when he is/has engaged in years of fraudulent behavior [and] up-coded 40%." [PA 37], Ex. 10.

23

85.  In February 2019, Mindpath's Quality and Standards Board noted it was pursing the goal of always coding accurately.  Appx. Ex. 41.

Disputed as characterized.  The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

86.  In February 2019, Mindpath's Quality and Standards Board discussed preparation of the coding guidelines to circulate to providers.  Appx. Ex. 41.

Disputed as characterized.  The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

87.  In February 2019, Mindpath's Quality and Standards Board noted that the services of an outside coding expert had been retained.  Appx. Ex. 41.

Disputed as characterized.  The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

88. In February 2019, Mindpath's Practice Management Subcommittee discussed a process for follow up training coding and documentation training for new providers after the onboarding process. Appx. Ex. 42.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

89. In March 2019, Mindpath's Quality and Standards Board discussed the Practice Management Subcommittee continuing its work on coding and note documentation. Appx. Ex. 43.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

90. In June 2019, Mindpath's Quality and Standards Board tasked the Practice Management Subcommittee with auditing provider notes. Appx. Ex. 44.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

91. In June 2019, Mindpath's Quality and Standards Board discussed creating an enhanced clinical training process for new providers. Appx. Ex. 45.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

92. In June 2019, Mindpath's Practice Management Subcommittee discussed the goal of promoting one message about accurate coding. Appx. Ex. 46.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

93. In June 2019, Mindpath's Practice Management Subcommittee discussed provider's noting time for a CPT Code 90833. Appx. Ex. 47.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

94. In June 2019, Mindpath's Practice Management Subcommittee noted the unified message of "we train, clinician decides." Appx. Ex. 47.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

95. In June 2019, Mindpath's Quality and Standards Board noted the Practice Management Subcommittee's work on documentation standards. Appx. Ex. 48.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

27

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

96. In July 2019, Mindpath's Quality and Standards Board discussed in-depth training for new Advanced Practice Practitioners. Appx. Ex. 49.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

97. In September 2019, Mindpath's Quality and Standards Board discussed an hour-long meeting on coding and charting. Appx. Ex. 50.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

98. In September 2019, Mindpath's Quality and Standards Board discussed creating internal training for new providers to create improvements on documentation and coding. Appx. Ex. 51.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

99. In September 2019, Mindpath's Quality and Standards Board discussed issues surrounding Advanced Practice Practitioners supervision. Appx. Ex. 52.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

100. In September 2019, Mindpath's Practice Management Subcommittee presented a Standard Operation Procedure on evaluation and management CPT Codes 99213 and 99214 to the Quality and Standards Board. Appx. Ex. 53.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

101. Jeff Williams testified that Mindpath had very good, open and fluid communication between providers, their supervising physicians, and management related to coding. Appx. Ex. 5, p. 98, l. 1.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

102. Jeff Williams testified that training was a constant drumbeat. Appx. Ex. 5, p. 100, l. 16.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

103. Jeff Williams testified he believed Provider Bonnie Angelelli was spot audited. Appx. Ex. 5, p. 105, l. 4.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

104. Jeff Williams testified he believed Provider Elizabeth Bruce was spot audited. Appx. Ex. 5, p. 105, l. 9.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

105. Jeff Williams testified he believed Provider Jerry Ji was spot audited. Appx. Ex. 5, p. 105, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

106. Jeff Williams testified Dr. Lawrence Greenberg's claims were reviewed. Appx. Ex. 5, 183, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

107. Jeff Williams testified clinical supervisors performed audits before Mindpath hired a certified coder. Appx. Ex. 5, p. 108, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

108. Jeff Williams testified that the billing department conducted regular chart audits as part of the claim submission process. Appx. Ex. 5, p. 109, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

109. Jeff Williams testified that in the claim submission process, the billing department would notify providers of coding errors that had been identified and either request corrections or make the necessary coding corrections and send the claim back to the provider for review. Appx. Ex. 5, p. 109, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

110. Jeff Williams testified that Rob Oliveri recommended Mindpath hire a certified coder to further strengthen Mindpath's coding compliance and chart auditing function. Appx. Ex. 5, p. 109, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

111. Jeff Williams testified Mindpath hired Jennifer Arnold as a certified coder. Ms. Arnold conducted regular chart audits and met with providers one-on-one to discuss coding matters. Appx. Ex. 5, p. 109, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's

factual statements below, including that Jennifer Arnold did not begin full time work until February, 2020.

112.  Jeff Williams testified Jennifer Arnold conducted random audits.  Appx. Ex. 5, p. 111, l. 11.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Jennifer Arnold did not begin full time work until February, 2020.

113.  Jeff Williams testified that Jennifer Arnold provided education, coaching and mentoring to providers related to coding.  Appx. Ex. 5, p. 136, l. 13.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Jennifer Arnold did not begin full time work until February, 2020.

114.  Jeff Williams testified Jennifer Arnold was not directed to keep track of CPT Code 90833 but rather to meet with providers who needed attention.  Appx. Ex. 5, p. 311, l. 19.

34

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Jennifer Arnold did not begin full time work until February, 2020.

115. Jeff Williams testified that Jennifer Arnold met with providers with low and high CPT Code 90833 usage. Appx. Ex. 5, p. 311, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Jennifer Arnold did not begin full time work until February, 2020.

116. Jeff Williams testified that Mindpath worked to ensure provider documentation was accurate therefore claims were also accurate. Appx. Ex. 5, p. 115, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

117. Jeff Williams testified that supervising physicians reviewed progress notes of providers to ensure accuracy. Appx. Ex. 5, p. 117, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

118. Jeff Williams testified he directed the review of progress notes and Mr. Williams believes those reviews were being conducted. Appx. Ex. 5, p. 117, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

119. Jeff Williams testified the guidance provided to supervising physicians was to review four charts a week per supervisee. Appx. Ex. 5, p. 118, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

36

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

120. Jeff Williams testified that Dr. James Smith constantly worked with providers related to documentation. Appx. Ex. 5, p. 144, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

121. Jeff Williams testified there was an action plan to manage providers that lacked accurate documentation in their progress notes. Appx. Ex. 5, p. 145, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

122. Jeff Williams testified providers fear coding properly improperly [sic] and are often not clear on the correct way to code, which is why training was a constant drumbeat. Appx. Ex. 5, p. 227, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

123. Jeff Williams testified he believed providers coding issue related to undercoding and never overcoding. Appx. Ex. 5, p. 227, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

124. Jeff Williams testified training was updated to reflect the most recent and best thinking as it related to training. Appx. Ex. 5, p. 300, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

125. Jeff Williams testified training of providers was a never-ending process. Appx. Ex. 5, p. 302, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

126. In an email dated January 16, 2020, Jeff Williams stated, "do we need to have a chat with the worst coders. . .make sure they are accurately coding?" Appx. Ex. 60.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

127. Jeff Williams testified that Dr. Yvonne Monroe raised concerns about the accuracy of coding of CPT Code 90833. Appx. Ex. 5, p. 112, l. 21.

Admitted..

128. Jeff Williams testified there was an ongoing dispute as to how to properly code CPT Code 90833. Appx. Ex. 5, p. 162, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

129. Jeff Williams testified he discussed CPT Code 90833 concerns with Dr. Yvonne Monroe. Appx. Ex. 5, p. 163, l. 11.

Admitted.

130. Jeff Williams testified a decision was made to obtain the services of a certified coder to review the concerns raised by Dr. Yvonne Monroe. Appx. Ex. 5, p. 170, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, that no one confronted Dr. Greenberg regarding these 90833 fraud allegations, and that no audit was done of Dr. Greenberg claims. See. Rob Oliveri Deposition at 148:17-150:23, 175:1-20..

131. Jeff Williams testified there were numerous meetings and discussions surrounding the coding concerns raised by Dr. Yvonne Monroe. Appx. Ex. 5, p. 172, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

40

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, that no one confronted Dr. Greenberg regarding these 90833 fraud allegations, and that no audit was done of Dr. Greenberg claims. See. Rob Oliveri Deposition at 148:17-150:23, 175:1-20.

132. Jeff Williams testified that front desk staff raised concerns on accuracy of CPT Code 90833 coding. Appx. Ex. 5, p. 113, l. 1.

Admitted.

133. Jeff Williams testified that BCBS raised an issue of CPT Code 90833 coding as part of the pre-payment audit. Appx. Ex. 5, p. 113, l. 9.

Admitted.

### B. Abigail Sheriff (COO of MSO)

134. Abigail Sheriff handled provider relations such as proper training, connecting providers to clinical trainers and supervisors, and arming clinicals with resources. Appx. Ex. 7, p. 32, l. 1.

Admitted.

135. Abigail Sheriff testified Mindpath relied on the clinical supervisors to convey clinical information and training. Appx. Ex. 7, p. 53, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

41

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

136.  Abigail Sheriff testified that providers were encouraged to provide a patient with the service needed and document the services provided to the patient.   Appx. Ex. 7, p. 90, l. 18.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

137.  Abigail Sheriff testified that Mindpath did not determine of [sic] percentage of codes to bill.  Appx. Ex. 7, p. 90, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

138.  Abigail Sheriff testified that Mindpath instructed providers to provide patients the services clinically needed to treat the patient.  Appx. Ex. 7, p. 90, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

42

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

139. Abigail Sheriff testified that the Quality and Standards Board frequently discussed providing the highest clinical quality documentation and coding standards. Appx. Ex. 7, p. 236, l. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

140. Abigail Sheriff testified that accurate coding was a higher priority than other interpersonal complaints. Appx. Ex. 7, p. 316, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

141. Abigail Sheriff testified that Mindpath was always paying great attention to coding matters. Appx. Ex. 7, p. 316, l. 25.

43

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

142. Abigail Sheriff testified that Mindpath constantly provided training to providers. Appx. Ex. 7, p. 316, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

143. Abigail Sheriff testified that if a front desk staff member or patient complained, Ms. Sheriff would activate the supervising physician or medical director to meet with the provider at issue. Appx. Ex. 7, p. 60, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

44

144.  Abigail Sheriff testified that some providers may be placed on a performance improvement plan if warranted.  Appx. Ex. 7, p. 60, l. 15.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

145.  Abigail Sheriff testified [sic] recalls numerous providers that were either put on a performance improvement plan or retrained when needed.  Appx. Ex. 7, p. 61 – 63.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

146.  Abigail Sheriff testified that the discipline related to evaluation and management services and CPT Code 90833 was to train.  Appx. Ex. 7, p. 63, l. 4.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

45

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

147. Abigail Sheriff testified that concerns related to provider coding and documentation centered around providers not understanding how to properly document or rushing through documentation. Appx. Ex. 7, p. 67, l. 14.

>Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

148. Abigail Sheriff testified that while there were concerns, there were not concerns about whether providers understood the core elements and whether or not the providers were providing the services. Appx. Ex. 7, p. 67, l. 23.

>Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

149. Abigail Sheriff testified that specific steps taken by Mindpath to address concerns that providers were not accurately documenting the separate and distinct psychotherapy time in the progress notes were to alert the supervising physician, engage in training, provide broad

clinical guidelines, periodic audits, and if a coding error was discovered, ask providers to correct claims, downcode or refile the claim. Appx. Ex. 7, p. 338, l. 14.

>Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

150. Abigail Sheriff testified that a complaint from front desk staff, such as Anjelica Brown and Ashley Stewart, related to a provider would have been handled my Ms. Sherriff "in real time" by contacting the supervising physician. Appx. Ex. 7, p. 306, l. 17.

>Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

151. Abigail Sheriff responded to Anjelica Brown and Ashley Stewart thanking them for the information regarding provider concerns and advising that Mindpath was "beefing up our clinical management program and putting a process in place to directly address coding with providers as well as brining on a professional coder." Abigail Sheriff also encouraged front desk staff to continue to provide management with information related to any concerns. Appx. Ex. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

152. Abigail Sheriff testified that "there was never a time" when Mindpath was no [sic] "all over coding." Appx. Ex. 7, p. 316, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

153. In February 2019, when Mindpath was introducing a new compensation model, Abigail Sheriff told providers that "I want to reemphasize that accurate coding on 90833's is also important to the overall outcome. … We will very shortly provide additional training on proper coding …" Appx. Ex. 31.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

48

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

154. Abigail Sheriff testified that Mindpath understood that CPT Code 90833 requires significant and separately identifiable documentation as to the time spent. Appx. Ex. 7, p. 69, l. 10.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

155. Abigail Sheriff testified that the guidance given to providers was to enter their patient notes in real time. Appx. Ex. 7, p. 153, l. 5.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

156. Abigail Sheriff testified that the guidance given to providers was to enter the actual time spent with a patient, not to guess the time spent. Appx. Ex. 7, p. 153, l. 8.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

49

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

157. Abigail Sheriff testified that what controls the evaluation and management CPT Code 99213 versus a 99214 is medical decision-making, the complexity of the patient and how much is documented by the provider. Appx. Ex. 7, p. 172, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

158. Abigail Sheriff testified that there was confusion as to the appropriate amount of time necessary for a CPT Code 99214, but there was no confusion as to the required 16 minutes for a CPT Code 90833. Appx. Ex. 7, p. 170, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

159.  Abigail Sheriff testified that actual time in psychotherapy was interwoven with the evaluation and management portion of a patient session.  Depo. p. 331, l. 23; Appx.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

160.  Abigail Sheriff testified that providers were trained on the requirements for a CPT Code 90833.  Appx. Ex. 7, p. 274, l. 1.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

161.  In February 2019, Mindpath produced a "cheat sheet" with guidance on CPT coding.  Appx. Ex. 55.

Admitted.

162.  In March 2019, Mindpath produced another version of a "cheat sheet" with guidance on CPT coding.  Appx. Ex. 57.

Admitted.

51

163. In February 2019, medical director Dr. Lawrence Greenberg prepared a sample patient example of a patient session including evaluation and management and psychotherapy for discrimination to providers as to appropriate documentation and coding. Appx. Ex. 58.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

164. April 2019 onboarding materials for training [sic]. Appx. Ex. 59.

> Disputed as characterized and incomplete statement.

165. In May 2019, Abigail Sheriff shared a reminder to provider related to CPT Code 90833 guidance, including a minimum of 16 minutes of therapy. Appx. Ex. 29.

> Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

166. In June 2019, Abigail Sheriff requested the medical director follow up with providers over proper documentation of time for the psychotherapy portion of a patient visit. Appx. Ex. 61.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

167. In June 2019, Abigail Sheriff sent an email to providers reminding them of the importance of CPT Code 90833 documentation. Appx. Ex. 30.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

168. In July 2019, Abigail Sheriff responded to concerns over the documentation of time for psychotherapy that she would address the issues. Appx. Ex. 63.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

169. In July 2019, Abigail Sheriff sent an email to providers reminding them of the importance of CPT Code 90833 documentation. Appx. Ex. 32 and 64.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

170. In July 2019, Abigail Sheriff responded to concerns over the documentation of time for psychotherapy that she would deploy Dr. Yvonne Monroe to counsel the providers. Appx. Ex. 62.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

171. In December 2019, Abigail Sheriff contacted Dr. Yvonne Monroe inquiring about connecting with a provider over concerns of documentation during a patient session. Dr. Yvonne Monroe met with the provider. Appx. Ex. 22.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

54

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

172. In May 2020, Mindpath's medical director sent an update with refresher coding guidance to providers. Appx. Ex. 67.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

173. Abigail Sheriff testified that Mindpath's philosophy was that the management trained, and the provider decided. Appx. Ex. 7, p. 310, l. 22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

174. Mindpath's unified message was "We train, clinicians decides." Appx. Ex. 47.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

175. Abigail Sheriff testified that Mindpath consulted with an outside consultant, Nicole Oliveri, in late 2018 or early 2019. Appx. Ex. 7, p. 72, l. 15.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

176. Abigail Sheriff testified that Nicole Oliveri audited Dr. Lawrence Greenberg's patient charts in late 2018 or early 2019. Appx. Ex. 7, p. 98, l. 12.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, that no one confronted Dr. Greenberg regarding these 90833 fraud allegations, and that no audit was done of Dr. Greenberg claims. See, Rob Oliveri Deposition at 148:17-150:23, 175:1-20.

177. Abigail Sheriff testified that she understood Dr. Yvonne Monroe believed that Dr. Lawrence Greenberg's patient sessions should have been longer. Appx. Ex. 7, p. 219, l. 13.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

178. Abigail Sheriff testified that she believed Dr. Yvonne Monroe's issues [sic] with Dr. Lawrence Greenberg's time spent on the evaluation and management part of the patient session. Appx. Ex. 7, p. 226, l. 17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

179. Abigail Sheriff testified that at the time she did not believe Dr. Yvonne Monroe was complaining that Dr. Lawrence Greenberg was not spending at least 16 minutes in psychotherapy sessions. Appx. Ex. 7, p. 228, l. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

180. Abigail Sheriff testified she believed Dr. Lawrence Greenberg was coding for the services he had provided. Appx. Ex. 7, p. 229, l. 22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

181. Abigail Sheriff testified Mindpath's belief was that Dr. Lawrence Greenberg was coding appropriately but could better utilized the template. Appx. Ex. 7, p. 231, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

182. Abigail Sheriff testified that Nicole Oliveri prepared Coding Guidelines. Appx. Ex. 7, p. 268, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

183. In March 2019, Mindpath circulated coding guidelines to providers which noted the following for CPT Code 90833: exact clinical documentation of 16 minutes of [sic] more that is separate and identifiable. Appx. Ex. 68.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

184. Abigail Sheriff testified that clinical leadership was responsible for ensuring providers followed policies and guidelines. Appx. Ex. 7, p. 84, l. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

185. Abigail Sheriff routinely directed Mindpath providers to the medical director for coding and documentation guidance. Appx. Ex. 69 and 70.

