IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:19-CV-512-BO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| MINDPATH CARE CENTERS, NORTH CAROLINA, PLLC, JEFF WILLIAMS, ABIGAIL SHERIFF, SARAH WILLIAMS, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OF UNITED STATES IN RESPONSE
TO DEFENDANTS' MOTION TO EXCLUDE TESTIMONY
FROM GOVERNMENT EXPERT DR. GEORGE CORVIN**

The Court should deny the Defendants' Motion To Exclude Testimony of Dr. George Corvin. [DE 68]. Defendants fail to establish that this expert Psychiatrist is unqualified, that his "medical necessity" opinions are unreliable, or that his opinion testimony should be excluded. To the contrary, the Government's expert has extensive expertise and his reliable opinions are firmly grounded in the evidence.

Defendants seek to exclude the Government's medical expert, a Psychiatrist with approximately 28 years of experience with Medicare claims, based upon his alleged lack of qualification as a coder, and asserted unreliability of his opinions.

This is a False Claims Act case. Defendants are liable because they caused false health care claims for psychotherapy and related counseling sessions which were not "Reasonable and Necessary" and properly documented under Medicare requirements. The falsity of these claims turns in part on this expert testimony.

In a nutshell, the Government has ample evidence that Defendants caused false Medicare claims in order to increase their psychotherapy and related claims, and maximize their profits. They took advantage of their patients and the Medicare program out of greed. Defendants were paid over $1,600,000 for almost 16,000 claims, and approximately 27% were not medically necessary, because not documented with the time and supporting information required. Defendants made and caused systemic and blatant false claims, with at least reckless disregard, in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq.

Put simply, Defendants cannot establish that the Government's experts should be excluded on the "medical necessity" and related topics designated.

## PROCEDURAL AND FACTUAL BACKGROUND

Medicare policies allowed the Mindpath Practice to bill for a Psychotherapy "add-on" code (i.e., CPT code 90833), along with an Evaluation and Management session ("E&M" CPT codes 99212-99215), only if they provided separate Psychotherapy treatment as part of office visit, and Defendants admitted some 90833 psychotherapy claims may have lacked the requisite documentation.

Dr. George Corvin is a board certified Psychiatrist with extensive experience overseeing a psychiatric practice for over 28 years, including regularly submitting claims to Medicare and supervision other Medicare Providers regarding 90833 psychotherapy and E&M counseling session claims. Exhibit A, Expert Report.

Dr. Corvin stated in his expert report that 31 of the 60 sample 90833 claims of Mindpath were not "reasonable and necessary" as Medicare required. Exhibit A,

Expert Report at pages 4-9.

Dr. Corvin's exert report stated his opinion that 31 of the 90833 claims and 7 of the E&M claims were not reasonable and necessary based upon a careful review of the medical records, including inadequate time documented for support of services billed, no specific time documented for services, failure to list therapeutic modality/intervention, absence of documentation of psychotherapeutic services, failure to document services to support E&M code, therapeutic modality not consistent with documentation, documentation that education services billed as psychotherapy, and documentation showing all time was for psychotherapeutic service and not E&M service. Exhibit A, Expert Report at 4-9, and Bates # 4009.

Dr. Corvin stated in his expert report and testified that some of these sample 90833 claims were not "reasonable and necessary" as Medicare required based upon many reasons, including inadequate or lack of time documented, failure to document psychotherapy modality utilized or inconsistency with medical record documentation, and patient already receiving therapy from another provider. Exhibit A, Expert Report. at pages 4-9, and George Corvin deposition at 11:6-22:8; 219:3-222:13; 222:14-226:1.

Dr. Corvin also stated in his expert report and testified that 7 of the sample E&M claims (related to the 60 add-on 90833 sample claims) of Mindpath were not "reasonable and necessary" as Medicare required, including failure to adequately document the E&M level of service claimed. Exhibit A, Expert Report at pages 4-9, George Corvin deposition at 11:6-22:8, 222:14-226:1.

3

Dr. Corvin also testified that he applied "reasonable and necessary" review and standard of care requirements to determine that the documentation did not support 31 of the sample 90833 and E&M claims, and did not consider the local LCD. Exhibit A, Expert Report. at pages 4-9, George Corvin deposition at 55:10-57:19, 100:1-102:6, 176:7-178:12, 218:6-220:14, 221:9-222:13.