59

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

186. Abigail Sheriff testified that she and Dr. Diego Garza developed a supervision program. Appx. Ex. 7, p. 120, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

187. Abigail Sheriff testified the supervision program had a checklist the supervising physician would have utilized and documented the results of the audits performed. Appx. Ex. 7, p. 120, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

188.  Abigail Sheriff testified that Steve Monroe and Deborah Jackson would monitor providers making too many mistakes and hold claims if they identified a problem.  Appx. Ex. 7, p. 55, l. 1.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

189.  Abigail Sheriff testified that Steve Monroe and Deborah Jackson would monitor a provider if they determined a pattern.  Appx. Ex. 7, p. 55, l. 17.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

190.  Abigail Sheriff testified that if a pattern was detected, a concerted training effort would occur.  Appx. Ex. 7, p. 55, l. 22.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

61

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

191.  Abigail Sheriff testified that Mindpath had a strong auditing program.  Appx. Ex. 7, p. 56, l. 2.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

192.  Abigail Sheriff testified that at some point, supervising physicians were reviewing 10 charts per provider.  Appx. Ex. 7, p. 56, l. 11.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

193.  Abigail Sheriff testified that in 2019 and 2020, Mindpath had a formal procedure of auditing 10 charts.  Appx. Ex. 7, p. 56, l. 19.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

62

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

194. Abigail Sheriff testified she collaborated with Dr. Garza on a chart audit process. Appx. Ex. 7, p. 56, l. 22.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

195. Abigail Sheriff testified the chart audit process included a formal chart review with a checklist. Appx. Ex. 7, p. 57, l. 5.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

196. Abigail Sheriff testified that part of the checklist was whether or not documentation was adequate and was there was medical necessity. Appx. Ex. 7, p. 59, l. 4.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

197.   Abigail Sheriff testified that the checklist focused on medical decision-making, a strong treatment plan and to see if the note met for [sic] the criteria for submission.  Appx. Ex. 7, p. 59, l. 9.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

198.   Abigail Sheriff testified that the medical director and clinical leadership was responsible for developing billing and coding policies.  Appx. Ex. 7, p. 80, l. 14.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

199.   Abigail Sheriff testified that clinical leadership set the clinical policy.  Appx. Ex. 7, p. 144, l. 21.

64

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

200. Abigail Sheriff testified that the medical director with the support of the Chief Financial Officer would have been responsible for providing guidance regarding billing issues. Appx. Ex. 7, p. 80, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

201. Abigail Sheriff testified that there was a collaborative approach, clinical leadership would have made training decisions. Appx. Ex. 7, p. 84, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

202. Abigail Sheriff testified that clinical leadership made sure policies and guidelines were followed through training, audits, supervision and meetings. Appx. Ex. 7, p. 84, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

203. Abigail Sheriff testified that Steve Monroe was responsible for ensuring Medicare submissions were coded and billed consistent with Medicare requirements. Appx. Ex. 7, p. 85, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

204. Abigail Sheriff testified Steve Monroe would have been responsible for uncovering and monitoring if claims were being coded incorrectly to Medicare. Appx. Ex. 7, p. 85, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

66

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

205. Abigail Sheriff testified that Steve Monroe would have been responsible for making sure all Medicare claims repayments were made. Appx. Ex. 7, p. 85, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

206. Abigail Sheriff testified that providers were encouraged to provide a patient the service and document the service provided. Appx. Ex. 7, p. 90, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

207. Abigail Sheriff testified it was first recognized that Mindpath needed a certified coder when Dr. Yvonne Monroe raised a coding concern. Uncertainly continued as it related to documenting the CPT Code 90833 beyond the separate and identifiable documentation. Appx. Ex. 7, p. 96, l. 23.

67

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

208. Abigail Sheriff testified she does not recall any paybacks to BCBS and that Mindpath "was happy with the results of the audit." Appx. Ex. 7, p. 130, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

209. Abigail Sheriff testified that the chart audit process was instituted for all Advanced Practitioners. Appx. Ex. 7, p. 58, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### C.    Sarah Williams (Front Desk Operations Manager of MSO)

68

210.  Sarah Williams testified that front desk staff were directed to notify their supervisor if had concerns.  Appx. Ex. 3, p. 100, l. 20.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

211.  Sarah Williams testified she directed front desk staff to send specific examples of concerns so those concerns could be properly investigated.  Appx. Ex. 3, p. 76, l. 7.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

212.  Sarah Williams testified she was aware of front desk staff concerns related to billing issues and Ms. Williams escalated the concerns to Abby Sheriff.  Appx. Ex. 3, p. 43, l. 11; Appx.

Admitted.

213.  In an April 2019 email, Sarah Williams responded to front desk staff member Ashley Stewart acknowledging her concern and advising her Abigail Sheriff would respond. Appx. Ex. 71.

Admitted.

214.   Sarah Williams testified she routinely passed any concerns brought to her attention to Abby Sheriff.  Appx. Ex. 3, p. 100, l. 25.

Admitted.

215.   Sarah Williams testified she conveyed to Anjelica Brown and others that the concerns they expressed were a serious issue and they should alert management so the matter could be investigated.  Appx. Ex. 3, p. 219, l. 4.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

216.   In September 2019, Anjelica Brown recorded a conversation with Sarah Williams. Appx. Ex. 72.

Admitted.

217.   Sarah Williams testified she conveyed to Anjelica Brown and others that incorrect coding and billing was a concern to Mindpath.  Appx. Ex. 3, p. 219, l. 25.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

70

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

218. Sarah Williams testified she conveyed to Anjelica Brown and others that once they raise a concern, it takes time to respond because an investigation would occur and follow up which could include a meeting with a provider. Appx. Ex. 3, p. 220, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

219. Sarah Williams testified that she directed Anjelica Brown and others to keep a list of concerns and send over detailed information. Appx. Ex. 3, p. 216, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

220. Sarah Williams testified that she did attempt to handle each complaint brought to her attention. Appx. Ex. 3, p. 257, l. 2.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

221. Sarah Williams testified she believed Mindpath was addressing coding behaviors. Appx. Ex. 3, p. 302, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

222. Sarah Williams testified she never suggested to Relator Anjelica Brown to not raise concerns. Appx. Ex. 3, p. 270, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

223. Sarah Williams testified she believed concerns raised by Relator Anjelica Brown about a particular provider were being addressed. Appx. Ex. 3, p. 270, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

224. Sarah Williams testified she was not personally involved in generating, reviewing or submitting bills on behalf of the Physician Practice. Appx. Ex. 3, p. 16, l. 13-15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

**D.    Rob Oliveri (CFO of MSO)**

225. Rob Oliveri testified that Sarah Williams job responsibilities began and ended with supervising the front desk staff. Appx. Ex. 15, p. 71, l. 21; p. 72, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

226. Rob Oliveri testified that care dictates the code. Depo. p. 35, l. 7; Appx.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

227. Rob Oliveri testified that the medical director dictated the medical are of the patient. Appx. Ex. 15, p. 34, l. 23.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

228. Rob Oliveri testified that the medical director translated what defined proper medical care to the patient. Appx. Ex. 15, p. 34, l. 23.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

229. Rob Oliveri testified that management did not dictate care. Appx. Ex. 15, p. 44, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

230. Rob Oliveri testified that Mindpath did not have billing strategies. Appx. Ex. 15, p. 40, 1. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

231. Rob Oliveri testified that providers were directed to bill based on the services provided. Appx. Ex. 15, p. 40, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

232. Rob Oliveri testified optimized coding means billing for the services actually performed. Appx. Ex. 15, p. 43, l. 17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

233. Rob Oliveri testified that optimized coding is accurate coding which is also optimal coding. Appx. Ex. 15, p. 134, l. 22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

234. Rob Oliveri testified that he stressed accurate coding. Appx. Ex. 15, p. 188, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

76

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

235.  Rob Oliveri testified that Mindpath management pushed for accurate coding. Appx. Ex. 15, p. 188, l. 21.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

236.  In an email dated January 1, 22, 2019 Rob Oliveri stated, "The code doesn't determine the care, rather vice versa.  We do what we think is appropriate for the patient and the code follows."  Appx. Ex. 73.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

237.  Rob Oliveri testified that Mindpath management urged providers to bill for the services provided, provide services medically necessary and everything else would follow.  Appx. Ex. 15, p. 188, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

238. In March 2020, Rob Oliveri directed Jennifer Arnold to discuss coding habits with a provider and to audit 20 charts of the provider related to the time for the CPT Code 90833. Appx. Ex. 97.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that Jennifer Arnold did not start as a full time coder until February, 2020.

239. Rob Oliveri testified the tenor of the culture of the company was to make sure the company maintaining a compliant environment. Appx. Ex. 15, p. 75, l. 17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

78

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

240. Rob Oliveri testified there was business incentive to do what was right for the patient. Appx. Ex.15, p. 126, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

241. Rob Oliveri testified that if Mindpath provided good customer service, which included providing the services that were right for the patient, then profits would follow. Appx. Ex. 15, p. 126, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

242. Rob Oliveri testified that providers billing for the work that was performed was a top priority of Mindpath. Appx. Ex. 15, 138, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

79

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

243. Rob Oliveri testified there were not discussions regarding providers billing more evaluation and management CPT Codes or CPT Code 90833. Appx. Ex. 15, p. 127, l3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

244. Rob Oliveri testified that Deb Jackson and Steve Monroe reviewed claims. Appx. Ex. 15, p. 52, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

245. Rob Oliveri testified that Deb Jackson and Steve Monroe performed a pre-claim review, looking at claims before they were submitted. Appx. Ex. 15, p. 53, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

246. Rob Oliveri testified that Tory Wood will adjust claims if needed. Appx. Ex. 15, p. 52, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

247. Rob Oliveri noted when CPT Code 90833 documentation was insufficient to submit a patient claim [sic]. Appx. Ex. 75.

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

248.  Rob Oliveri testified that Blue Cross Blue Shield instituted a prepayment review. Appx. Ex. 15, p. 218, l. 5.

Admitted.

249.  Rob Oliveri testified that Blue Cross Blue Shield stopped the prepayment review in September 2019.  Appx. Ex. 15, p. 259, l. 6.

Admitted.

250.  Rob Oliveri testified Jennifer Arnold was hired to perform a post claims review. Appx. Ex. 15, p. 53, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that she did not being work as full time coder until February 2020.

251.  Rob Oliveri hired Jennifer Arnold to perform a post-claim, post-month claim review.  Appx. Ex. 15, p. 52, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's

factual statements below, including that she did not being work as full time coder until February 2020.

252.  Rob Oliveri testified that Jennifer Arnold was also hired to train providers with a clear and concise message on coding.  Appx. Ex. 15, p. 53, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that she did not being work as full time coder until February 2020.

253.  Rob Oliveri testified that Deb Jackson and Steve Monroe's pre-submission claim review remained ongoing after Jennifer Arnold was hired as she was performing back-end review. Appx. Ex. 15, p. 56, l. 14.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

254.  Rob Oliveri testified that coding was the providers' responsibility.  Appx. Ex. 15, p. 69, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

255. Rob Oliveri testified that Mindpath was making sure the documentation supported the code the provider selected. Appx. Ex. 15, p. 69, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

256. Rob Oliveri testified that the post review process was to review claims and initiate training if needed. Appx. Ex. 15, p. 72, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

257. Rob Oliveri testified that if an issue with a claim was discovered, Tory Wood would be notified to make an adjustment to the claim. Appx. Ex. 15, p. 72, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

258. Rob Oliveri testified recalls that his wife reviewed claims in late 2018 or early 2019 as there was an alternative position with two schools of belief. Appx. Ex. 15, p. 118, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

259. Rob Oliveri testified that Jennifer Arnold reviewed 10 charts per provider to confirm the documentation supported the code that was billed. Appx. Ex. 15, p. 121, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's

85

factual statements below, including that she did not being work as full time coder until February 2020.

260. Rob Oliveri testified that if a provider was an outlier, information was sent to the medical director or the supervising physician suggesting they pull the provider's charts to determine if the patient care was appropriate. Appx. Ex. 15, p. 127, l. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

261. Rob Oliveri testified that providers were reviewed to determine why their coding habits were outliers. Appx. Ex. 15, p. 127, l. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

262. Rob Oliveri testified that when customer complaints were received, Mindpath would investigate and rectify. Appx. Ex. 15, p. 347, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

86

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

263.   Rob Oliveri testified that he stressed accurate coding.  Appx. Ex. 15, p. 188, l. 15. Disputed as characterized.   The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

264.   In an email dated June 5, 2019, Rob Oliveri stated, ""I want to emphasize that I never advocated for promoting any code other than the correct one for the work performed.  I have always said the patient need determines the care path and care and documentation of such determines the code."  Appx. Ex. 74.

Disputed as characterized.  The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

265. Rob Oliveri testified that if Deb Jackson reviewed a claim and did not see substantiation for a CPT Code 90833, Ms. Jackson would not bill the code. Appx. Ex. 15, p. 231, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

266. Rob Oliveri testified that Deb Jackson kept a spreadsheet and if any trends were discovered, Mindpath would make sure the provider would receive training. Appx. Ex. 15, p. 231, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### E. Blair Ferry (Customer Service Manager of MSO)

267. Blair Ferry testified that providers were directed to code based on the services provided to patients. Appx. Ex. 16, p. 46, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

88

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

268. Blair Ferry testified that Mindpath trained that upcoding and downcoding were improper. Appx. Ex. 16, p. 56, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

269. Blair Ferry testified that Mindpath's parameters for coding were to code based on the services provided and coding that way was the right things for providers to do. Appx. Ex. 16, p. 59, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

270. Blair Ferry testified that Mindpath did not have any target percentages for codes. Appx. Ex. 16, p. 95, l. 20.

89

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

271. Blair Ferry testified that Deb Jackson performed a charge review which was a final administrative clean-up before releasing claims. Appx. Ex. 16, p. 26, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

272. Blair Ferry testified the claim review process was to check for errors before claim submission. Appx. Ex. 16, p. 27, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

273.  Blair Ferry testified that the Customer Service Department fielded calls from customers.  Appx. Ex. 16, p. 35, l. 6.

Admitted.

274.  Blair Ferry testified that if a customer submitted a complaint, the customer service team would review the provider note, conduct a review and determine if the parameters were met.  Appx. Ex. 16, p. 36, l. 9.

Admitted.

275.  Blair Ferry testified she would conduct a low-level investigation and relay findings to the patient.  Appx. Ex. 16, p. 130, l. 6.

Admitted.

276.  Blair Ferry testified that in reviewing a provider note, if the parameters were not met, Ms. Ferry would escalate the customer complaint to Tory Wood.  Appx. Ex. 16, p. 36, l. 9.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

277.  Blair Ferry testified that if a patient complained they only met with a provider for ten minutes, that patient complaint warranted investigation.  Appx. Ex. 16, p. 87, l. 9.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

91

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

278.  Blair Ferry testified that once Jennifer Arnold was hired, if a patient complained about CPT Code 90833, Ms. Ferry would contact Ms. Arnold for an assessment if the service was documented and billed appropriately.  Appx. Ex. 16, p. 141, l. 9.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

279.  Blair Ferry testified that Steve Monroe was the Medicare "clean-up person."  Appx. Ex. 16, p. 44, l. 5.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

280.  Blair Ferry testified that Steve Monroe issued refunds to Medicare and corrected claims to Medicare.  Appx. Ex. 16, p. 147, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

281. Blair Ferry testified that if she noticed provider errors that warranted further escalation, Ms. Ferry would raise concerns to Abby Sheriff. Appx. Ex. 16, p. 76, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### F. Deborah Jackson (Operations Manager of MSO)

282. Deb Jackson testified that she did not engage in discussion about optimizing or maximizing coding. Appx. Ex. 11, p. 65, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

93

283. Deb Jackson testified she does not recall discussions that CPT 90833 were required to be billed with all Evaluation and Management codes. Appx. Ex. 11, p. 65, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

284. Deb Jackson testified she does not recall discussions regarding the percentages of CPT 90833 claims that providers should bill. Appx. Ex. 11, p. 65, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

285. Deb Jackson performed a charge review of claims. Appx. Ex. 11, p. 42, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

94

286.   Deb Jackson testified that as part of her billing/claim review process, Ms. Jackson would look beyond the electronic information if the code the provider selected did not seem appropriate.  Appx. Ex. 11, p. 34, l. 3.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

287.  Deb Jackson testified the Mindpath billing department would refund any errors that were identified.  Appx. Ex. 11, p. 36, l. 21.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

288.  Any billing complaints that were received were thoroughly investigated, and corrective action was taken where appropriate, such as correcting the claim prior to submission, cancelling the submitted claim and resubmitting a corrected claim, or refunding identified overpayments.  Appx. Ex. 27.