Dr. Corvin testified that he agreed "reasonable and necessary is part of the requirement in your agreement with Medicare" and required by statute, and the absence of a Local Coverage Determination (LCD) or National Coverage Determination (NCD) does not change what is "reasonable and necessary. George Corvin deposition at 219:3 – 220:14.

Dr. Corvin testified that "reasonable and necessary" was a requirement for both Medicare billing purposes and standard of care, and a Provider must document what you are doing for payment purposes. George Corvin deposition at 221:2 – 222:9.

He described his review process and what was "reasonable and necessary" for Medicare purposes, including whether the treatment is "necessary for management of that condition" or "inappropriate" or "ineffective" or "not reasonable in terms of its approach to managing the condition efficiently." George Corvin deposition at 218:6-18.

He further testified that the Provider's patient note should "stand alone in the 90833 part of the notes" to explain the medical necessity of the claim, and the documentation requirement is separate and distinct between the 90833

4

psychotherapy claim and the E&M claims. George Corvin deposition at 223:11 – 224:5.

He testified that 90833 psychotherapy is a distinct service from the E&M service, and the 90833 can only be billed as an "add-on" to the E&M claims. George Corvin deposition at 225:3 – 226:1.

Defendants' proffered expert, Jodi Nayoski, a coder without any medical expertise, determined that 19 out of the 60 sample 90833 claims of Mindpath were made in error as to the total time or content documented, agreeing with 19 of 31 of Dr. Corvin's opinions as to 90833 claims but disagreeing with all of his opinions about 7 erroneous E&M codes. See, Jodi Nayoski Deposition at 167:7-170:15.

The Government has also moved to strike the Defendants' experts based upon lack of qualifications, relevance and reliability, as well as inadequate reports. Their flawed opinions are merely rebuttals of the Government's expert opinions.

## STANDARD OF REVIEW

Under F.R.E. 702, as interpreted and applied in *Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 597 (1993), courts must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Acting as gatekeeper, Courts must engage in "three crucial inquiries" to assess: (1) whether the expert is qualified to testify competently regarding the matters to be addressed; (2) whether the proposed testimony is relevant to the issues; and (3) whether the proposed testimony is reliable. *See, e.g.*, *Daubert*, 509 U.S. at 589;

5

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004); *Nix v. Chemours Co.*, 2023 WL 6471690 at *6 (E.D.N.C. Oct. 4, 2023) (unpublished).

Rule 702 governs the admission of expert testimony, allowing such testimony that "will help the trier of fact understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142-43 (1997); *Daubert*, 509 U.S. at 589-95; *Nix*, 2023 WL 6471690, at *6. The proponent of the expert testimony must establish its admissibility by a preponderance of the evidence. *See e.g.,* Fed. R. Evid. 104(a); *Daubert*, 509 U.S. at 592 n.10; *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001).

"A witness's qualifications are liberally judged by Rule 702, and a person may qualify to render expert testimony in any one of the five ways listed by the rule." *Kadel v. Folwell*, 100 F.4th 122, 158 (4th Cir. 2024). Those ways are "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "One knowledgeable about a particular subject need not be precisely informed about all details of the issues raised in order to offer an opinion." *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 799 (4th Cir. 1989).

A medical doctor who submits Medicare claims should be allowed to testify as to medical necessity under Medicare, as well as related standard of care and documentation issues. See, *United States v. Ferncreek*, 2025 WL 871616 at 8 (E.D.N.C., March 20, 2025) (Court allowed expert doctor to testify "on the expected

6

number of unnecessary or unreasonable procedures based on his specialized knowledge and experience as a cardiologist who regularly reviews patient records.")

Expert testimony must be reliably connected to the facts of the case. *See Daubert*, 509 U.S. at 591-92. Rule 702 sets forth "indicia of reliability" and requires that the proffered testimony (1) be "grounded on sufficient facts or data," (2) be the "product of reliable principles and methods," and (3) apply "the principles and methods reliably to the facts of the case." Fed. R. Evid. 702; *Cooper*, 259 F.3d at 200. "[T]he objective of that requirement is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Whether an expert's testimony is reliable depends on the facts and circumstances of the particular case. *Id*. at 158.