Disputed as characterized.  The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

289. Deb Jackson testified that she recalls Steve Monroe issuing refunds. Appx. Ex. 11, p. 99, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

290. Deb Jackson testified that Steve Monroe was the ultimate decisionmaker if a claim was inappropriately [sic] and could not be billed. Appx. Ex. 11, p. 43, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

291. Deb Jackson testified that if a claim was complicated, Ms. Jackson would speak with Steve Monroe regarding the claim at issue. Appx. Ex. 11, p. 43, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

292. Deb Jackson testified that if there was an issue with a Medicare claim, the claim was directed to Steve Monroe. Appx. Ex. 11, p. 46, l. 22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

293. Deb Jackson testified that if Steve Monroe disagreed with the code a provider selected, Steve Monroe directed the claim to Rob Oliveri. Appx. Ex. 11, p. 51, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

97

294.   Deb Jackson testified that she kept a running list of providers that she gave extra attention to those claims as they related to coding.  Appx. Ex. 11, p. 60, l. 20.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

295.   Deb Jackson testified that if she noticed a pattern of coding behavior by a provider, Ms. Jackson would check the provider further.  Appx. Ex. 11, p. 83, l. 13.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

296.  Deb Jackson testified the billing department did a post-payment review if a customer complaint was received.  Appx. Ex. 11, p. 78, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

297. Deb Jackson testified that if the billing department noticed discrepancies during the remittance process, the billing department may review the provider's note related to the claim. Appx. Ex. 11, p. 79, l. 3.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

298. Deb Jackson testified if the Mindpath billing department detected an issue, the billing department would correct any error, rebill the claim and issue a refund. Appx. Ex. 11, p. 98, l. 22.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

299. Deb Jackson testified Steve Monroe had the authority to issue refunds and Ms. Jackson recalls Steve Monroe issuing refunds. Appx. Ex. 11, p. 99, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

300. Deb Jackson testified that Mindpath went into a prepayment audit with Blue Cross Blue Shield in 2019. Appx. Ex. 11, p 197, l. 6; p. 199; 24.

Admitted.

301. Deb Jackson was tracking errors during the Blue Cross Blue Shield prepayment audit. Appx. Ex. 75, 76, 77, 78, 26 and 79.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

302. Deb Jackson testified that Mindpath made the adjustments that Blue Cross Blue Shield suggested during the pre-payment to Medicare claims in 2019 and 2020. Appx. Ex. 11, p. 333, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

303.  During the Blue Cross Blue Shield pre-payment audit, there was no evidence of fraud such as overcoding or time padding or billing sessions for no show patient appointments. Appx. Ex. 25.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

304.  In September 2019, after the Blue Cross Blue Shield pre-payment audit had concluded, Mindpath's Medical Director reiterated to providers that CPT Code 90833 requires a minimum of 16 minutes of face-to-face time with a patient.  The Medical Director stated that Mindpath was "interested in accuracy not a predetermined number" as it related to time spent with a patient.  Appx. Ex. 81.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

305. On August 9, 2018, Dr. Lawrence Greenberg noted Mindpath's 91% accuracy, noting that "Good coding never over codes." Exhibit 194

Disputed as characterized. The self-serving statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

306. Deb Jackson testified that Mindpath corrects errors and repaid any claims as necessary. Appx. Ex. 11, p. 337, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### G. Kristie Richmond (Nurse Practitioner with Physician Practice)

307. Kristie Richmond testified she does not recall a certain number of CPT Code 99214 as a billing target nor does Richmond recall being told she needed to ill [sic] more CPT Code 99214. Appx. Ex. 12, p. 108, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

102

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

308.    Kristie Richmond testified she was not instructed to round up the amount of time she spent providing psychotherapy to patients.  Appx. Ex. 12, p. 141, l. 10.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

309. Kristie Richmond testified she was told to bill CPT 90833 if the service she provided warranted the code.  Appx. Ex. 12, p. 145, l. 20.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

310. Kristie Richmond testified she was not instructed to bill CPT Code 90833 to patients that did not show up for their appointment.  Appx. Ex. 12, p. 145, l. 23.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

311. Kristie Richmond testified she does not recall being instructed to increase the number of CPT Code 90833 she billed. Appx. Ex. 12, p. 147, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

312. Kristie Richmond testified no one educated her on the reimbursement amount associated with CPT Code 90833. Appx. Ex. 12, p. 148, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

313. Kristie Richmond testified she was never told by Mindpath's officers or managers that billing an evaluation and management CPT Code alone would not be sufficient for Mindpath's financial survival. Appx. Ex. 12, p. 148, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

314. Kristie Richmond testified she was not encouraged to squeeze an evaluation and management CPT code and CPT Code 90833 in 30-minute intervals. Appx. Ex. 12, p. 151, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

315. Kristie Richmond testified that coding efficiently meant utilizing the correct codes for the services provided to the patient. Appx. Ex. 12, p. 155, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

316. Kristie Richmond testified no one expressed concerns to her regarding upcoming evaluation and management or compliance with Medicare. Appx. Ex. 12, p. 156, l. 12; p. 164, 1. 20.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

317. Kristie Richmond testified she always spent 16 minutes of time on psychotherapy. Appx. Ex. 12, p. 168, l. 10.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

318. Kristie Richmond testified she received onboarding training. Appx. Ex. 12, p. 79, l. 17.

> Admitted.

319. Kristie Richmond testified there was ongoing training for providers. Appx. Ex. 12, p. 39, l. 11.

106

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### H. Tory Wood (Billing Manager of MSO)

320. Tory Wood testified that the medical director decided what the policy would be for billing codes. Appx. Ex. 9, p. 26, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

321. Tory Wood testified that the medical director was the ultimate decider on what should be documented. Appx. Ex. 9, p. 26, l. 12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

322. Tory Wood testified that optimized coding and increasing revenue was not discussed with her. Appx. Ex. 9, p. 128, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

323. Tory Wood testified that providers were told to correctly document the service that was performed. Appx. Ex. 9, p. 128, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

324. Tory Wood testified she recalls discussions about more accurately documenting the psychotherapy provided to patients. Appx. Ex. 9, p. 252, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

108

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

325. Tory Wood testified Rob Oliveri desired accuracy in coding. Appx. Ex. 9, p. 277, l. 1.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

326. Tory Wood testified that the billing department did look for data entry errors. Appx. Ex. 9, p. 32, l. 17.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

327. Tory Wood testified the front desk was directed to reach out to billing if they had concerns. Appx. Ex. 9, p. 34, l. 7.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

109

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

328. Tory Wood testified that the billing department would review provider notes if a claim did not look appropriate. Appx. Ex. 9, p. 31, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

329. Tory Wood testified that the billing staff would approach the medical director or Abby Sheriff with any billing questions. Appx. Ex. 9, p. 61, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

330. Tory Wood testified she was aware that providers would approach their supervising physician or the medical director with questions. Appx. Ex. 9, p. 61, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

331. Tory Wood testified that if the customer service department received a customer complaint, the billing department would investigate the complaint by checking the provider note, preparing and summary and forwarding it to the Medical Director. Appx. Ex. 9, p. 93, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

332. Tory Wood testified that after receiving a summary of a customer complaint, the medical director would review the summary and provide direction. Appx. Ex. 9, p. 93, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

333. Tory Wood testified that after input from the medical director on a customer complaint, the customer service department would forward the matter to Deb Jackson or Steve Monroe. Appx. Ex. 9, p. 93, l. 14.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

334. Tory Wood testified that the medical director or supervising physicians communicated with providers who were struggling with documentation compliance. Appx. Ex. 9, p. 231, l. 19.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

335. Tory Wood testified that an example of a complaint being handled is when a front desk staff member raised a concern of provider Jerry Ji's coding conduct, Ms. Wood did not bill the claims because it lacked adequate time to support the code selected by provider Ji. Appx. Ex. 9, p. 236, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

336. In September 2019, Tory Wood did not bill a claim of provider Jerry Ji because the claim lacked adequate time to support the code. Appx. Ex. 82.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

337. Tory Wood also notified the Relator Anjelica Brown that she could forward documentation to the billing department if she believed a provider was coding incorrectly. Appx. Ex. 66.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

338.  Tory Wood testified that Steve Monroe billed Medicare claims.  Appx. Ex. 9, p. 40, l. 25.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

## I.    Dr. James Smith (Medical Director of Physician Practice)

339.  Dr. James Smith testified that the medical director was the ultimate decisionmaker on coding issues.  Appx. Ex. 8, p. 34, l. 22.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

340.  Dr. James Smith testified that Mindpath did not guide providers to provide services in a specific way for a specific amount of time.  Appx. Ex. 8, p. 31, l. 24.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

341. Dr. James Smith testified that Mindpath did not have strategies to optimize or maximize reimbursements. Appx. Ex. 8, p. 41, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

342. Dr. James Smith testified that the medical director, in conjunction with the managed services organization, made billing and coding policies. Appx. Ex. 8, p. 36, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

343. Dr. James Smith testified that the medical director was responsible for implementing policies and guidance related to coding. Appx. Ex. 8, p. 37, l. 11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

344. Dr. James Smith testified that Smith and the Quality and Standards Board were responsible for training Mindpath providers on policies and guidance regarding coding. Appx. Ex. 8, p. 40, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

345. Dr. James Smith testified he does not recall discussing that a certain percentage of evaluation and management services needed to also include CPT Code 90833. Appx. Ex. 8, p. 43, l. 24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

346. Dr. James Smith testified he does not recall discussions regarding increasing the percentages of CPT Code 90833 billed by providers. Appx. Ex. 8, p. 43, l. 25.

116

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

347. Dr. James Smith testified he wanted providers to document the services provided to the patient and bill the correct code. Appx. Ex. 8, p. 54, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

348. Dr. James Smith testified that Mindpath did not force providers to code in a certain manner. Appx. Ex. 8, p. 90, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

117

349. Dr. James Smith testified Mindpath offered guidance to providers as to how to code appropriately based on documentation. Appx. Ex. 8, p. 90, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

350. Dr. James Smith testified that through training, Mindpath put procedures in place to make sure providers properly and accurately separated them in their provider notes the evaluation and management portion of a session from the CPT Code 90833. Appx. Ex. 8, p. 99, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

351. Dr. James Smith testified that Mindpath tried to address any documentation and coding issues through training. Appx. Ex. 8, p. 117, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

352. Dr. James Smith testified that in working with a provider, he would provide a provider their chart, highlight an issue within the chart and seek an explanation from the provider. Appx. Ex. 8, p. 119, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

353. Dr. James Smith testified that corrective action toward a provider would occur if necessary. Appx. Ex. 8, p. 119, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

354. Dr. James Smith testified that the primary purpose of the Quality and Standards Board was to ensure good clinical work. Appx. Ex. 8. p. 257, l. 17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

355. Dr. James Smith testified that issues raised related to CPT Code 90833 were brought to the Quality and Standards Board. Appx. Ex.8, p. 250, l. 18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### J. Stanley Monroe (President of MSO)

356. Stanley Monroe testified he was the compliance officer. Appx. Ex. 14, p. 76, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, including that few knew who was the Compliance Officer.

120

357. Stanley Monroe testified that Steve Monroe researched Medicare bulletins. Appx. Ex. 14, p. 137, l. 18.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

358. Stanley Monroe testified that there was a free flow of information at Mindpath at every level, from the Quality and Standards Board to the C-suite and then various members of both clinical leadership and administrative management. Appx. Ex. 14, p. 52, l. 14.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

359. Stanley Monroe testified that whether it was referred to as optimized coding or maximized coding, providers should get the proper amount of money for the services performed. Appx. Ex. 14, p. 152, l. 5.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

360. Stanley Monroe testified providers were expected to treat the patient with the exact service needed and that the provider should select the proper code for the service provided, neither under nor over coding. Appx. Ex. 14, p. 150, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

361. Stanley Monroe testified Mindpath wanted to increase revenues through legitimate methods. Appx. Ex. 14, p. 133, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

362. Stanley Monroe testified that retraining was a common occurrence. Appx. Ex. 14, p. 199, l. 9.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

363. Stanley Monroe testified that the clinical practice was responsible for coding training. Appx. Ex. 14, p. 193, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

364. Stanley Monroe testified that clinical leadership, including the medical director and the Quality and Standards Board, would have been responsible for interpreting questions about CPT Code 90833 guidance. Appx. Ex. 14, p. 51, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

123

365. Stanley Monroe testified that the handling of complaints was a collaborative approach, including the legal department and providers. Appx. Ex. 14, p. 332, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

366. Stanley Monroe testified that Jennifer Arnold was hired in wake of the Blue Shield Blue Cross pre-payment audit to provide coding expertise for the entire company for all insurance plans. Appx. Ex. 14, p. 125, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below, but coder Jennifer Arnold did not begin work until February, 2020.

367. Stanley Monroe testified that hiring a certified coder was a way to professionalize the coding part of operations. Appx. Ex. 14, p. 49, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

124

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

368. Stanley Monroe testified that Jennifer Arnold was responsible for the accuracy of the coding of providers. Appx. Ex. 14, p. 126, l. 2.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

369. Stanley Monroe testified that during the Blue Cross Blue Shield pre-payment audit, when problems were reported, they were follow up on and investigated. Appx. Ex. 14, p. 124, l. 17.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

370. Stanley Monroe testified that if specific allegations were brought to the attention of the appropriate people, then the allegations were investigated. Appx. Ex. 14, p. 101, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

371. Stanley Monroe testified that management responded through resolution to anyone reporting a problem. Appx. Ex. 14, p. 228, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

372. Stanley Monroe testified that there was an audit procedure for Nurse Practitioners and Physician Assistants where the medical director audited charts and discussed the findings with supervising physicians. Appx. Ex. 14, p. 83, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

126

373. Stanley Monroe testified that management relied on supervising physicians to audit the charts of providers. Appx. Ex. 14, p. 228, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

374. Stanley Monroe testified the medical directors performed audits. Appx. Ex. 14, p. 228, l. 6.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

375. Stanley Monroe testified that medical leadership was responsible for training in compliance issues. Appx. Ex. 14, p. 80, l. 2.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

127

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

376. Stanley Monroe testified that Dr. Yvonne Monroe brought a complaint forward regarding Dr. Lawrence Greenberg's coding which created a debate within the company. Appx. Ex. 14, p. 163, l. 5.

Admitted.

377. Stanley Monroe testified that after debating the issue that Dr. Yvonne Monroe raised regarding Dr. Lawrence Greenberg's coding, a policy was set. Appx. Ex. 14, p. 165, l. 7.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

378. Stanley Monroe testified that there were constant audits at Mindpath. Appx. Ex. 14, p. 58, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

128

379. Stanley Monroe testified that Mindpath voluntarily repaid money to insurance payors. Appx. Ex. 14, p. 59, l. 17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### K.  Elizabeth Bruce (Nurse Practitioner with Physician Practice)

380. Elizabeth Bruce testified that as a provider, she would select the CPT code associated with the services she provided the patient. Appx. Ex. 13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

381. Elizabeth Bruce testified that as a provider, she interpreted efficient coding to mean correct coding. Appx. Ex. 13, p. 78, l. 8.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

129

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

382. Elizabeth Bruce testified that as a provider, Mindpath did not have specific billing guidelines. Appx. Ex. 13, p. 111, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

383. Elizabeth Bruce testified that as a provider, Mindpath had coding guidelines. Appx. Ex. 13, p. 111, l. 19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

384. Elizabeth Bruce testified that Dr. Scott Griffies instituted a closer collaboration with a review of documentation and coding. Appx. Ex. 13, p. 176, l. 20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

130

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

385. Elizabeth Bruce testified that as a provider she participated in peer audits with a collaborative group. Appx. Ex. 13, p. 177, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

386. Dr. Yvonne Monroe reviewed Elizabeth Bruce's patient notes for 90833 documentation. Appx. Ex. 23.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

387. Elizabeth Bruce testified that as a provider, Mindpath did not speak with Bruce about the percentage of CPT Code 90833 she billed to patients. Appx. Ex. 13, p. 199, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

131

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

388. Elizabeth Bruce testified that as a provider, she was not encouraged by Mindpath to code more services as CPT Code 90833. Depo. p. 199, l. 10; Appx.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

389. Elizabeth Bruce testified that as a provider, she was told that billing evaluation and management CPT Codes along [alone][sic] would not be enough for Mindpath's financial survival. Appx. Ex. 13, p. 199, l. 16.

Admitted.

390. Elizabeth Bruce testified that the quality improvement board was part of compliance. Appx. Ex. 13, p. 61, l. 10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

391. Elizabeth Bruce testified that Abby Sheriff sent emails reminding providers to be certain the documentation supported the code. Appx. Ex. 13, p. 64, l. 15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

392. Elizabeth Bruce testified that Abby Sheriff stated in an email that claims had to be thrown out. Appx. Ex. 13, p. 64, l. 5.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

393. Elizabeth Bruce testified that she spends at least 16 minutes performing some form of maintenance therapy, emotion therapy, relaxation therapy or mindfulness mediation. Appx. Ex. 13, p. 45, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

133

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

394. Elizabeth Bruce testified that as a provider, she understood that a provider had to spend 16 minutes or more with a patient when providing psychotherapy. Appx. Ex. 13, p. 127, l. 21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### L. Dr. Yvonne Monroe (Provider with Physician Practice)

395. Dr. Yvonne Monroe testified that the Quality and Standards Board set standards and operating procedures for Mindpath. Appx. Ex. 6, p. 18, l. 25.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

134

396. Dr. Yvonne Monroe testified that the Practice Management Subcommittee was formed because of coding documentation conflict. Appx. Ex. 6, p. 80, l. 18; Appx. Ex. 80.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

397. Dr. Yvonne Monroe testified that Jeff Williams was involved in discussions and regularly referred matters to the Practice Management Subcommittee. Appx. Ex. 6, p. 98, l. 12.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

398. Dr. Yvonne Monroe testified that as head of quality assurance [sic] which included chart audits, setting standards for the practice, which were national standards, implementing those standards, and then continuously improve adherence to these national standards. Appx. Ex. 6, p. 23, l. 1.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies

despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

399. Dr. Yvonne Monroe testified that Steve Monroe was the Medicare Compliance Officer. Appx. Ex. 6, p. 34, l. 24.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

400. Dr. Yvonne Monroe testified that Steve Monroe was very thorough. Appx. Ex. 6, p. 36, l. 16.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

401. Dr. Yvonne Monroe testified that as the practice management person and provider, providers would approach her with Medicare compliance questions. Appx. Ex. 6, p. 37, l. 5.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had

136

effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

402. Dr. Yvonne Monroe testified that Dr. James Smith was conducting regular audits as the medical director. Appx. Ex. 6, p. 53, l. 19.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

403. Dr. Yvonne Monroe testified that Jeff Williams wanted to hire a certified professional code starting in December 2018. Appx. Ex. 6, p. 31, l. 15.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

404. Dr. Yvonne Monroe first raised concerns about Dr. Lawrence Greenberg's billing practices in December 2018. Appx. Ex. 83 and 19.