The reliability inquiry under Rule 702 is a "flexible one focusing on the principles and methodology employed by the expert" and "[t]he court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful[,] ... depend[ing] upon the unique circumstances of the expert testimony involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (internal quotations omitted), *AVX Corp. v. Corning Inc.*, 2019 WL 4727851 at 28 (E.D.N.C. Sept. 26, 2019).

# ARGUMENT

I. DEFENDANTS FAIL TO ESTABLISH DR. CORVIN IS NOT QUALIFIED TO TESTIFY ON MEDICAL NECESSITY AND RELATED MATTERS

Defendants mistakenly argue that Dr. Corvin, a Psychiatrist with decades of experience billing Medicare for the type of claims at issue, is not qualified to offer opinions because he is not a coder, ignoring the Medicare billing opinions stated in the expert report and testimony that Dr. Corvin is providing opinions on "medical necessity", "standard of care" and documentation of Medicare claims.

Contrary to Defendants' arguments, [DE 68 at 8-9], Dr. Corvin is qualified by his experience, knowledge, training and education to provide opinions as to whether 31 Sample Medicare claims are "reasonable", "necessary", within "standard of care", and properly documented.

Ignoring the subject areas of his expert testimony, Defendants mistakenly argue that Dr. Corvin "has no education or training in CPT coding, lacks any experience in CPT coding or auditing, and has never researched or published regarding CPT coding." [DE 68 at 8]. This is a red herring. CPTs, or Current Procedural Terminology codes, are simply the standardized system of codes used for identifying services billed to Medicare and other health care payors. Establishing falsity in this case is primarily about "medical necessity", "standard of care", documentation and subjects that are within Dr. Corvin's expertise, not coding minutia.

Dr. Corvin testified that he has extensive knowledge and experience with psychotherapy and E&M claim requirements of Medicare. Defendants seek to create

8

an artificial requirement that only administrative coders can be experts on Medicare claims, but technical knowledge of coding language and CPT terminology does not establish that Medicare claims are "reasonable", "necessary", within "standard of care", and properly documented. For this reason, it is actually Defendants' proffered expert, coder Jodi Nayoski, who is unqualified to offer expert opinions in this matter, as the Government explains in its own previously-filed motion in limine. [DE 72].

The *Mallory* case, relied upon by Defendants, is distinguishable because the nurse in that case was not allowed to testify "as to Medicare's reimbursement code calculations" based upon her lack of "personal knowledge about Medicare's precise methodology" of code calculations for lab tests. *United States v. Mallory*, 988 F.3d 730, 742 (4th Cir. 2021). Here, Dr. Corvin has personal knowledge of, and extensive experience with, the Medicare requirements for psychotherapy and E&M claims.

Put simply, Dr. Corvin is qualified to testify about whether 31 sample claims were "Reasonable and Necessary" for Medicare purposes, or any material issues related to the Psychotherapy treatments and E&M sessions at issue.

A. <u>Dr. Corvin's Credentials Are More Than A Sufficient Basis For His Opinions</u>

Defendants cannot establish that Dr. Corvin is not qualified as an expert regarding the medical necessity of Psychotherapy treatments and E&M counseling sessions based on his extensive "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. A court assesses qualification in reference to the matter to which the witness seeks to testify, not a fabricated subject area. See *Daubert*, 509 U.S. at 591-93; *Gladhill v. Gen. Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir. 1984).

9

To qualify as an expert, a witness "must possess the requisite knowledge, skill, experience, training, or education" to offer an opinion that would be helpful to a jury. Fed. R. Evid. 702. "An expert need not 'possess all five requisites—as long as he possesses one, he may be deemed an expert.'" *VS Techs., LLC v. Twitter*, No. 11-0043, 2011 WL 4744572, at *3 (E.D. Va. Oct. 5, 2011).

Defendants do not appear to question Dr. Corvin's medical qualifications, nor can they. Dr. Corvin is a Psychiatrist who is board-certified in general psychiatry and forensic psychiatry. He has billed Medicare through private psychiatric practices for approximately 28 years, and has reviewed countless medical records and supervised many other Psychiatrists throughout his distinguished career. He served as Chairman of the Board of Directors and was Chairman of the Quality Management Committee for Alliance Health, and has received numerous awards and honors. He has testified over 40 times regarding various mental health issues. See, Exhibit A at Bates 4010-4012.