Admitted.

137

405. Dr. Yvonne Monroe did not have any concerns about Dr. Lawrence Greenberg's billing practices until late November 2018 during a one-on-one conversation. Appx. Ex. 6, p. 45, l. 17.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

406. Dr. Yvonne Monroe did not have concerns about billing practices of any other provider. Appx. Ex. 6, p. 46, l. 1.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

407. Dr. Yvonne Monroe testified that concerns she raised related to Dr. Lawrence Greenberg's coding were reviewed and evaluated. Appx. Ex. 6, p. 298, l. 6.

> Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and

undermined profit growth, as set out more fully in the Government's factual statements below.

408.  Dr. Yvonne Monroe testified that she trained every provider that joined Mindpath. Appx. Ex. 6, p. 24, l. 14.

Disputed as characterized.  The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

409.  Dr. Yvonne Monroe had extensive onboarding materials that she utilized during her training sessions with providers.  Appx. Ex. 84 and 85.

Admitted.

410.  Mindpath's Dr. Yvonne Monroe made a presentation to providers regarding fraud and abuse, which included the consequences of false claims.  Appx. Ex. 86.

Disputed as characterized.  The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

411.  In February 2019, Mindpath produced on-boarding material that included two and a half [sic] with CPT coding and documentation including a sample clinical note.  Appx. Ex. 28.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

412. Dr. Yvonne Monroe testified that she retrained every provider at Mindpath in 2017 related to coding and documentation, which included a two-hour meeting with each provider. Appx. Ex. 6, p. 24, l. 9.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

413. Dr. Yvonne Monroe testified that she met with every provider for two hours in 2019 as a refresher training. Appx. Ex. 6, p. 26, l. 4.

Disputed as characterized. The testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

414. In May 2019, Dr. Yvonne Monroe met with a provider to conduct refresher training and mentoring. Appx. Ex. 88 and 89.

Admitted.

415. In July 2019, Dr. Yvonne Monroe discussed with a provider she supervised that deficiencies in documentation and coding had been detected and needed improvement. Appx. Ex. 90.

Admitted.

416. In 2020, Dr. Yvonne Monroe conducted collaboration meetings which included a portion to review documentation and coding. Exhibit 177

Admitted.

### M. Jennifer Arnold (Certified Coder with MSO)

417. Jennifer Arnold testified that in order to bill a CPI Code 90833, a provider must document the psychotherapy as a separate identifiable service. Appx. Ex. 10, p. 41, l. 8.

Admitted.

418. Jennifer Arnold testified that in order to bill a CPT Code 90833, a provider must spend at least 16 minutes of psychotherapy time with the patient. Appx. Ex. 10, p. 41, l. 8.

Admitted.

419. Jennifer Arnold testified that psychotherapy and medication management services are separate services. Appx. Ex. 10, p. 47, l. 8.

Admitted.

420. Jennifer Arnold testified that psychotherapy and medication management services are interwoven throughout a patient visit. Appx. Ex. 10, p. 47, l. 25.

141

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

421. Jennifer Arnold testified that evaluation and management services did not require a specific amount of time unless the coding was based on time. Appx. Ex. 10, p. 52, l. 4; p. 53, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

422. Jennifer Arnold testified that in 2020, she was auditing clinicians post billing. Appx. Ex. 10, p. 14, l. 16.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

423. Jennifer Arnold testified that in 2020, Ms. Arnold audited 10 to 20 claims per provider per month. Appx. Ex. 10, p. 16, l. 14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

424. Jennifer Arnold testified that in 2020 audits included medication management and therapy. Appx. Ex. 10, p. 16, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

425. Jennifer Arnold testified that in 2020, some claim audits were random while some were targeted because of an outlier billing more a particular code. Appx. Ex. 10, p. 17, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

143

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

426. Jennifer Arnold testified that audits included all payors including Medicare claims. Appx. Ex. 10, p. 20, l. 1.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

427. Jennifer Arnold testified that in conducting post billing audits, Ms. Arnold reviewed provider coding. Appx. Ex. 10, p. 48, l. 25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

428. Jennifer Arnold testified that in conducting post billing audits, Ms. Arnold reviewed provider notes. Appx. Ex. 10, p. 49, l. 3.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

144

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

429. In March 2020, while Jennifer Arnold was making introductions to providers to review coding and documentation practices, Dr. Yvonne Monroe was also connecting with providers regarding the use of CPT Code 90833. Appx. Ex. 91.

> Disputed as characterized. The statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

430. In March 2020, Jennifer Arnold collaborated with Dr. Yvonne Monroe to work with providers with low CPT Code 90833 usage though the providers were providing psychotherapy. Appx. Ex. 92.

> Disputed as characterized. The statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

431. Jennifer Arnold testified she provided one-on-one training to providers. Appx. Ex. 10, p. 49, l. 4.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

432. In May 2020, Jennifer Arnold met with provider Cara Lutzow in which Mr. Lutzow stated that it was clear that CPT Code 90833 must be over 16 minutes, but the evaluation and management code was based on medical decision-making and did not require a specific amount of time. Appx. Ex. 93.

Disputed as characterized. The statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

433. In May 2020, Jennifer Arnold and Medical Director Scott Griffies presented on numerous topics including psychotherapy documentation, which noted the required time for CPT Code 90833 was 16-37 minutes. Appx. Ex. 94.

Disputed as characterized. The statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and

146

undermined profit growth, as set out more fully in the Government's factual statements below.

434. In June 2020, Jennifer Arnold discussed with a provider proper documentation and coding on an evaluation and management patient visit where psychotherapy was also provided during the patient session. Appx. Ex. 95.

Disputed as characterized. The statement is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

435. In November 2020, Jennifer Arnold discussed medical decision-making and documentation with provider Elizabeth Bruce. Appx. Ex. 96.

Admitted.

436. Jennifer Arnold testified that she would walk a provider through the requirements for coding and billing CPT Code 90833. Appx. Ex. 10, p. 72, l. 2.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

147

437. Jennifer Arnold testified that if she discovered an improperly submitted CPT Code 90833 claim, Ms. Arnold would provide education to the provider so the provider would understand why the note did not support billing the psychotherapy code.  Appx. Ex. 10, p. 81, l. 1.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

438. Jennifer Arnold testified that if she discovered an improperly submitted CPT Code 90833 claim, Ms. Arnold would notify the revenue cycle team that the claim needed to be rebilled or corrected.  Appx. Ex. 10, p. 81, l. 1.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### N.    Eric Wiggam (HHS Agent)

439. Eric Wiggam testified he did not take any audio recordings of witnesses he interviewed.  Appx. Ex. 1, p. 15, l. 16.

> Admitted.

440. Eric Wiggam testified he did not take any transcripts of witnesses he interviewed. Appx. Ex. 1, p. 15, l. 21.

Admitted.

441. Eric Wiggam testified he did not take any written statements or affidavits of witnesses he interviewed. Appx. Ex. 1, p. 15, l. 24.

Admitted.

442. Eric Wiggam testified he interviewed possibly five individuals. Appx. Ex. 1, p. 45-46; p. 54.

Admitted.

443. Eric Wiggam testified he did not know how many offices, providers or patients Mindpath had from 2018 to 2020. Appx. Ex. 1, p. 58-61.

Admitted.

444. Eric Wiggam testified he did not know how many claims Mindpath submitted from 2018 to 2020. Appx. Ex. 1, p. 58-61.

Admitted.

445. Eric Wiggam testified he did not [sic] which offices the individuals he interviewed worked in. Appx. Ex. 1, p. 58-61.

Admitted.

446. Eric Wiggam did not know how many executives Mindpath had from 2018 to 2020. Appx. Ex. 1, p. 65, l. 23.

Admitted.

447. Eric Wiggam testified he was not aware of other providers that were interviewed in the investigation. Appx. Ex. 1, p. 57, l. 4.

Admitted.

448.  Eric Wiggam testified that the LCD outlined in Paragraph 70 of the Government [sic] In Intervention does not apply in this case.  Appx. Ex. 1, p. 90, l. 6; p. 14-15.

Admitted.

449.  Agent Wiggam testified that he was unaware that Palmetto GBA did not have an applicable LCD for psychotherapy services until his deposition and could not recall which LCDs he had relied on, stating they "were referenced in other reports. . . and online," conceding that some were "issued by other MACs." Appx. Ex. 1, p. 82-83.

Disputed as characterized and admitted in part.  The testimony is incomplete, including omitting his testimony that "there's more rules that go into it than just the LCDs, as far as billing and the requirements." See, Defendants Appx. Ex. 1 at 82:20-24 (Wiggam Deposition).

450.  Eric Wiggam testified he had not taken any CPT coding classes, did not hold any CPT coding certifications and had not received any healthcare coding training.  Appx. Ex. 1, p. 67, l. 15-20.

Disputed as characterized and admitted in part.  The testimony is incomplete, including omitting his testimony that "there's more rules that go into it than just the LCDs, as far as billing and the requirements."  See, Defendants Appx. Ex. 1 at 82:20-24 (Wiggam Deposition).

451.  Eric Wiggam testified that the front desk staff at Mindpath did not have any role in selecting the CPT Code or billing.  Appx. Ex. 1, p. 68, l. 12-20.

Disputed as characterized.  The testimony is incomplete and limited to the deponent's knowledge.

150

452. Eric Wiggam testified that even though the OIG Report states that the Palmetto MAC that covers North Carolina did not have any specific psychotherapy documentation requirements for its jurisdictions, Agent Wiggam did not revise any of his previous reports. Appx. Ex. 1, p. 86-87.

> Disputed as characterized. The characterization of this testimony is incomplete, misleading and irrelevant.

453. Eric Wiggam testified that Mary Hartsell either separated or was let go by Mindpath on bad terms. Appx. Ex. 1, p. 50, l. 19-24.

> Admitted.

### O. Diego Garza, MD

454. Dr. Diego Garza testified that after initial development and launching of Mindpath's Telemedicine Program, Dr. Garza was asked to assist Abigail Sheriff in restructuring and designing Mindpath's Collaborating Physician Program (the "Program"). Appx. 56, ¶14.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

455. Dr. Diego Garza testified he recalls this project being started development in the Fall of 2018. Because of his background in public health and local population levels, Dr. Garza was recruited to assist with the initiative. Appx. 56, ¶14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

456. Dr. Diego Garza was initially tasked with reviewing the requirements that were published by North Carolina state agencies. Mindpath's goal was to develop a Program that not only met the minimum requirements but exceeded those requirements to ensure quality patient care and make the Program easily navigable by our supervising physicians. Appx. 56, ¶15.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

457. Dr. Diego Garza testified that the Program was approved by Mindpath's Medical Director before it was launched company wide. Appx. 56, ¶16.

Admitted.

458. Dr. Diego Garza testified that Mindpath had a Checklist for Supervision. The Collaborating Physician was required to follow the Checklist, including conducting chart audits of APPs under the Collaborating Physician's supervision. The outcome of the chart audits was documented in the Chart Audit Tools. Appx. 56, ¶17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

459. Dr. Diego Garza testified that Mindpath had a Policy for Clinical Scope of Advanced Practice Practitioners. Appx. 56, ¶18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

460. Dr. Diego Garza testified that specifics contained in the Policy after an APP was onboarded were as follows:

    a.    The APP and the Collaborating Physician will meet at least every six months. During the first three months of practice, the MD and APP will be meeting every month, and touching base on a weekly basis.

    b.    For the first six months, every month, the Collaborating Physician will perform a chart audit of four charts using the Mindpath auditing tool (two initial consults and two follow up visits) and initiate additional training or clinical support as necessary.

153

c. Monthly or for every six-month meeting between the APP and the MD, report that includes the following should be completed:

    i. Review of clinical cases

    ii. Note content/quality review

    iii. Accurate coding review *Id.*

d. Collaborating Physician will share their report with the Chief Medical Officer and come up with an improvement and/or continuous assessment plan based on the report findings.

e. Reports and improvements and/or continuous assessment plan … should be available for the Quality and Standards Board (QSB) committee/Medical Review subcommittee at Mindpath … Appx. 56, ¶18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

461. Dr. Diego Garza testified that part of the Chart Audit Tools assessed whether or not the service was medically necessary. The Chart Audit Tools also focused on whether or not the documentation was adequate to support the service provided. Appx. 56, ¶19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

154

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

462. Dr. Diego Garza testified that utilizing the Chart Audit Tools when reviewing patient charts, providers focused on medical decision-making, a strong treatment plan and if the note met the criteria for submission. Appx. 56, ¶20.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

463. Dr. Diego Garza testified that while conducting chart audits, Collaborating Physicians had access to patients' entire Electronic Medical Record ("EMR"), which included visit notes and scheduling information. Appx. 56, ¶21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

464. Dr. Diego Garza testified that Mindpath had an Administrative Policy with Job Requirements for the Collaborating Physician. Appx. 56, ¶22.

155

Admitted.

465. Dr. Diego Garza testified that outlined in this Administrative Policy were specific

duties of a Supervising Physician:

- Use of the QSB approved audit tool to review the EMR for clinical visits, including adequacy of history, systems review, past medical and social history, medical decision making, and documentation supporting the level of service delivered.
- For the first six months of a new APP's tenure, use of the QSB approved audit tool to review two initial consults and two follow up visits per month ahead of the formal supervision meeting and submit the audit analysis sheet/checklist to the APP's folder.
- Perform EMR review, conduct medically relevant investigation and adequate summary of findings regarding patient complaints to determine if care was appropriate and advise members of the QSB's Quality Assurance Subcommittee.
- Offer direct observations of potential central needs and provider training opportunities to the CMO.

Appx. 56, ¶22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and

misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not

a priority and undermined profit growth, as set out more fully in the Government's factual

statements below.

466. Dr. Diego Garza testified that Collaborating Physicians were compensated for their

time and effort spent supervising APPs. The Program was designed to ensure APPs were well-

trained and appropriately supervised. Appx. 56, ¶23.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and

misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was

156

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

467.  Dr. Diego Garza testified that he provided backend guidance to assist in the roll out of the Peer Mentorship Program.  Appx. 56, ¶25.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

468. Dr. Diego Garza testified that part of the Mentorship Plan were to review best practices and coding guidelines.  Further, Mentors were to be available to the Mentee for clinical consults during the week.  The Mentorship Plan was developed so that the Mentor/Mentee relationship allowed for discussion of specific clinical issues.  The Mentors and Mentees were encouraged to challenge one another to provide a rationale for their clinical treatment plans. Appx. 56, ¶27.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

### P.      Dr. George Corvin

157

469. Dr. George Corvin testified he was "offering my opinion as to what I think the standards are in 60 progress notes," conceding that "it would be improper to hold a provider to a standard of care that did not exist at the time of the production of that treatment or documentation of treatment." Appx. Ex. 2, p. 21:22 – 24, 42:1-4.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony.

470. Dr. George Corvin testified he does not know what a MAC is related to this matter. Appx. Ex. 2, p. 45, l. 5-8.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony.

471. Dr. George Corvin testified he did not know Palmetto GBA was the MAC for North Carolina. Depo. p. 47, l. 4-7.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony.

472. Dr. George Corvin testified that he "wouldn't even venture a guess what they do" when asked if he was aware what a MAC did. Appx. Ex. 2, p. 47, l. 9-14.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony.

473. Dr. George Corvin testified that absent CMS defining psychotherapy documentation, Agent Wiggam substituted his own opinion as to standards. Appx. Ex. 2, p. 56, l. 14-16.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony.

474. Dr. George Corvin testified that the LCD cited in Paragraph 70 of the Complaint in Intervention does not apply to CPT Code 90833. Appx. Ex. 2, p. 63-64, l. 1-4

Admitted.

475. Dr. George Corvin testified he did not rely on the LCD during his review of medical records in this case. Appx. Ex. 2, p. 64, l. 2-7.

Admitted.

476. Dr. George Corvin testified he does not have any coding experience. Appx. Ex. 2, p. 178, l. 9-10.

Disputed as characterized. The characterization of testimony is disputed, incomplete, and misleading in that Mindpath and Mindpath providers were required to submit claims that were "reasonable and necessary", as set out more fully in the Government's factual statements below, including his expert report and testimony that demonstrated his

159

knowledge of psychotherapy and the Medicare "reasonable and necessary" coding requirements..

Q. **Michael Helton, MD**

477. Dr. Michael Helton testified he has been employed by Mindpath from 2014 to the present. I have practiced primarily out of Mindpath's Durham and Chapel Hill offices. Appx. Ex. 54, ¶7.

Admitted.

478. Dr. Michael Helton testified he first learned about Evaluation and Management ("E/M") codes during my residency. Appx. Ex. 54, ¶8.

Admitted.