Defendant's challenges are baseless. For almost three decades, Dr. Corvin has worked as a psychiatrist and billed psychotherapy and E&M counseling sessions to Medicare and other entities. During this period, Dr. Corvin has provided psychotherapy and E&M counseling that were routinely billed to Medicare, and also supervised others doing so.

Against this extensive backdrop of experience, knowledge, and training, Dr. Corvin is more than qualified to opine as an expert on Medicare claims in this case.

10

### B. Dr. Corvin Does Not Have To Be A CPT Code Expert to Offer His Opinions

Defendants' argument that Dr. Corvin must be qualified as a CPT coding expert to provide opinions in this case is simply false. First, Dr. Corvin was very familiar with Medicare rules and regulations based on his personal experience. Second, while Medicare rules inform Dr. Corvin's practice and therefore his opinions in this case, it is far from the only basis for his opinions. His opinions include "standard of care" and the documentation needed for both medical care and Medicare billing purposes.

Unable to attack Dr. Corvin's impressive credentials, Defendants argue that he should not be permitted to testify in this case because he is not a "CPT coder" and cannot recite CPT language or terminology to the Defendants' satisfaction. Their challenge to Dr. Corvin's knowledge of CPT language and requirements is a distraction and misrepresentation of the scope of Dr. Corvin's proffered expert testimony. Rather than holding himself out as an expert in CPT guidance or administrative claims reviews, Dr. Corvin explains how Medicare requirements inform his practice as a psychiatrist providing psychotherapy and E&M counseling, including what is "reasonable", "necessary", within "standard of care" and properly documented for these Medicare claims. Dr. Corvin is not held out to be a "CPT" expert, but he is necessarily familiar with Medicare rules and regulations from his clinical practice, and has applied these requirements for approximately 28 years.

Dr. Corvin is testifying largely from his experience and knowledge. *United States v. Wilson*, 484 F.3d 267, 275 (4th Cir. 2007) (finding witness qualified as expert

where he relied on "everything that I have, my knowledge, the situation, and that's how I form my opinion"); *Kumho Tire*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

The relevant experience here is Dr. Corvin's extensive experience in assessing medical records to determine whether psychotherapy and related E&M services are reasonable, necessary, and within the standard of care as required by Medicare. Nevertheless, Dr. Corvin's education, experience, and training certainly qualify him to render opinions about whether services are reasonable, necessary, and properly documented. *Cf. In re Mirena IUD Products Liab. Lit.*, 169 F. Supp. 3d 396, 424 n. 18 (S.D.N.Y. 2016) (permitting clinicians who "have 'educational and experiential qualifications' in a closely related field").

Dr. Corvin's aggregate experience, education, and training provide more than a sufficient foundation for him to provide reliable opinions in this case. *Daubert*, 509 U.S. at 597 (an expert's opinion is admissible if it "rests on a reliable foundation and is relevant."). To the extent that Defendant's arguments purport to have Dr. Corvin disqualified as a result of his inability to recall precise CPT coding language, it is clear that such an argument merely goes to weight of his expert testimony in the present case; it is not disqualifying. Defendants are free to cross-examine Dr. Corvin on his recollection of specific CPT language applicable to the relevant claims, and the jury can decide if that matters, if the questioning is allowed. See *KBS Preowned Vehicles, LLC v. United Fin. Cas. Co.*, No. 13-0138, 2014 WL 4388294, at *5 (N.D.

12

Case 5:19-cv-00512-BO-RJ    Document 88    Filed 06/11/25    Page 12 of 19

W.Va. Sept. 5, 2014) (finding purported weaknesses in the basis for the experiential expert's testimony were subject to cross-examination, but did not go to admissibility of the evidence); *Hambrick ex. rel Hambrick v. Ken-bar Mfg. Co.*, 422 F. Supp. 2d 627, 636 (W.D. Va. 2002) ("Against this background, Ken–bar's criticism that [the plaintiff's expert] has never worked in the fun cart industry, and is not familiar with fun kart organizations, might be applied to the weight of his expert testimony in the present case, but it is not disqualifying.").