479. Dr. Michael Helton testified that Dr. Yvonne Monroe provided onboarding training to me when I was first hired by Mindpath. This training included documentation and coding training. Appx. Ex. 54, ¶9.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

480. Dr. Michael Helton testified that historically he has used the American Academy of Child & Adolescent Psychiatry cheat sheets as his primary source in determining the codes for E/M services he provides to his patients. Appx. Ex. 54, ¶10.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

481. Dr. Michael Helton testified he recalls CMS changing some coding guidance and when changes were made, the Medical Director at Mindpath would circulate updated guidance. Appx. Ex. 54, ¶11.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

482. Dr. Michael Helton testified that ss it relates to documentation and coding training, he recalls attending several meetings and work-related events where documentation and coding was a topic. Dr. Helton's also recalls one-on-one interactions with Jennifer Arnold, Mindpath's certified coder. Dr. Helton also recalls educational discussions with Dr. Scott Griffies. Appx. Ex. 54, ¶12.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

161

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

483. Dr. Michael Helton testified that he also recalls that medical necessity in patient care was emphasized by both the clinical and management leadership and staff at Mindpath. Appx. Ex. 54, ¶13.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

484. Dr. Michael Helton testified that Mindpath circulated various written guidance on documentation and coding, including cheat sheets. Appx. Ex. 54, ¶14.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

485. Dr. Michael Helton testified that because he was a supervising physician, he attended other educational events related to training and supervising Advanced Practice

Practitioners ("APPs"). Specifically, Mindpath held quarterly conferences for supervising physicians. Appx. Ex. 54, ¶15.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

486. Dr. Michael Helton testified he was trained to enter the appropriate information in a patient's progress note through our electronic medical record platform, Advanced MD ("AMD"). Templates in AMD were constantly modified and updated to make improvements and create efficiencies. As modifications were made, the templates became more and more specific to aid the provider in documenting what was required in a progress note. Appx. Ex. 54, ¶16.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

487. Dr. Michael Helton testified he recalls that Dr. Griffies invested a significant amount of time in developing the APP training. Dr. Griffies also was continuously revamping psychotherapy training and modifying the AMD template to be more intuitive and accurate for documenting psychotherapy provided during medication management visits. Appx. Ex. 54, ¶17.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

488. Dr. Michael Helton testified that as a supervising physician, he has entered into Collaborative Practice Agreements with APPs under his supervision. Under such Collaborative Practice Agreements, Dr. Helton conducted chart audits which included a review of clinical cases including note content/quality review and an assessment of coding accuracy. Appx. Ex. 54, ¶18.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

489. Dr. Michael Helton testified that based on his recollection, he believes he supervised five or six APPs from 2018 to 2020. Appx. Ex. 54, ¶19.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

164

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

490. Dr. Michael Helton testified he supervised Kristie White for brief period of time. Appx. Ex. 54, ¶20.

Admitted.

491. Dr. Michael Helton testified he recalls meeting with Ms. White, who had questions, and had discussions with her regarding documentation and coding. While not formal, these supervisory discussions organically included opportunities to provide training guidance. Appx. Ex. 54, ¶21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

492. Dr. Michael Helton testified he recalls reviewing Ms. White's patient charts as her supervising physician. While Dr. Helton cannot recall specifics, he does not recall any significant or recurring deficiencies in Ms. White's documentation and coding. Appx. Ex. 54, ¶22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

493. Dr. Michael Helton testified that it is his belief that Ms. White never intentionally documented her patient visits improperly or inaccurately. Similarly, Dr. Helton does not believe Ms. White improperly or inaccurately coded the services she provided based on her documentation. Appx. Ex. 54, ¶23.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

494. Dr. Michael Helton testified he supervised James Feldman. Appx. Ex. 54, ¶24.

> Admitted.

495. Dr. Helton testified he recalls meeting with Mr. Feldman regarding documentation and coding. Mr. Feldman frequently approached Dr. Helton with questions so there were numerous opportunities for general discussions, training and guidance related to documentation and coding. Dr. Helton specifically recalls providing Mr. Feldman a psychotherapy book as he was developing and expanding his psychotherapy skills. Appx. Ex. 54, ¶25.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

496. Dr. Michael Helton testified he recalls reviewing Mr. Feldman's patient charts as his supervising physician. While Dr. Helton cannot recall specifics, Dr. Helton does not recall any significant or recurring deficiencies in Mr. Feldman's documentation and coding. Appx. Ex. 54, ¶26.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

497. Dr. Michael Helton testified it was belief that Mr. Feldman never intentionally documented his patient visits improperly or inaccurately. Dr. Helton does not believe Mr. Feldman improperly or inaccurately coded the services he provided based on his documentation. Appx. Ex. 54, ¶27.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

167

498. Dr. Michael Helton testified he recalls that Mindpath's Medical Directors conducted audits of the supervising physicians patients' charts, including Dr. Helton. Appx. Ex. 54, ¶28.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

499. Dr. Michael Helton testified that Jennifer Arnold, a certified coder, conducted random chart audits of both APPs and MDs. Appx. Ex. 54, ¶29.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

500. Dr. Michael Helton testified that the majority of the patient services he provided in 2018 to 2020 were E/M services combined with brief psychotherapy. Appx. Ex. 54, ¶30.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

168

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

501.  Dr. Michael Helton testified that E/M services include the diagnoses and treatment of patients.  This service is routinely referred to as medication management in the field of psychiatry.  Appx. Ex. 54, ¶31.

      Admitted.

502.  Dr. Michael Helton testified that an E/M service is typically coded based on complexity-of medical decision-making.  An E/M service can also be coded based on time spent with a patient, however Dr. Helton rarely code based on time. Moreover, an E/M service cannot be coded based on time where the clinician is also providing psychotherapy for which a time-based add-on CPT code is billed.  Dr. Helton testified he primarily coded an E/M service based on complexity from 2018 to 2020 and that remains my approach to this day.  Appx. Ex. 54, ¶32.

      Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

503.  Dr. Michael Helton testified that based on his experience, CPT codes 99213 and 99214 were the most commonly billed E/M service codes at Mindpath Health from 2018 to 2020. Appx. Ex. 54, ¶33.

      Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

504. Dr. Michael Helton testified that psychotherapy is a psychological method used to help an individual change behaviors or overcome mental health problems. Psychotherapy is commonly referred to as brief therapy. Appx. Ex. 54, ¶34.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

505. Dr. Michael Helton testified that he provided psychotherapy in combination with medication management services. Appx. Ex. 54, ¶35.

> Admitted.

506. Dr. Michael Helton testified he would estimate that eighty-five percent of the time, he provide psychotherapy. Dr. Helton testified he was a therapist at heart and passionately believes his patient base needs psychotherapy as part of their mental health services. Appx. Ex. 54, ¶36.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

507. Dr. Michael Helton testified that if he provided psychotherapy services to a patient, in order to bill those services, Dr. Helton had to provide therapy of at least 16 minutes, and up to 37 minutes, of separate and distinct therapy and document a modality. A modality is the approach or method of therapy utilized in the session. Dr. Helton also documented other issues, behavior intervention, the intervention outcome, and both short term and long-term goals. Appx. Ex. 54, ¶37.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

508. Dr. Michael Helton testified that the corresponding CPT code for psychotherapy of between 16 and 37 minutes provided during an E/M service is 90833. Appx. Ex. 54, ¶38.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

171

509. Dr. Michael Helton testified that he billed the 90833 add-on psychotherapy code in conjunction with the appropriate E/M code. Appx. Ex. 54, ¶39.

Admitted.

510. Dr. Michael Helton testified that it was his practice to have the patient's progress note in AMD open during the patient's session. As Dr. Helton provided therapy throughout the patient visit, he would toggle over the note templates in AMD. Dr. Helton was aware of the different documentation components for the medication management portion of the patient visit versus the psychotherapy provided to the patient. Appx. Ex. 54, ¶40.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

511. Dr. Michael Helton testified that he recorded a good estimate of the time spent in the psychotherapy portion of the visit without overestimating my time. Dr. Helton testified that it can be difficult to capture the precise amount of minutes spent on psychotherapy during an E/M service. In Dr. Helton's opinion, for a half hour session, psychotherapy naturally captured more than 16 minutes of the visit. Appx. Ex. 54, ¶41.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

512. Dr. Michael Helton testified that if he did not provide at least 16 minutes of psychotherapy, he did not bill CPT code 90833.   Appx. Ex. 54, ¶42.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

513.  Dr. Michael Helton testified that in treating a patient, he was taught to first, provide the medically necessary services to the patient; second, appropriately document the services provided; and third, select the accurate CPT codes based on the documentation of the services provided. Dr. Helton taught any APPs he supervised this same sequence, and he continued to teach and advise APPs of those requirements. Appx. Ex. 54, ¶43.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

514. Dr. Michael Helton testified that he was never pressured or required to provide psychotherapy services for a patient by anyone at Mindpath.  Appx. Ex. 54, ¶44.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

515. Dr. Michael Helton testified that he was also never pressured or required to bill certain codes, including CPT code 90833, by anyone at Mindpath.   Appx. Ex. 54, ¶45.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

516. Dr. Michael Helton testified that to the best of his recollection, front desk procedures at Mindpath were informal prior to COVID.  Appx. Ex. 54, ¶46.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

517. Dr. Michael Helton testified that the front desk staff did check in patients for visits. Dr. Helton recalls checking in AMD and would see a patient had checked in. However, Dr. Helton recalls times when I would myself check in my patients. Appx. Ex. 54, ¶47.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

518. Dr. Michael Helton testified that he does not recall a check out process. Appx. Ex. 54, ¶48.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

519. Dr. Michael Helton testified that he frequently scheduled his patient appointments. From 2018 to 2020, Dr. Helton's recollection is that front desk staff was to schedule a patient's follow up appointment if he did not schedule it during the session. Appx. Ex. 54, ¶49.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written

compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

520. Dr. Michael Helton testified that it was his belief that front desk staff's primary duties were to check in patients and process payments. Appx. Ex. 54, ¶50.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

521. Dr. Michael Helton testified that he is not aware of any evidence that the Defendants routinely or systematically made and caused false claims to be made by billing Psychotherapy treatments without documentation to establish at least 16 minutes of face-to-face patient time for separate and distinct Psychotherapy treatments. Appx. Ex. 54, ¶52.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

522.  Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document Psychotherapy treatment provided.  Appx. Ex. 54, ¶53.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

523.  Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document goals of treatment or that there was a Medicare requirement to do so.  Appx. Ex. 54, ¶54.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

524.  Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document improvement based upon treatment plan or that there was a Medicare requirement to do so.  Appx. Ex. 54, ¶55.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

177

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

525. Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document patient responses or that there was a Medicare requirement to do so. Appx. Ex. 54, ¶56.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

526. Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document rationale for psychotherapy treatment. Appx. Ex. 54, ¶57.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

178

527. Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document that psychotherapy treatment time was separate from the evaluation and management ("E&M") service provided. Appx. Ex. 54, ¶58.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

528. Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to document that psychotherapy treatment time was separate from the E&M office visit. Appx. Ex. 54, ¶59.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

529. Dr. Michael Helton testified that he is not aware any evidence that the Defendants routinely or systematically failed to enter documentation to support either psychotherapy or E&M office visits. Appx. Ex. 54, ¶60.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling

179

problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

530. Dr. Michael Helton testified that he is not aware of any evidence that the Defendants routinely or systematically created false records or statements to support psychotherapy and E&M office visits. Dr. Michael Helton testified that he is not aware not aware of any evidence that the Defendants routinely or systematically submitted false or fraudulent claims for reimbursement for psychotherapy and E&M office visits. Appx. Ex. 54, ¶61.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

531. Dr. Michael Helton testified that he is not aware of any evidence that the Defendants routinely or systematically billed for fraudulent Psychotherapy treatments, without required documentation of the separate time and Psychotherapy treatment of patients, "in order to maximize their profits" in blatant disregard of Medicare billing requirements. Appx. Ex. 54, ¶62.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

532. Dr. Michael Helton testified that he is not aware of any patient encounter in which I coded CPT code 90833 for psychotherapy that was for less than 16 minutes of separate and distinct psychotherapy. Appx. Ex. 54, ¶63.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

533. Dr. Michael Helton testified he did not personally act with actual knowledge, deliberate ignorance or reckless disregard in routinely providing false information related to services he provided. Appx. Ex. 54, ¶64.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

534. Dr. Michael Helton testified he did not personally act with actual knowledge, deliberate ignorance or reckless disregard in assisting any other providers in routinely providing false information related to services provided. Appx. Ex. 54, ¶65.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

535. Dr. Michael Helton did not personally act with actual knowledge, deliberate ignorance or reckless disregard in assisting any Mindpath employees in submitting false claims for services provided. Appx. Ex. 54, ¶66.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

536. Dr. Michael Helton testified it is his opinion that both Jeff Williams and Abby Sheriff preached professionalism and objectivity. Both stressed accurate documentation of services provided and proper documentation. Appx. Ex. 54, ¶67.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

**R.    Alison Lovkay, PA**

537.  Ms. Lovkay testified she has been employed at Mindpath since November, 2019 as a Physician Assistant.  Appx. Ex. 101, ¶10.

Admitted.

538.  Ms. Lovkay testified she provides medication management and psychotherapy services. Ms. Lovkay further testified she codes Evaluation and Management ("E/M") CPT codes and psychotherapy add-on codes including the 90833 CPT code.   Appx. Ex. 101, ¶12.

Admitted.

539.  Ms. Lovkay testified that when she was hired at Mindpath, she recalls being trained related to documentation and coding during my onboarding process.  Ms. Lovkay recalls that Dr. Yvonne Monroe provided the onboarding training.  Appx. Ex. 101, ¶13.

Admitted.

540.  Ms. Lovkay testified she recalls participating in other training events during 2018 to 2020, including weekly "Lunch and Learn" sessions during which documentation and coding was discussed.  Appx. Ex. 101, ¶14.

Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

541. Ms. Lovkay testified she recalls providers being provided written "cheat sheets" related to documentation and coding, including guidance specific to documenting and coding E/M sessions with psychotherapy provided.  Appx. Ex. 101, ¶15.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

542. Ms. Lovkay testified that Dr. Helton has been her supervising physician since she started at Mindpath.  Ms. Lovkay testified that in the 2018 to 2020 timeframe, Dr. Helton conducted supervision meetings approximately every two weeks.  Those meetings including chart reviews, in which Dr. Helton reviewed Ms. Lovkay's progress notes to determine if my documentation and the corresponding CPT codes selected were appropriate. Ms. Lovkay recalls Dr. Helton discussed with her his review of her patient charts.  Appx. Ex. 101, ¶16.

> Disputed as characterized.  The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

543. Ms. Lovkay testified she recalls connecting with Jennifer Arnold, the certified coder at Mindpath.  Ms. Lovkay recalls contacting Ms. Arnold with questions related to

documentation and coding. Ms. Lovkay testified that Ms. Arnold was a very helpful resource and offered guidance related to coding. Appx. Ex. 101, ¶17.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

544. Ms. Lovkay testified that E/M services include the diagnosis and treatment of patients. This service is routinely referred to as medication management in the field of psychiatry. Appx. Ex. 101, ¶18.

> Admitted.

545. Ms. Lovkay testified that an E/M service is typically coded based on complexity-of medical decision-making . An E/M service can also be coded based on time spent with a patient, however Ms. Lovkay testified she rarely code based on time. Moreover, an E/M service cannot be coded based on time where the clinician is also providing psychotherapy for which a time-based add-on CPT code is billed. Ms. Lovkay testified she primarily coded an E/M service based on complexity from 2018 to 2020 and that remains her approach to this day. Appx. Ex. 101, ¶19.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

546. Ms. Lovkay testified that based on her experience, CPT codes 99213 and 99214 were the most commonly billed E/M service codes at Mindpath Health from 2018 to 2020. Appx. Ex. 101, ¶20.

Admitted.

547. Ms. Lovkay testified that based on her experience, the documentation for visit with a stable patient with one chronic diagnosis typically supports an E/M code of 99213. Appx. Ex. 101, ¶21.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

548. Ms. Lovkay testified that based on her experience, the documentation for a visit with a patient with one diagnosis but who is not stable at the moment may qualify as either an E/M code of 99214 or 99213 depending of the severity and/or progression of their symptoms or side effects of treatment. Appx. Ex. 101, ¶22.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

186

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

549. Ms. Lovkay testified that based on her experience, the documentation of a patient with two or more diagnoses typically qualifies as an E/M code of 99214. Appx. Ex. 101, ¶23.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

550. Ms. Lovkay testified that psychotherapy is a psychological method used to help an individual change behaviors or overcome mental health problems. Appx. Ex. 101, ¶24.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

551. Ms. Lovkay testified that she provides psychotherapy in combination with medication management services. The types of psychotherapy Ms. Lovkay provided during the 2018 to 2020 period, and continues to provide today, are motivational interviewing, coping mechanisms, behavioral modifications, and active/supportive listening. Appx. Ex. 101, ¶25.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

552. Ms. Lovkay testified that it is her practice that psychotherapy is interwoven into the medication management session. Ms. Lovkay testified that she does not typically stop the E/M portion of the session to begin therapy, and vice versa. Ms. Lovkay testified that most of her patient sessions are a conversation in which the therapy is interwoven throughout the entire session. Ms. Lovkay testified that this was her practice in 2018 to 2020 as well. Appx. Ex. 101, ¶26.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

553. Ms. Lovkay testified that the corresponding CPT code for psychotherapy of between 16 and 37 minutes is 90833. Appx. Ex. 101, ¶27.

Admitted.