Dr. Corvin is qualified as an expert on the central issues in dispute – whether claims are "reasonable" and "necessary" under Medicare requirements, including whether the psychotherapy and E&M claims were documented to show medical necessity, and whether the standard of care was met regarding the Sample claims.

In contrast, Defendants seek to present expert testimony through a coder, not a medical professional, who has never testified as an expert in any court on any issue. Jodi Nayoski admits she is not an expert on Psychotherapy modalities or clinical issues, has never provided Psychotherapy treatments or had medical training, and had to "look up" terms and issues raised by Dr. Corvin. See, Jodi Nayoski Deposition at 49:7 – 54:12. She did not identify the medical records relied upon in forming her opinions, and could not credibly connect her conclusory opinions to the underlying medical records. See, Jodi Nayoski Deposition at 31:7 – 39:11. She has little experience with Psychotherapy claims (apparently from 10 audits over 9 years), had to research Psychotherapy modalities and terms to understand Dr. Corvin's report, and admitted her expertise is limited to internal audits and coding. See, Jodi

13

Nayoski Deposition at 63:19 – 66:12; 77:6-23; 73:4 – 76:23; 192:1 – 198:6; 185:6 – 188:16; 189:8-16. She testified that. in her opinion, Mindpath providers "don't have to document anything [about the psychotherapy], whether it falls under CBT [modality] or supportive or psychotherapy down the street, it's still psychotherapy." See, Jodi Nayoski Deposition at 196:3-21. With all due respect, Defendants' expert lacks the expertise to determine medical necessity from the Mindpath medical records (i.e., whether the sample claims at issue were documented as psychotherapy or medically necessary, based upon the Psychotherapy needed, time expended, and other issues familiar to medical clinicians.

Coders focus on the form over the substance at issue in this case.

In sum, Dr. Corvin is qualified as an expert regarding the medical necessity of psychotherapy and E&M claims, including whether such claims were properly billed and documented under Medicare, based on his "knowledge, skill, experience, training, or education" as a Medicare provider over many decades. Fed. R. Evid. 702.

## II. DEFENDANTS FAIL TO ESTABLISH DR. CORVIN'S OPINIONS SHOULD BE EXCLUDED BASED ON LACK OF RELIABILITY

Defendants argue that Dr. Corvin's opinions should be excluded because they are not based upon published standards and include opinions on "standard of care", [DE 68 at 9-10], ignoring that his opinions are based upon his extensive experience of almost three decades regarding psychotherapy and E&M claims submitted to Medicare. Defendants misunderstand that Dr. Corvin is not testifying as a CPT coder or expert on the mechanics of coding. His opinions are whether the sample of 60 psychotherapy and E&M claims are "reasonable", "necessary", within "standard

14

of care" and properly documented for Medicare. Defendants fail to establish lack of reliability of these opinions.

These arguments fail to establish unreliability or a basis to exclude his expert testimony. Dr. Corvin provided an extensive expert report and hours of expert testimony to establish the basis for his reliable opinions. At most, Defendants' arguments attack the weight and credibility of Dr. Corvin's opinions, both of which are questions for the jury to resolve.

Defendants' attempt to disqualify Dr. Corvin based on a lack of "methodology" or "published standards" should be rejected. Unlike "[p]urely scientific testimony," which is "characterized by 'its falsifiability, or refutability, or testability," *Daubert*, 509 U.S. at 593, and is thus "objectively verifiable," "[e]xperiential expert testimony … does not rely on anything like a scientific method." *Wilson*, 484 F.3d at 274 (quoting Fed. R. Evid. 702 advisory committee's note). Consequently, when an expert's opinions are based on the expert's own experience and training, the traditional *Daubert* analysis is not employed. Id. (finding the text of Rule 702 expressly contemplates that use of an "experiential expert"). Instead, the expert must explain how his experience leads to his conclusion and is reliably applied to the facts. See id.

Defendants challenge the reliability of the opinions of Dr. Corvin based upon their argument that his opinions are "not based upon published standards or guidelines for CPT coding", [DE 68 at 9], but he reliably applies his extensive experience as a Psychiatrist to "medical necessity" and "standard of care".

15

Defendants artificially create a dispute about Dr. Corvin's knowledge of CPT coding minutia and the inapplicable LCDs or NCDs. This mischaracterizes his expert opinions, and seeks to ignore that claims must meet both "standard of care" and "reasonable and necessary" standard of Medicare regardless of any NCD or LCD.