554. Ms. Lovkay testified that she billed the 90833 add-on psychotherapy in conjunction with the appropriate E/M code. Appx. Ex. 101, ¶28.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

555. Ms. Lovkay testified that to the best of her recollection, during the 2018 to 2020 timeframe, Ms. Lovkay utilized the "Add-On" template in AMD to enter documentation supportive of the psychotherapy portion of the patient session. Appx. Ex. 101, ¶29.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

556. Ms. Lovkay testified that she did not routinely or systematically create false claims without at least 16 minutes of face-to-face patient time for separate and distinct psychotherapy treatments. Appx. Ex. 101, ¶31.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was

189

not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

557. Ms. Lovkay testified that she is not aware of any evidence that the Defendants routinely or systematically made and caused false claims to be made by billing psychotherapy treatments without documentation to establish at least 16 minutes of face-to-face patient time for separate and distinct psychotherapy treatments. Appx. Ex. 101, ¶32.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

558. Ms. Lovkay testified that she did not routinely or systemically create false records or statements to support psychotherapy and E/M office visits. Appx. Ex. 101, ¶33.

> Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

559. Ms. Lovkay testified that she is not aware of any evidence that the Defendants routinely or systematically created false records or statements to support psychotherapy and E/M office visits. Appx. Ex. 101, ¶34.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

560. Ms. Lovkay testified that she is not aware of any evidence that the Defendants routinely or systematically submitted false or fraudulent claims for reimbursement for psychotherapy and E/M office visits. Appx. Ex. 101, ¶35.

Disputed as characterized. The self-serving testimony is disputed, incomplete, and misleading in that Mindpath failed to address the obvious and recurring overbilling problems and never had effective training, an effective compliance program or written compliance policies despite continuing coding problems because accurate coding was not a priority and undermined profit growth, as set out more fully in the Government's factual statements below.

Further, the Government provides additional Statement of Genuine Issues of Material Facts [2] in response to Defendants' 560 factual statements, that preclude summary judgment:

## **Mindpath Background**

561.    Defendant Mindpath Care Centers (PLLC) (hereinafter "Mindpath Practice") operated through a Medicare Provider Agreement that was in effect from before January 1, 2018, until after December 31, 2020. [PA 0004, Ex. 1 at page 4, #2].

562.    Mindpath Practice submitted or caused the submission of claims to Medicare for services provided by Mindpath psychiatrists and other individual Providers (hereinafter "Mindpath Providers") under the terms of Mindpath's Medicare Provider Agreement from January 1, 2018, through and after December 31, 2020. [PA 0004, Ex. 1 at 4, #3].

563.    The Mindpath Practice was paid for claims submitted to Medicare on behalf of individual Mindpath Providers under the terms of Mindpath's Medicare Provider Agreement, from January 1, 2018, through and after December 31, 2020.Providers. [PA 0004, Ex. 1 at 4,#4].

564.    The Mindpath Practice is liable under its Medicare Provider Agreement for recovery of any overpayments and penalties that are owed for the 2018 through 2020 years (i.e., Mindpath Providers for whom claims billed). [PA 0005, Ex. 1 at 5,#6].

565.    The Mindpath Practice made and caused Medicare claims by billing Medicare for Psychotherapy treatments (Current Procedural Terminology ("CPT") 90833) for Mindpath Providers, including during each year from 2018 through 2020. [PA 0006, Ex. 1 at 6, #10].

_____

[2] The excerpts of deposition testimony and exhibits are attached to Plaintiff's Appendix to Statement of Material Facts, numbered consecutively by page and filed concurrently herewith. Each time a deposition or exhibit appears in this Statement it will include an Appendix reference in the form "PA", with a reference to the relevant paragraph or line number of the deposition or page of the exhibit as specified in Local Civil Rule 56.1.

566.    The Mindpath Practice had some individual Mindpath Providers complete and sign CMS Form 855-I enrollment forms in order to be eligible for payment under Medicare, which included the statements that "I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions …" and "I will not knowingly … cause to be presented a false or fraudulent claims for payment by Medicare, and will not submit a claim with deliberate ignorance or reckless disregard of their truth or falsity." [PA 0007, Ex. 1 at 7, #13].

567.    The Mindpath Practice had Mindpath Providers complete and sign an Electronic Data Interchange Enrollment Form application which included the statements that "payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions …" and the Providers "will not knowingly present or cause to be presented a false or fraudulent claim for payment",  that their electronic signature is assurance that the claims are "accurate, complete, and truthful", and that anyone who causes "any record or other information relating to that claim" to be falsified may be subject to fine or imprisonment.". [PA 0008, Ex. 1 at 8, #15].

568.     Mindpath and Mindpath Providers were not entitled to bill or receive Medicare payment for claims that were not "reasonable" and medically "necessary." [PA 00010, Ex. 1 at 10, #19].

569.    Medicare policies and instructions allowed the Mindpath Practice and Mindpath Providers to bill and be reimbursed for a Psychotherapy "add-on" code (i.e., CPT code 90833), along with an Evaluation and Management session (e.g., "E&M" CPT codes 99212-99215 for established outpatients), only if they provided separate Psychotherapy treatment (with minimum time for Psychotherapy modality) as part of a patient's regular office visit.  [PA 00011, Ex. 1 at

193

11, #20].

570. Defendants admitted some 90833 psychotherapy claims lacked the requisite documentation of separate and distinct Psychotherapy treatment. [PA 00014, PA 000231, Ex. 1 at 14 and 22, #29, #52 and #53, ].

571. Medicare policies and instructions required the Mindpath Practice and Mindpath Providers to submit a Psychotherapy "add-on" code (i.e., CPT code 90833) with Medicare claims only if the E&M code and 90833 Psychotherapy code were both significant and separately identifiable." [PA 00011, Ex. 1 at 11, #21].


**Falsity of Medicare Claims in Mindpath Sample**

572. The Government obtained a statistically valid random sample for 60 claims for the Mindpath practice for the period 2018 to 2020 (hereinafter "Sample claims").

573. The Government sought all medical records that supported the Sample claims through a subpoena to Defendants, and provided these documents to Dr. George Corvin for his medical review to determine if the Sample claims were "Reasonable and Necessary" as required for Medicare billing.

574. Dr. George Corvin, an experienced and board certified Psychiatrist who regularly submitted claims to Medicare and supervised other providers, stated in his expert report and testified that 31 of the 60 sample 90833 claims of Mindpath were not "reasonable and necessary" as Medicare required. [PA 000198-000203] Ex. 325 at pages 4-9 (Bates # 4003-4008) and Bates # 4010-4011 (PA 000205 – 000206), George Corvin deposition at 11:6-22:8, 222:14-226:1. (PA 000256 – 000267; 000281 – 000285).

575. Thirty-one of the 90833 claims and 7 of the E&M claims were not reasonable and

194

necessary based upon Dr. Corvin's careful review of the medical records, including inadequate time documented for support of services billed, no specific time documented for services, failure to list therapeutic modality/intervention, absence of documentation of psychotherapeutic services, failure to document services to support E&M code, therapeutic modality not consistent with documentation, documentation that education services billed as psychotherapy, and documentation showing all time was for psychotherapeutic service and not E&M service. [PA 000198 – 000203 and 000204, Ex 325, Corvin Report at 4-9, and chart at Bates # 4009].

576. Some of these sample 90833 claims were not "reasonable and necessary" as Medicare required based upon many reasons, including inadequate or lack of time documented, failure to document psychotherapy modality utilized or inconsistency with medical record documentation, and patient already receiving therapy from another provider. [PA 000198 – 000203; 000256-000267; 000278-000281; 000281-000285]. Ex. 325 at pages 4-9, George Corvin deposition at 11:6-22:8; 219:3-222:13; 222:14-226:1.

577. Seven of the sample E&M claims (related to the 60 add-on 90833 sample claims) of Mindpath were not "reasonable and necessary" as Medicare required, including failure to adequately document the E&M level of service claimed. [PA 000198 – 000203; 000256 – 000267; 000281-000285] Ex. 325 at pages 4-9, George Corvin deposition at 11:6-22:8, 222:14-226:1.

578. Dr. Corvin applied "reasonable and necessary" review and standard of care requirements to determine that the documentation did not support 31 of the sample 90833 and E&M claims, and did not consider the local LCD. [PA 000198 – 000203; 000268 – 000270; 000271 – 000273; 000274 – 000276; 000277 – 000279; 000280-000281] Ex. 325 at pages 4-9, George Corvin deposition at 55:10-57:19, 100:1-102:6, 176:7-178:12, 218:6-220:14, 221:9-

195

222:13.

579.    Defendants' expert Jodi Nayoski, a coder without any medical expertise, determined that 19 out of the 60 sample 90833 claims of Mindpath were made in error as to the total time or content documented, agreeing that documentation was inadequate for 19 of the 90833 claims which is consistent with 19 of 31 of Dr. Corvin's opinions. [PA 000289 – 000292; 000293 – 000295],  Jodi Nayoski Deposition at 167:7-170:15, 198:2-200:2.

580.    The Mindpath Practice caused the submission of some Medicare 90833 claims without documentation of at least 16 minutes of separate and distinct 90833 Psychotherapy treatments, including at least some of the following examples from the Sample claims at issue: (a) CA 5/3/19, (b) SC 5/9/18, (c) JF 2/18/18, (d) RG 7/26/18, (e) RJ 12/3/18, (f) NK 6/8/18, (g) NM 7/13/20, (h) PP 11/12/18, (i) PS 9/3/20, (j) AS 5/21/18; (k) WW 10/31/19, or (l) LW 7/31/19. [PA 00022 - 00023, Ex. 1 at 22-23, #52].

581.    The Mindpath Practice caused the submission of some Medicare 90833 claims without documentation of separate and distinct Psychotherapy treatments, including for at least some of the following example claims from the Sample claims at issue: (a) MA 11/23/20, (b) CB 8/14/19, (c) RB 11/4/19, (d) GB 2/28/20, (e) MC 5/7/19, (f) SC 5/9/18, (g) LC 2/5/19, (h) RD 1/3/18, (i) JF 2/8/18, (j) HG 12/4/19, (k) RG 7/26/18, (l) MJ 5/7/19, (m) NK 6/8/18, (n) ML 5/19/20, (o) CM 12/7/20, (p) TM 12/20/18, (q) GN 2/27/18, (r) CP 6/15/20, (s) PP 11/12/18, (t) DR 5/14/19, (u) JR 8/6/20, (v) MS 6/26/19, (w) LV 10/23/20, (x) DW 2/10/20, or (y) WW 10/31/19.  [PA 00023, Ex. 1 at 23, #53].

**Defendants' Scienter Demonstrated By Statements And Patterns**

582.    The Mindpath Practice was on notice of the concerns raised by Mindpath employees, on or before January 1, 2018, that 90833 Psychotherapy "add-on" claims being

196

submitted under the Medicare Provider Agreement were improper, false or undocumented. [PA 0006, Ex. 1 at 6, #11].

583.    The Mindpath Practice and Mindpath Providers were on notice that they were required to document at least 16 minutes of separate Psychotherapy treatment time in order to properly bill Medicare for 90833 Psychotherapy treatment claims, and that the total Psychotherapy time could not include the E&M time., [PA 00012, Ex. 1 at 12, #23]

584.    The Mindpath Practice and Mindpath Providers were on notice that Medicare Psychotherapy treatment, including the required time, must be documented as a separate and distinct treatment from the E&M services that were separately billed. [PA 00013, Ex. 1 at 13, #25]

585.    From 2018 to 2020, the Mindpath Practice caused the submission of some 90833 Psychotherapy claims to Medicare without documenting at least 16 minutes of separate and distinct Psychotherapy time and Psychotherapy treatment in their medical records as required. [PA 00013, Ex. 1 at 13, #26]

586.    From 2018 to 2020, the Mindpath Practice caused the submission of some 90833 Psychotherapy claims to Medicare without documenting that its Providers rendered separate, distinct and identifiable Psychotherapy treatments in their medical records as required. [PA 00013, Ex. 1 at 13, #27]

587.    In 2018 through 2020, Mindpath and Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams, individually and collectively, provided guidance and supervision over the submission of Medicare claims for individual Mindpath Providers. [PA 00019, Ex. 1 at 19, #43]

588.    The Mindpath Practice and Defendants Jeff Williams, Abigail Sheriff, Manager Sarah Williams caused, and did not stop, the submission to Medicare of 90833 Psychotherapy claims without documentation of the minimum 16 minutes and separate Psychotherapy treatment

during 2019 or 2020. [PA 00019, Ex. 1 at 19, #41]

589. Mindpath and Defendants Jeff Williams, Abigail Sheriff, and Sarah Williams, individually and collectively, failed to take effective action to repay inaccurate Medicare 90833 Psychotherapy claims that were submitted without adequate documentation, and that Medicare paid during the period from 2018 through 2020. [PA 00021, Ex. 1 at 21, #47]

590. At the March 2019 Staff Improvement Meeting, Defendants Jeff Williams, Abigail Sheriff and Sarah Williams directed Mindpath office assistants to report any billing concerns to Chief Operating Officer Abigail Sheriff and Mindpath Human Resources Director Crystal Campbell. [PA 00017, Ex. 1 at 17, #37]

591. Jeff Williams agreed that some Mindpath "90833 psychotherapy claims may have lacked documentation of at least 16 minutes of 90833 psychotherapy treatment". [PA 000299-000300].Jeff Williams Deposition at 63:8-64:21.

592. Jeff Williams was aware that Dr. Monroe, office assistants, and BCBS raised concerns about the accuracy of 90833 claims and documentation in 2018 and 2019, and his CFO Rob Oliveri kept him informed of concerns raised. [PA 000313-000316 Jeff Williams Deposition at 112:22-115:13.

593. Jeff Williams did not know if Mindpath had a written compliance policy, that the compliance officer title floated around, and he did not know if training included mention of any compliance officer or any compliance process. PA 000304 – 000310; 000311 – 000312] Jeff Williams Deposition at 92:25-98:8, 99:22-100:12.

594. Dr. Monroe recommended to Jeff Williams that Mindpath self-report to CMS [Medicare], that it was discussed many times, but Mindpath decided not to report allegations of false claims raised by Dr. Monroe. Jeff Williams Deposition at 187:8-189:22.

595. Mindpath did not take action to determine or repay overpayments to Medicare, or review other claims submitted by providers who may have been submitting false claims, because they did not believe they had an issue. [PA 000301 – 000303; 00333] Jeff Williams Deposition at 75:22-77:8; 340:18-25.

596. Abigail Sheriff does not dispute that documentation errors occurred. [PA 000374; 000375 – 000376]Abigail Sheriff Deposition at 74:2-13; 79:1-80:12.

597. Abigail Sheriff did not know if there were written compliance policies or whether providers were aware of who Compliance Officers were as Mindpath transitioned from a family run business to a true corporate structure. [PA 000377 – 000380]Abigail Sheriff Deposition at 103:21-106:16.

598. Abigail Sheriff did not know whether Mindpath would have reviewed other possibly inaccurate claims for those providers who had known inaccurate claims. [PA 000370 – 000373] Abigail Sheriff Deposition at 64:9-67:8.

599. Sarah Williams admitted that there was illegal coding occurring at Mindpath, and testified that she discussed the seriousness of the coding violations with office assistants, that she asked office assistants to allow time for the powers that be to make needed changes, and that she did not know if they had a compliance officer or broader response to problems at that time. [PA 000353 – 000355] Sarah Williams Deposition at 219:3-221:25.

600. Sarah Williams worked on Mindpath's practice subcommittee, discussed addressing provider coding behaviors in this subcommittee in the 2019 time frame, and discussed the E&M and 90833 coding by some of the providers with office assistants. [PA 000351 – 000352] Sarah Williams Deposition at 217:6-218:24.

601. Sarah Williams was aware of complaints about providers Elizabeth Bruce and

Jerri Ji, but could not recall others. [PA 000356 – 000358]. Sarah Williams Deposition at 222:15-224:22.

602.    Sarah Williams could not answer what coding improvements Mindpath made in 2018, 2019 or 2020, other than correcting individual claims that needed correction, providing provider training and coding cheat sheets, and hiring a professional coder in approximately February 2020. [PA 000365 – 000366] Sarah Williams Deposition at 324:1-325:12

603.    Sarah Williams could not answer why Mindpath did not adequately correct the 90833 and E&M coding problems identified by Dr. Monroe in 2019 and 2020.  [PA 000359 – 000361] Sarah Williams Deposition at 226:22-228:12.

604.    Sarah Williams could not recall any compliance program or compliance policies. .[PA 000337 – 000338] Sarah Williams Deposition at 40:7-41:18

605.    Abigail Sheriff and Sarah Williams were responsible for billing and coding policies in the 2018-2020 time frame, and Jeff Williams was "hands-on everything" and "everything went by him". [PA 000406 – 000407] Yvonne Monroe  Deposition at 17:5--18:23.

606.    Jeff Williams, Abigail Sheriff and Sarah Williams knew of the 90833 coding problems with Dr. Greenberg, [PA 000416 – 000419]  Yvonne Monroe  Deposition at 82:20-85:6.

607.    Dr. Yvonne Monroe  had conversations with Jeff Williams that Mindpath should self-report to Medicare about the 90833 false claims.  [PA 000416 – 000419]  Yvonne Monroe Deposition at 82:20-85:6.

608.    Dr. Yvonne Monroe was the primary trainer for coding and documentation in 2018 to 2020 at Mindpath because no one else wanted to train providers, providers would not have known who was the compliance officer, Steve Monroe would not have interacted with providers as the compliance officer because he had social phobia, and she was not aware of written

200

compliance policies in effect in 2018-2020.  [PA 000408 – 000411; 000412 – 000415] Yvonne Monroe  Deposition at 24:7-27:13; 34:24-37:21.