Dr. Corvin set out his opinions in his expert report and explained his reasoning that these psychotherapy and E&M claims were not "reasonable and necessary" under Medicare requirements in his deposition. Dr. Corvin testified at length that 31 specific procedures were false claims because they were not medically necessary, providing objective examples based upon the underlying medical records in his lengthy expert report and extensive testimony. Dr. Corvin provides reliable opinions regarding the medical necessity and related matters for these claims.

As set out above, Dr. Corvin's exert report stated his opinion that 31 of the 90833 claims and 7 of the E&M claims were not reasonable and necessary based upon a careful review of the medical records, including inadequate time documented for support of services billed, no specific time documented for services, failure to list therapeutic modality/intervention, absence of documentation of psychotherapeutic services, failure to document services to support E&M code, therapeutic modality not consistent with documentation, documentation that education services billed as psychotherapy, and documentation showing all time was for psychotherapeutic service and not E&M service. See, Exhibit A.

Dr. Corvin also testified that he applied "reasonable and necessary" review and standard of care requirements to determine that the documentation did not

16

support 31 of the sample 90833 and E&M claims, and did not consider the local LCD. He testified that "reasonable and necessary" was a requirement for both Medicare billing purposes and standard of care, and a Provider must also document what doing for payment purposes. He described his review process and what was "reasonable and necessary" for Medicare purposes, including whether the treatment is "necessary for management of that condition" or "inappropriate" or "ineffective" or "not reasonable in terms of its approach to managing the condition efficiently." He further testified that the Provider's patient note should "stand alone in the 90833 part of the notes" to explain the medical necessity of the claim, and the documentation requirement is separate and distinct between the 90833 psychotherapy claim and the E&M claims.' And he testified that 90833 psychotherapy is a distinct service from the E&M service, and the 90833 can only be billed as an "add-on" to the E&M claims. Exhibit A, Expert Report. at pages 4-9, George Corvin deposition at 55:10-57:19, 100:1-102:6, 176:7-178:12, 218:6-220:14, 221:9-222:13. These are substantive opinions.

Dr. Corvin satisfies the "experiential expert" standard articulated in *Wilson*. Moreover, Defendants' motion does not establish that Dr. Corvin's opinions of medical necessity are unreliable, or that opinions as to standard of care and documentation for Medicare claims are unreliable.

Dr. Corvin's opinions are reliable, and grounded in the medical record documentation evidence and the "Reasonable and Necessary" billing requirement standard. Dr. Corvin's opinions should be allowed under *Daubert* and F.R.E. 702.

17

## CONCLUSION

The Government respectfully requests that the Court deny the Defendants' Motion to Exclude Expert Testimony of Dr. Corvin for the reasons stated above, including that the expert opinions are reliable and Dr. Corvin is well qualified based upon his extensive experience with Medicare claims.

Respectfully submitted, this the 11th day of June, 2024.

    DANIEL P. BUBAR
    Acting United States Attorney


By:   /s/ Neal I. Fowler
    NEAL I. FOWLER
Assistant United States Attorney
Civil Division
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
NC Bar #27371
Counsel for United States of America

CERTIFICATE OF SERVICE

I hereby certify that I have this 11th day of June, 2025, served a copy of the foregoing memorandum upon the below-listed parties electronically and/or by placing a copy of the same in the U.S. Mails, addressed as follows:

R. Daniel Boyce, Esquire
MAYNARD NEXSEN PC
4141 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Email: dboyce@maynardnexsen.com

Alice V. Harris
Jenna K Godlewski
MAYNARD NEXSEN PC
1230 Main Street, Suite 700
Columbia, SC 29201
Email: aharris@maynardnexsen.com
Email: jgodlewski@maynardnexsen.com

W. Stacy Miller, II
MaryAnne M. Hamilton
Miller Law Group, PLLC
Post Office Box 6340
Raleigh, NC 27628
Email: stacy@millerlawgroupnc.com
Email: maryanne@millerlawgroupnc.com

/s/ Neal I. Fowler
NEAL I. FOWLER
Assistant United States Attorney
150 Fayetteville Street
Suite 2100
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
NC Bar #27371
Counsel for United States of America