609.     Rob Oliveri  did not recall anyone with the title compliance officer and was not aware of compliance policies. [PA 000389 – 000391; 000396 – 000398]  Rob Oliveri Deposition at 74:1-76:25, 95:18-97:4.

610.     Dr. Monroe did training until mid-2019 when she was removed based upon disagreement with Dr. Larry Greenberg who became Medical Director.  [PA 000389 – 000391; 000396 – 000398]  Rob Oliveri Deposition at 74:1-76:25, 95:18-97:4.

611.     Deborah Jackson did not know if Mindpath had a compliance officer regarding billing issues in 2018 to 2020 and did not know if there were compliance policies.  [PA 000425 – 000427]  Deborah Jackson Deposition at 84:15-86:18.


### Defendants' Scienter Demonstrated Before December 2018

612.     The Mindpath Practice, including Abigail Sheriff and President Stan Monroe, discussed Mindpath Providers completing combination 90833 sessions in shorter times for Medicare and BCBS (99214/90833 in 45 minutes, and 99213/90833 in 30 minutes) in an email on June 1, 2015, stating "[s]o if it's really legit to increase the number per hour to two or three respectively, that would be super valuable info."  [PA  00000028 Ex. 3].

613.     President Stan Monroe emailed Medical Director James Smith on June 18, 2015, suggesting "[s]hould you as the Medical Director be the one issuing declarations about coding?", "the Quality Assurance officer might be the one tasked with this in a perfect world" and "couldn't Colleen as your assistant receive what the policy is from us (minimum of 41 minutes for 99214/90833 except in special circumstances) and then send it around [to Providers] in the name

201

of the Medical Director?" [PA 000135] Ex 181.

614.    Abigail Sheriff, Medical Director James Smith, and President Stan Monroe recognized coding problems with inadequate time based on an email dated March 31, 2016, setting out how Provider Bonnie Angelelli overbilled 90833 patient visits that lasted 11, 16 and 18 minutes [first 4:32 Time In and Scheduling next visit at 4:43, second Time In 3:07 and Scheduling at 3:23, and third Time In 3:04 and scheduling at 3:22], and charged two patients for the same time.  [PA 00000030] Ex. 4.

615.    Dr. James Smith admitted that "[i]n my expanded role as medical director Stan, Abby and I are looking at how providers bill so that their income is maximized", that Denise Nelson "is not doing 90833s" and "she should be [doing] the 99213/90833 combo, 30 minutes" and "[w]e are recommending the 99213/90833 as it is the best money", and Abigail Sheriff responded "Awesome, Dr. Smith!  Thanks for jumping on this!" [PA 000139] Ex. 186.

616.    After an audit by Cigna that denied 90833 claims of Provider Mary Hartsell, Dr. Smith emailed Stan Monroe, Abigail Sheriff and Deb Jackson a warning on July 15, 2016, that "[t]he word of the day is to stay away from the 99214/90833 combo unless you go the extra mile [and] all three [denied claims] would have passed if she had used the 99213/90833!!!!!!" [PA 000140] Ex. 189.

617.    Abigail Sheriff emailed coding questions to Deb Jackson and Tory Griffith (but not Medical Director) on December 12, 2016, stating in part that "Dr. Monroe is telling everyone (including the new Nurse Practitioner NPs) that they're not allowed to bill a 90833 unless they have a specific psych cert because its "beyond their scope of practice", but  questioned "if the insurance companies pay, does that trump the nursing board "scope of practice" regulations?" [PA 000154] Ex 205

618.    Abigail Sheriff sent out emails directing employees to "work up a one sheeter that explains how much time we attribute to each type of code or code combo" and that Stan Monroe, Dr. Smith and I "will want to see it before we roll it out, and Dr. Smith will need to sign off on the idea altogether since I haven't run it by him yet!" and later stated "getting into trouble because newbies are doing 99214/908333 in an hour … just tell them the 99214/90833 is a 45 minute session." [PA 000142] Ex 192.

619.    The executive assistant to Medical Director James Smith sent an email on November 21, 2017, to Abigail Sheriff, Stan Monroe and Dr. Smith, stating "there has been a lot of confusion with coding for medication management providers" and "Abby [Sheriff] and Dr. Smith worked together to create a "cheat sheet" for coding based on the timing and type of appointment" to be sent to Providers, but that Dr. Yvonne Monroe asked that this version be retracted and her cheat sheet sent instead [her version stated "+90833 – 30 minute psychotherapy add-on (can be used for 16-37 minutes)], and then the email asked "[c]an MISO [management organization] look over both of these and determine, based on timing and reimbursement, what information is best to distribute to all our providers" [PA 00067] Ex 47

620.    President Stan Monroe emails Abigail Sheriff and Jeff Williams on June 2-3, 2018, with subject line "Things to immediately improve margins in an impactful way, from day one post-financing" during transition to new ownership, with attachment "2017 Coding and Timing.pdf", and included "Optimized coding- for example an MD could perform a 99213/90833 in 30 minutes, or perform a 99214/90833 in the same half hour, subject to certain billing criteria [and] first pays $286.80 per clinical hour; the second pays $364.68 for the same hour, a 27% increase for the same time spent by the doctor, and at no extra expense for the practice", with a reply from Jeff Williams "can someone send me a little cheat sheet on our core codes and what

each means" and "I am going to reduce these set of ideas to a more general idea of Reimbursement and Routing Mix." [PA 000183] Ex 312

621.     Abigail Sheriff sent a related email to Jeff Williams on June 2, 2018, that "need to be <u>REALLY strategic</u> about where we route patients with certain plans" and could we "keep the 'better assignment and routing of patients' <u>more vague</u>, and just promise to look at what each plan pays each clinician type and become extremely strategic about patient assignments going forward." [PA 00034] Ex 6 (emphasis provided).

622.     Dr. Smith sent an email regarding Clinical Coding to Abigail Sheriff and others on June 25, 2018, stating "I agree, all should be using the 99214/90833" and "Esther and I will draft a letter for your review Thursday when I get back or feel free to draft one and I can review it while I am here as time/money is important," following statement by Stan Monroe about "coding issues that we need to solve quickly" and NPs and PAs "should use 99214/90833 whenever possible for every patient for follow ups" for UBH and CBH Insurance Payors. [PA 000146] Ex 193

623.     During the due diligence of the new private equity ownership of Mindpath, future Medical Director Lawrence Greenberg emailed Jeff Williams, Medical Director Smith and Stan Monroe on August 9, 2018, with subject line "Coding/Compliance Audit", and stated [forewarning] "[a]n accuracy rate of 91% likely makes us safe from charges of fraud", "we have too many people in the organization who are handing out coding advice", and we need to purchase a CPT manual and "designate One senior clinician and One senior member of MISO or NEWCO (whatever it will be called) to be our in house experts and the only 2 people who give out coding advise." [PA 000149] Ex 194

624.     Dr. Yvonne Monroe sent an email on December 12, 2018, to Dr. James Smith,

Sarah Williams, Abigail Sheriff, Lawrence Greenberg, and others, stating the purpose of the newly formed Practice Management Committee was to increase "compliance with state and federal regulations" and attached an Agenda that stated "New Business" was to "Decide upon minimum duration for CPT codes for clinicians E&M codes: …+90833 -16"" and other matters. [PA 00075] Ex 59.

625.    Dr. Yvonne Monroe sent an email to Jeff Williams and others on December 14, 2018, with her Mindpath training materials stating for Medical Clinicians "+90833 – 16 minute psychotherapy add-on to returning patient E&M … add-on therapy portion of the Psychiatric OV progress note must have its own/ a separate time in and time out from the E&M timed service." [PA 000214] Ex  258 at Bates 531006.

**Defendants' Scienter And Fraud Notice Demonstrated From 2018 to 2020**

626.    Mindpath Founder, Provider and trainer Dr. Yvonne Monroe notified Mindpath Chief Executive Officer Jeff Williams by email on December 17, 2018, that Mindpath's Medical Officer Dr. Lawrence Greenberg had been upcoding 90833 and E&M codes "for a long time", that "coding 2 99214s and 2 +90833s every hour was <u>fraud</u>", that "it only takes one patient, who looks at their … statements and adds the times of the two codes together, to call Medicare", that "for the +90833 there has to be a time in and time out separate from that of the E&M 99214 code", that the email's author was "concerned about [the Medical Officer's] past choices leading to bad outcomes for [Mindpath] … B/c Abby [Sheriff] assigned him to co-train", and Mindpath "cannot afford to have a provider training coding and documentation when he is/has engaged in years of <u>fraudulent behavior</u> [and] has <u>up-coded 40%</u>." [PA 00036-37], Ex 10 (emphasis supplied).

627.    Mindpath's CEO Jeff Williams was warned in Dr. Yvonne Monroe's email dated

December 17, 2018, that Medicare will ask if Mindpath knew of past coding behavior when the Chief Medical Officer is audited, that the Medical Officer "has not turned himself in", that others will be responsible who "didn't report to Medicare", and that "we should ask a lawyer who specializes in these situations what we should do next." [PA 00036] Ex 10 (emphasis supplied).

628.  Dr. Yvonne Monroe stated concerns in a 2018 email to Mindpath's CEO Jeff Williams that Mindpath Medical Director Lawrence Greenberg was providing documentation training to Mindpath Providers for Medicare claims, despite Dr. Greenberg's admission that he had been upcoding fraudulent 90833 Psychotherapy claims for years, and Dr. Monroe's concerns regarding pressure on Mindpath Providers to lower minimum times for billing codes and billing "a distinct +90833 (16-37 mins) and a 99214 ("typically a 25 minute service") in 25 total minutes." [PA 00036]  Ex 10.

629.  Jeff Williams responded to the email from Dr. Monroe on December 17 and 18, 2018, stating that it is "best to discuss these matters in person" and this discussion "needs to be taken offline (not in email) and stay there.  Period." [PA 00036] Ex 10.

630.  Dr. Monroe stated that Rob Oliveri directed that there would be no practice wide guidelines for duration of combination 90833 and E&M codes at the Practice Management Committee meeting on December 19, 2018. [PA 00077] Ex 61

631.  Dr. Monroe prepared a Plan for Larry Greenberg that she discussed with Jeff Williams and others, dated December 19, 2018, including in the plan that Mindpath should "1. Hold Dr. Greenberg's claims until he is trained by Dr. Monroe re 90833", "3. Dr. Greenberg will not train clinicians on coding and documentation" "6. Recommend self-report to CMS and BCBSNC re: incorrectly performing and documenting 90833" (emphasis supplied) and "7. As per Rob Oliveri, chart audit of clinical notes by professional coder." [PA 00079-80] Ex 62 at Bates #

3606-3607.

632. The 2018 Plan for Larry Greenberg, discussed with Jeff Williams, also stated that Dr. Greenberg agreed to 90833 training and he "understood the requirements of a separate time in and time out from the E&M code, intervention and content of the therapy add-on session" and additional requirements for Medicare. [PA 00079 - 00080]  Ex 62 at Bates # 3605-3607.

633. Dr. Yvonne Monroe demanded that Dr. Lawrence Greenberg not be allowed to train, and communicated her concerns to Jeff Williams and Abigail Sheriff.  [PA 000178-000179] Ex 259.

634. Mindpath made an intervention against Dr. Lawrence Greenberg, but they did not audit any other providers.  [PA 000420-000421] Yvonne Monroe  Deposition at 245:9-246:25.

635. Dr. Monroe accused Dr. Lawrence Greenberg (who was the Co-Chair of the Practice Management Committee with Dr. Monroe, and the future Medical Director) of fraud for 90833 claims, but Rob Oliveri and Jeff Williams did not believe Dr. Monroe's allegations, no one confronted Dr. Greenberg regarding these 90833 fraud allegations, and no actual audit was done of prior Dr. Greenberg claims.  Rob Oliveri  [PA 000399 – 000401] Deposition at 148:17-150:23, 175:1-20.

636. Dr. Yvonne Monroe emailed Medical Director James Smith on January 14, 2019, to clarify the 90833 Medicare rules, including that "you cannot send a claims +90833 unless you have a Time in/time out, Intervention and Content", that Rob Oliveri is not interested in billing 99213s "because he needs to increase our revenue", that she doesn't believe Jeff Williams wants newbies trained only on 99213 + 90833, and that providers will get a big raise if they use more robust codes.  [PA 000152] Ex. 198 at Bates # 523175.

637. Jeff Williams asked Rob Oliveri by email on January 30, 2019, "How fast can we

get a coder, even a consultant, to educate our existing people . . . put out a written statement as part of the calming of the nerves?", Oliveri responded that he could use his consultant wife and asked "What is it we want in writing" and "That it is ok to do a level 4 code and 90833 add on in 30 minutes provided the documentation supports it?", and Jeff Williams then replied "yes …. and what the documentation needs to look like … and settle the difference between LG and YM [Dr. Greenberg and Dr. Monroe]." [PA 00040 – 00041] Ex. 11.

638.    Mindpath's documentation requirements continued to evolve regarding 90833 claims, and Jeff Williams did not know what experience Rob Oliveri's wife had that enabled her to indirectly offer coding guidance on 90833 claims.   [PA 000320-000324] Jeff Williams Deposition at 209:7 -213:9.

639.    Jeff Williams asked Rob Oliveri when they would have a coding policy written in an email dated February 4, 2019, in response to a Yvonne Monroe email about coding training, which followed after an email from Abigail Sheriff to Medication Providers and Jeff Williams that included discussion of the new provider compensation model based upon claims billed and one bullet point of concern raised that "company needs to provide more and better training on coding before asking you all to convert to a system that relies entirely on coding", along with an attached "Cheat Sheet" that included guidance "+90833 – 16 minute psychotherapy add-on to returning patient E&M code 99213, 99214, 99215.  The add-on therapy portion of the Psychiatric OV progress note must have its own/ a separate time in and time out from the E&M timed service. Face-to face." [PA 00081 – 00082; 00084] Ex. 63 at Bates # 496154-496155, 496157.

640.    Abigail Sheriff and Rob Oliveri had email exchanges on March 4, 2019, regarding upcoming coding fraud training by Dr. Monroe that "really scary and off-putting" and "use of words like fraud, liable and overcoding will certainly <u>temper the behavior we want to encourage</u>

around accurately documenting and coding what we do", and further that "asked her to emphasize the point that the provider is only at risk of liability if there is no mechanism set in place by the company [Mindpath] to catch potential errors but we are in the process of building a chart audit process to identify any risk and thus transfer the risk from practitioner to company." [PA 00093 - 00094] Ex 67 (emphasis supplied).

641.    The Fraud slides that alarmed Abigail Sheriff and Rob Oliveri appear to be an example in a slide deck that provides "Up coding examples:  Reporting the psychotherapy +90833 add on code for less than 16 minutes of psychotherapy" which was below statement that "Physician is responsible (and liable) for all coding done in that physician's name [and] responsible for appropriate documentation … [even if physician's employer submits claim]." [PA 00091]  Ex 66 at Bates # 3630.

642.    Abigail Sheriff was emailing the Medical Director on March 5, 2019, regarding the percentage that certain providers were utilizing 90833s under new income model, stating one provider is at 60% and "should be closer to 90%, also about a 1 to 4 ratio 99213s to 99214s."  [PA 00042] Ex 12.

643.    Abigail Sheriff sent an email to Mindpath Medication Provider on March 13, 2019, with coding guidance attachment, statement that "Dr. Smith will be coming to each office to review this with providers as well", and the Coding Guidance attachment stated in part under "Billing psychotherapy code 90833" that "Time element must be documented…", "Clinical notes for each encounter that summarizes what was discussed …", "Documentation for the 90833 related psychotherapy should be separate and identifiable in the progress note" and "Given the composition of our patient base it is likely that on nearly ALL 99213/99214 visits, meaningful counseling is indicated in order to provider proper patient care, and if the counseling is 16 minutes

209

or more <u>this would warrant an add-on code</u>." [PA 00070 – 00072] Ex 48 (emphasis supplied).

644.     Jeff Williams, Abigail Sheriff, and Sarah Williams met with office assistants on March 30, 2019, and heard complaints that included Mindpath coding practices. [PA 00044]  Ex. 18.

645.     Sarah Williams attended the Staff Improvement Meeting on March 30, 2019, along with Abigail Sheriff, Jeff Williams, and office assistants, coding and billing concerns were raised, office assistants emailed her about coding concerns after the meeting, and she would forward all coding complaints to Abigail Sheriff without keeping a log or record.  [PA 000339 – 000350; 000362 – 000364] Sarah Williams Deposition at 119:2-130:23; 316:15-318:9.

646.     Office assistants complained in April, 2019, about improper 90833 add on coding with E&M sessions that were for only 10 minutes between checking in and making next appointment, and Rob Oliveri stated to Jeff Williams in an email on April 4, 2019, that we need to train and hire a full time coder based on "risk we have from providers that need to  understand the documentation and coding rules better."  [PA 000186 – 000188] Ex 314.

647.     Jeff Williams agreed in an email dated April 12, 2019, that coding problems were "an ongoing issue" and "right about the coding training" (copying Abigail Sheriff and others) as he acknowledged the harsh email from a departing provider which included that she could "no longer abide the staggering incompetence of this company" and she complained about "misinformation", "never even competent", "disagree with the model of service here" and "like fast food psychiatry" at Mindpath.  [PA 000123 – 000124] Ex 152 at Bates # 177074-177075.

648.     Dr. Monroe emailed Jeff Williams, Abigail Sheriff and others on May 8, 2019, to report that another provider was "aware she isn't documenting a 99214 and has been choosing to code the 99214 anyway in order to increase her income" and she shared the "4 slides on Fraud and

Abuse from the Practice Management Learning Module on 5/8/2019." [PA 00073] Ex. 54.

**Blue Cross Blue Shield 2019 Audit of 90833 Claims and Related Matters**

649.    In response to a BCBS audit regarding 90833 claims, Medical Director James Smith emailed leadership "Red Alert!" regarding concerning 90833 review on May 10, 2019, but Abigail Sheriff responded, that "Rob [Oliveri] had a big meeting with his team this afternoon. Stay tuned", "we sit tight and don't panic", "Mums the word to providers", and "we don't need folks catching wind of it and getting cold feet." [PA 000155-156] Ex 207.

650.    In response to the BCBS audit, Abigail Sheriff also stated in another email dated May 10, 2019, that a provider complained that Mindpath is "making me code 90833s now" and patients may have complained because they heard this message from providers. [PA 000189 – 000190] Ex. 315.

651.     Dr. Monroe emailed Jeff Williams and others on May 13, 2019, to report that provider Elizabeth Bruce "treats many of her large caseload in 15 minute scheduled sessions" and has a "history of not completing progress notes." [PA 000129] Ex. 162.

652.    Dr. Monroe emailed leadership on May 13, 2019, to report that a provider "always times the 90833 -16 minutes- she had questions about the content" and some "content is not therapy – weight management instead which falls under E&M code",  and Jeff Williams responded to copy Abigail Sheriff because "she is the key liaison between the practice and management group" and then Rob Oliveri directed to "not" put all details in email." [PA 000180 – 000181] Ex. 261.

653.    Abigail Sheriff emailed seven providers on May 16, 2019, without copying the Medical Director, directing them to "specifically document the time in and time out at least <u>16 minutes</u> for your 90833 therapy add on codes" and explaining "trying to get everyone up to speed

on proper coding/documentation" but "process was pretty piecemeal" and "can create some confusion." [PA 000112] Ex. 126.

654. Abigail Sheriff sent an email on June 3, 2019, to reassure complaining office assistants (including billing 90833 for 10 minute appointment) that Mindpath "putting a process in place to directly address coding with providers as well as bringing on a professional coder" and asked assistants to keep feedback coming because "all going into a folder and getting compiled by an intern for our use in managing providers." [PA 000126 – 000128] Ex 160 (emphasis supplied).

655. Deborah Jackson emailed Abigail Sheriff and others on June 4, 2019, to report "systematic problem" naming 3 providers "documenting the entire session as a 90833" and not documenting the 90833 time separately from the E&M time. [PA 000113] Ex 128.

656. Future Medical Director Lawrence Greenberg emailed Abigail Sheriff and others for guidance regarding coding on June 4, 2019, including the question "should time and out be the same in both settings or is this our best estimate?" and "I'll do/teach whatever you tell me is the current approach until you tell me to change." [PA 000114] Ex 129.

657. On June 7, 2019, Abigail Sheriff admitted that "it will be another six months to a year before we're able to meaningfully change providers' behavior in the way [an officer manager] is asking" in response to a resignation email from an office manager reporting "meetings with upper management where the administrative staff have expressed their concerns over exorbitant billing/coding practices" referencing the March 30, 2019 meeting with Abigail Sheriff and Jeff Williams, and that she "ceased to pass along this information after not receiving any feedback" as "providers are able to continue to work without having any accountability for their actions." [PA 000108, 000110] Ex. 97 at Bates # 418446, 418448.

658. Deborah Jackson sent Abigail Sheriff and others an email dated July 8, 2019,

reporting that "not sending a deleted 90833 report this week because there aren't enough to really see a pattern in any one provider [and] Med Providers continue to struggle with reporting the same times in and out for both codes, less than 5 minute 99215's etc." [PA 00095] Ex 71.

659.     Deborah Jackson sent Abigail Sheriff and others an email dated July 16, 2019, reporting that two providers continue to do "99214, 90833 with identical times in and times out" after doing it correctly the week before.  [PA 000157 - 000159] Ex 212.

660.     Rob Oliveri emailed Mindpath leadership on September 5, 2019, reporting from the BCBS meeting that "There are concerns that our E&M documentation is not always sufficient to support the code selected", "All of our psychotherapy time in and time outs were 16 minutes [and] BCBS would prefer it be more reflective of actual psychotherapy time spent", BCBS raised concerns about 99214 + 90833 in 30 minutes based upon "25 minute 99214 concept", "There is a concern of record cloning", and "In General our 90833 documentation needs to be better [:  1] Time in/ time out represent true psychotherapy time spent [2] Discuss what was done for the patient [3] Make the note unique to that patient [and 4] Discuss how patient progressing toward plan." [PA 00048] Ex 25 at Bates # 529526.

661.     Deborah Jackson then responded to Jeff Williams, Abigail Sheriff and others by email September 5, 2019, reporting a decrease in last four months "in the amount of 90833's that we've had to delete, but not a significant one" and issues she has seen include "1. Providers are trying to do 99214/90833 in less than 30 minutes [and] those short sessions should be either 99214's or 99213's with no [90833] add on, in my opinion", "2. We still have folks not documenting the 90833 on the notes", "3. There are still mathematical errors that prevented notes from being sent, i.e. 14 minute 90833's", "4. Times In and Times Out on the notes are all over the place…" and "5. Time In and Time Out identical for both codes"; and Steve Monroe added that

"most of the 90833's we voided were due to the add on therapy time taking up most of the visit leaving abbreviated time for the E&M code [such as] Documenting 25 minutes for therapy leaving 5 minutes for a 99214 for instance." [PA 00046 - 00047] Ex 25 at Bates # 529524-529524.

662.    Deborah Jackson offered her opinion, after four months of more thorough documentation review before her email on September 5, 2019, that providers were not doing the 90833 claims or not documenting the 90833 claims, and that times were all over the place and not documented.  [PA 000428 – 000430] Deborah Jackson Deposition at 262:5-264:21.

663.    Jeff Williams understood that Deborah Jackson believed there was a continuing billing problem, but he did not discuss with her these concerns raised about inaccurate coding of 90833 add-ons. [PA 000325 - 000330] Jeff Williams Deposition at 296:13 - 301:3.

664.    The 2019 BCBS coding problems did not cause Mindpath to review their prior Medicare claims, and a review would likely find inaccurate billing today "because its dogs and cats", "come and go", "different ideas", and "just hard to manage everybody".  [PA 000325 - 000330] Jeff Williams Deposition at 296:13 - 301:3.

665.    Abigail Sheriff understood the 90833 billing concerns raised by Deborah Jackson, she valued Deborah Jackson's opinions, she understood the same rules applied to both BCBS and Medicare, and she did not know if Medicare claims were reviewed based upon the BCBS audit's finding that 90833 claims were inaccurate.  [PA 000381 – 000385] Abigail Sheriff Deposition at 323:7 -327:8.

666.    Thereafter, new Medical Officer Lawrence Greenberg emailed medication providers about the BCBS audit on September 6, 2019, including stating as number 2 "the 90833 code requires the clinician to spend a minimum of 16 minutes a face-to-face time with the patient" [although he claimed] "impossible to clearly distinguish between the E and M section and the

therapy section", "3. We are required to list the psychotherapeutic modalities utilized in the visit", "4. We need to add a bit more detail than most of us are documenting …" and that repeating same phrases in notes "makes us look as if we did not actually deliver the service…", "5. Finally, as in all notes, there needs to be some mention of your assessment of the patient's progress and response to our intervention" and "we need to have enough detail to identify the therapeutic work performed with a given patient at a given visit, and their response." [PA 00050 – 00052]  Ex 26.

**No Effective Action Taken To Correct Problem Claims Lacking Adequate Documentation**

667.    Jeff Williams responded to an email on January 16, 2020, regarding coding trends, mentioning "worst coders" and that the percent of clinicians using 90833 add-on with E&M sessions has continued to drop to 62% based upon Key Performance Indicators that were tracked. [PA 00096]  Ex 73.

668.    Sarah Williams emailed with other Mindpath employees on February 24, 2020, stating "as you know this <u>isn't going to be a top priority right away</u>, but eventually it will be very helpful feedback in improve operation" in response to an email that Mindpath started tracking billing errors, including one 90833 claim entered inaccurately. [PA 000106 – 000107] Ex. 86 (emphasis supplied).

669.    Jennifer Arnold did not became the coder at Mindpath until February, 2020, after more than a year of discussion of the need for a coder.  [PA 000389 – 000391; 000396 – 000398] Rob Oliveri Deposition at 74:1-76:25, 95:18-97:4.

670.    New coder Jennifer Arnold emailed Rob Oliveri on March 30, 2020, stating "<u>Dr. Monroe is spot on</u>" Mindpath issues, and several providers "told me they are just unsure of billing for add-on therapy" and providers "do not know what they are allowed to bill for, if it is ok to bill

215

even when the patient is seeing [another] therapist consistently, how to document it properly, etc." [PA 000165 - 000167] Ex 239 (emphasis supplied).

671.     Rob Oliveri emailed new Medical Director Scott Griffies on April 3, 2020, to admit he lacks a psychiatry coding background, noted Jeff Williams was in the 2019 meeting with BCBS, and the "separate time in time out was something told to me by Dr. Monroe, affirmed by Dr. Greenberg and reiterated by BCBS."  [PA 00097 – 000100] Ex 74.

672.     Jeff Williams emailed on April 4, 2020, that "we only need time for the 90833" and not the E&M portion but "bette[r] to have this discussion live." [PA 00053] Ex 32.

673.     Dr. Monroe emailed Rob Oliveri on April 7, 2020, to remind him that the Mindpath Quality Standards Board "decided to mandate a time in and time out b/c of sub-optimal documentation", many providers were not documenting the add-on therapy based upon internal audits, and "these 90833 were clearly in violation of the need to document the total time spent on 90833 and a separate note for the 90833."  [PA 000115 – 000116] Ex 139 (emphasis added).

674.     Rob Oliveri emailed Jeff Williams, Abigail Sheriff and others on April 14, 2020, stating in part "The 90833 trend is nice" but E&M "99213/214 split needs improvement",  with a flag to follow upon on these Key Performance Indicators.  [PA 000117] Ex 140.

675.     Jeff Williams emailed on April 17, 2020, that 90833 was still improving as Key Performance Indicator.  [PA 00058] Ex 33 (emphasis supplied).

676.     New Medial Director Scott Griffies emailed Abigail Sheriff and others on May 3, 2020, about confusion in combining E&M and 90833, that "Rob and Abby were concerned that there were general deficits in knowledge competency in coding in our organization and brough it up at our last joint operation meeting", and then provider Cara Lutzow stated "there has been conflicting advice over the last couple of years as to what is required for a 90833+99213 and

216

"90833+99214" and "a lot of debate around what qualifies for what" and the current advise that therapy must be over 16 minutes (but E&M is not time based) "is different than some previous advise, which may be why there is confusion." [PA 000101 – 000103] Ex 76 (emphasis supplied).

677.     Medial Director Scott Griffies emailed Jeff Williams, Abigail Sheriff and Medication Providers on May 3, 2020, stating in part "we have changed the requirement for psychotherapy time coding" such that "you don't put a start and stop time for the psychotherapy portion" and "put the total time you have spent for psychotherapy, which should be 16 to 37 minutes for a 90833 documentation." [PA 000160] Ex 218 at Bates # 674388.

678.     New coder Jennifer Arnold emailed Rob Oliveri about the BCBS 2020 audit on May 21, 2020, stating that, out of 30 sample claims reviewed, 9 of the "90833 should not have been billed" because "Timing seems off and not enough documentation to support." [PA 000170 – 000177] Ex 248.

### Mindpath Leadership Focused On Maximizing Profits Using 90833s

679.     Jeff Williams emailed Abigail Sheriff and others on June 16, 2020, about the 90833 billing percentages for all Mindpath providers (70% for prior week), and 8 specific Mindpath providers with decreased 90833 usage, with percentages stated between 36% to 78%. [PA 000104 – 000105] Ex 77.

680.     Medical Director Scott Griffies sent an email to Jeff Williams and others on July 6, 2020, raising alarming question based upon general documentation concerns: "Do we have a systemic, multilayered problem of unprofessionalism that has been allowed in our organization? And what do we do about it", and Abigail Sheriff stated "we can discuss in person" about systemic Mindpath problems. [PA 000130 – 000134] Ex. 165.

681.    Provider Elizabeth Bruce complained in email July 2, 2020, to Abigail Sheriff, about 25 patients for "June that had incorrect charges submitted" and then billing manger Tory Griffin Wood reported that "These errors were really across the board and random and I am just feeling like there's got to be a better way."  [PA 000119 – 000120] Ex 141, at Bates 125869, 125871 (emphasis supplied).

682.    Medical Director Scott Griffies sent email to new coder Jennifer Arnold on July 15, 2020, stating "the main problem is that no one has training in psychotherapy", providers have to pursue training if they are interested in providing psychotherapy", "Good psychotherapy is hard" and we could try to "encourage those who do not want to do psychotherapy to do 15 to 20 minute medication check appointments instead?" [PA 000168 – 000169]  Ex 245 (emphasis supplied).

683.    At the Mindpath board meeting on July 30, 2020, Jeff Williams and Rob Oliveri presented financial information that included the percentage of 90833 claims (added to E&M 99213 and 99214) for February to June 2020 (monthly from 66% to 73%), that 7,414 additional 90833 claims, included statement "Average reimbursement for 90833 is approximately $60 [and] An appropriate 6% increase of our med management providers using the 90833 code would yield an additional $445K annually", and highlighted notable company record in June that included "80%+ Realization for Med Management" providers.  [PA 00063] Ex 40A  at Bates 476863, 476911 (emphasis supplied).

684.    Jeff Williams and Rob Oliveri exchanged emails on August 13, 2020, with Jeff Williams raising concern that Key Performance Indicators for 90833 claims should be getting closer to 75%, Oliveri responded that new coder Jenn Arnold is getting feedback that "providers are spending less time on these [90833 telehealth] calls and do not feel the 90833 is warranted", and Jeff Williams decided to add 90833 coding issue to the agenda.  [PA 00060 – 00061] Ex 36

(emphasis supplied).

685.     Jeff Williams emailed Rob Oliveri on December 8, 2020, about the 2020 financials, explored in part the differential between Medication Management numbers (in contrast to Therapist numbers), stated Mindpath revenue "is <u>better than budget due to work we have done this year on 90833</u> and 99214", and recognized "revenue per visit on med management being double that of therapy" side means Mindpath can miss therapy visit and make up with Medication management visits.  [PA 000191 – 000194] Ex 316 (emphasis supplied).

686.     Rob Oliveri emailed Jeff Williams and others on May 18, 2021, to state coder Jennifer Arnold looked at 10 sample claims from the Department of Justice records request, and she found that all 10 "have a 90833", "<u>5 of the 10 either did not have a time entered for therapy or no therapy documented at all</u>" and that for "2 of the 10 the E&M is too high", to which Rob Oliveri responded "go pencils down until we get guidance" and Jeff Williams agreed. [PA 00025] Ex. 2 (emphasis supplied).

687.     Coder Jennifer Arnold did a quick pull of Government sample claims for Mindpath and she determined 5 of 10 did not have time entered for 90833 psychotherapy.  [PA 000331 - 000332] Jeff Williams Deposition at 338:9 – 339:16.

688.     Rob Oliveri directed Mindpath to go "pencils down" because Jennifer Arnold stated there could be an issue with the Government sample claims, and that they should get counsel involved and pending sale to Community Psychiatry a couple days away.  [PA 000392 – 000395] Rob Oliveri Deposition at 91:19-94:24.

**<u>Defendants' Extrapolated Damages Caused By False Claims</u>**

689.    Dr. Corvin determined that 31 of the 90833 therapy sessions and 7 of the E&M counseling sessions should not have been paid because they were not "reasonable and necessary" under Medicare requirements, [PA 000195 - 000204]. Ex 325 Corvin Report,

690.    The extrapolated damage amount of Medicare claims paid for the 31 false claims out of the 60 Sample procedures was $438,012, based upon the universe of $1,600,861 paid for 15,984 Mindpath claims and the 27% error rate and claim denials determined from the medical review of Dr. Corvin.  [PA 000434 – 00043; 000438 – 000444; 000212 – 000213], Robert D'Zio Deposition at 19:20 – 20:24; 21:21 – 22:23; 35:17 – 41:4; Ex. 361.]

Respectfully submitted, this the 11th day of June, 2025.

DANIEL P. BUBAR
Acting United States Attorney


By:    <u>/s/ Neal I. Fowler</u>
       NEAL I. FOWLER
Assistant United States Attorney
Civil Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
NC Bar #27371

Counsel for United States of America

<u>CERTIFICATE OF SERVICE</u>

I certify that I have on this 11th day of June, 2025, served a copy of the foregoing upon the

below-listed party and counsel electronically, personal service and/or by mailing a copy of the

same in a postpaid envelope to:

> R. Daniel Boyce
> Alice V. Harris
> Jenna K. Godlewski
> Attorneys at Law
> MAYNARD NEXSEN PC
> 4141 Parklake Ave., Suite 200
> Raleigh, NC 27612
>
> W. Stacy Miller, II
> MaryAnne Hamilton
> Miller Law Group, PLLC
> Post Office Box 1769
> Raleigh, NC 27602
>
> *Attorneys for Relator*

> <u>/s/ Neal I. Fowler</u>
> NEAL I. FOWLER
> Assistant United States Attorney
> Civil Division
> 150 Fayetteville Street, Suite 2100
> Raleigh, NC 27601-1461
> Telephone: (919) 856-4049
> Facsimile: (919) 856-4821
> Email: Neal.fowler@usdoj.gov
> NC Bar #27371
> Counsel for United States of America