Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
 2        FOR THE EASTERN DISTRICT OF NORTH CAROLINA
 3                    WESTERN DIVISION
 4                  * * * * * * * *
 5   UNITED STATES OF AMERICA,      *
 6   EX REL, ANJELICA BROWN,        *
 7      Plaintiff                   *  Case No.
 8      vs.                         *  5:19-CV-512-BO
 9   MINDPATH CARE CENTERS, NORTH   *
10   CAROLINA, PLLC, JEFF WILLIAMS,*
11   WILLIAMS,                      *
12      Defendants                  *
13                  * * * * * * * *
14                   DEPOSITION OF
15                  BRUCE E. TRUITT
16                  March 24, 2025
17
18
19
20
21
22
23
24      Any reproduction of this transcript is prohibited
25       without authorization by the certifying agency.
```

1               ATTORNEY FOWLER:

2               You may answer.

3               THE WITNESS:

4               I was not asked to provide this

5      information until after submission of my report.

6      BY ATTORNEY FOWLER:

7      Q.   Let's go through those publications.  First is a

8      textbook and I'll refer to this number one, but

9      textbook for Practical Statistical --- sorry.

10     Practical Statistical For Auditors.

11     A.   It should say sampling, I'm sorry, there is an

12     error.

13     Q.   So what should it read?

14     A.   Practical statistical sampling for auditors.

15     Q.   Thank you, sir.  And that was your textbook, sir?

16     A.   Yes.

17     Q.   When was that written or published?

18     A.   Let's see.  I would say 2018, 2019.

19     Q.   And who published it?

20     A.   It was published by the Government Auditing

21     Institute.

22     Q.   So that's the private training entity ---?

23     A.   At the time it was a government entity.

24     Q.   Okay.

25               Is that available in book stores?  How would we go

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 2 of 26

1    A.   That it had not been done correctly.

2    Q.   And the entity that was doing the review that had

3    not done it correctly was the Allied Management Group?

4    A.   No, I was --- oh, oh, oh.

5    Q.   Who were you saying did not do it correctly?

6    A.   Allied, yes.

7    Q.   Okay, Allied Management Group.  So you were

8    disputing their sampling and extrapolation methods.

9         Is that a fair statement?

10   A.   Correct.

11   Q.   Okay.

12        The next testimony was in Personal Care Products

13   versus Texas Health and Human Services Commission in

14   2014.  Which side did you testify for in that case?

15   A.   I was testifying for the Defendant.

16   Q.   Texas Health?

17   A.   Yes.

18   Q.   And what was your opinion in that case?

19   A.   That the sampling estimation and extrapolation had

20   been correctly executed and that the asserted

21   recruitment amount demanded by the State of Texas was

22   materially correct.

23   Q.   Did you provide an expert report in that case?

24   A.   I believe I did.

25   Q.   What was the outcome of that case?

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 3 of 26

1    A.    I believe the recoupment was made.

2    Q.    So Texas prevails?

3    A.    Yes.

4    Q.    Okay.

5          Were you an employee at that time ---

6    A.    Yes.

7    Q.    --- of Texas?

8          Okay.

9          So that was when you were --- I can't remember if

10   you were the auditor at that point or whether you were

11   ---.

12   A.    I was Director of Risk Management Quality Control

13   ---

14   Q.    Okay.

15   A.    --- as specified in my data.

16   Q.    So you were testifying for your employer ---

17   A.    Yes.

18   Q.    --- at that point in time?

19         Okay.

20         The next deposition, which is October 2013 was in

21   a case Cross and Litigation Settlement Trust versus

22   Susan Combs, the State of Texas, Controller of Public

23   Accounts.  Which side did you testify in that case?

24   A.    Defendant.

25   Q.    Which would be Texas?  Did you represent Texas

Veritext Legal Solutions
800.743.DEPO (3376)        calendar-carolinas@veritext.com        www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 4 of 26

1    why I believe --- I think I mentioned this in here.

2    Just a minute.  Due to client counsel or program

3    integrity acceptance of my summary memos and expert

4    reports, I have written hundreds of summary memos if

5    not thousands of summary memos about sampling

6    estimation, extrapolation, et cetera.  Some of those

7    have been elevated to use as evidence in other legal

8    cases.  The identification of which I have no idea

9    because I was an employee at the time.  But as far as

10   expert reports in the way that I think you are thinking

11   of them, my answer would be no, this is it.

12   Q.   Have you been called to testify at a deposition or

13   a hearing or trial as an expert other than these cases

14   that we have talked about here?

15   A.   To the best of my memory, no.

16   Q.   Do you sill have the report that was provided on

17   behalf of the State of Texas in the 2014 case Texas

18   Health and Human Services case that we talked about

19   earlier, 2014, number two?

20   A.   That's a really good question, Counsel.  I don't

21   know.

22   Q.   Do you know if the State of Texas would still have

23   a copy of that expert report?

24   A.   It's entirely possible --- oh, I'm sorry.

25              ATTORNEY GODLEWSKI:

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 5 of 26

1              Objection as to form.

2      A.    I'm sorry.

3      BY ATTORNEY FOWLER:

4      Q.    You may answer, sir.

5      A.    It's possible, but I cannot say.  I'm sorry.

6      Q.    Okay.

7            And you've done --- and I think you said hundreds

8      of reports that may have been used in litigation but

9      you weren't called upon to testify or to --- to answer

10     questions specifically about those reports, they were

11     just something that you did for your employer.

12           Is that ---?

13     A.    Exactly.

14     Q.    Was one of those cases Brier Creek Pain and Spine?

15     A.    That's entirely possible.  It seems like ---

16     pardon me for asking a question in response to a

17     question.  I seem to recall that was one of Pinnacle's

18     clients.

19     Q.    Okay.

20     A.    I don't know.

21     Q.    Do you recall doing any work in that case?

22     A.    Pardon me?

23     Q.    Do you recall doing any work in that case

24     specifically?

25     A.    No, I do not, I'm sorry.

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 6 of 26

1    Q.    Okay.

2          I'll direct your attention to 355, the very bottom

3    of page 4.

4    A.    Uh-huh.

5    Q.    It states, Defendants have paid Pinnacle for Mr.

6    Truitt's services at the hourly rate of $625 for his

7    prior work on this matter.

8          Do you understand that Pinnacle is being paid $625

9    an hour for your work?

10   A.    Based on what I see here and assuming that is

11   correct.

12   Q.    Do you know independently what they are paid?

13   A.    No.

14   Q.    It continues on, Defendants will pay Pinnacle an

15   hourly rate of $675 for this report preparation as well

16   as future depositions and trial work.

17         Do you know if that's what Pinnacle is paid ---?

18                ATTORNEY GODLEWSKI:

19                Objection as to form.

20   BY ATTORNEY FOWLER:

21   Q.    Do you know if that's what Pinnacle is paid?

22   A.    No, I do not.

23   Q.    Okay.

24         But your rate you're paid personally is $375 an

25   hour anything related to expert preparation, expert

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ      Document 90-2      Filed 06/11/25      Page 7 of 26

1     downstream in some cases.
2     Q.   Are you familiar with the rule for expert reports?
3     It's called 702, Rule 702 for expert testimony in
4     federal courts?
5     A.   It's not anything that I've specifically read.
6     Q.   Okay.
7          If you were asked what your skill --- what your
8     knowledge, skill, experience, training or education is
9     that demonstrates your specialized knowledge that will
10    help the trier of fact determine a fact at issue in
11    this case, what would you say is your knowledge, skill
12    experience, training or education that would be helpful
13    to the trier of fact in this case?
14    A.   Okay.  Let's see.  30 years of experience in data
15    validity, reliability, data integrity, data
16    description, sampling, estimation, extrapolation, and
17    auditing in healthcare.  Literally thousands of
18    extrapolations, training materials, procedural
19    documents, consultations with audit teams, working with
20    lawyers, federal agencies, accountants, in making sure
21    that sampling estimation and extrapolation processes
22    were correctly performed.
23    Q.   Okay.
24         What specifically is your area of expertise in
25    this case that will help the trier of fact understand

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 8 of 26

1    the evidence to determine the issue ---?

2    A.   What specific what?  Excuse me.

3    Q.   What specific area of expertise do you have in

4    this case that will help a trier of fact understand the

5    evidence or determine a fact in this case?

6    A.   I think what I just referenced.  It seems ---.

7    Q.   I mean, it's a broad question.

8    A.   Yeah, it truly is.  I mean, I have been doing this

9    stuff for a very, very long time in a very small box

10   called healthcare.

11   Q.   Would you ---?

12   A.   And my education and my professional background,

13   you know, I have taught applied statistics at the

14   graduate level.  My concentration in graduate school at

15   the LBJ School of Public Affairs at the University of

16   Texas was in quantitative methods, operations research

17   and applied statistics.  I have taught applied

18   statistics and quantitative methods in multiple

19   different formats.

20   Q.   Is it fair to say that your area of expertise in

21   this case is applied statistics?

22   A.   And auditing standards, yes.

23   Q.   So applied statistics and auditing standards?

24   A.   Right.

25   Q.   Any other areas of expertise?

 1   Q.   Okay.

 2        If you would point out to me and report where you

 3   relied upon her numbers.

 4   A.   Anything that says --- okay, you would need to be

 5   looking at --- any of the PERCS assertions that are

 6   made on page 11 or page 12.

 7   Q.   So is that all under the heading the extrapolated

 8   amounts are incorrect regardless of method at the

 9   bottom of page 11 top of page 12?

10   A.   Yes.

11   Q.   Did you rely upon information from Ms. Nayoski in

12   any other part of your expert report?

13   A.   No.

14   Q.   Okay.

15        Do you still have the emails from Ms. Nayoski?

16   A.   Probably.

17   Q.   With agreement of Counsel, can you provide those

18   to the United States?

19             ATTORNEY GODLEWSKI:

20             I'm going to object that that's under the

21   attorney-client work product.

22   BY ATTORNEY FOWLER:

23   Q.   Were those emails from Ms. Nayoski to you?

24   A.   With I believe the appropriate disclaimer at the

25   bottom of the page --- I'd have to go back and look.

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 10 of 26

1    Q.   Was it related in any way to your work as a
2    statistician?
3    A.   Not that I'm aware of, no.
4    Q.   Do you know if there were complaints bout your
5    credentials and whether you should be the Chief
6    Statistician for SMRC?
7              ATTORNEY GODLEWSKI:
8              Objection as to form.
9              THE WITNESS:
10             No, there were not.  In fact in the
11   precontract evaluation CMS noted that I exceeded their
12   requirements for a statistician.
13   BY ATTORNEY FOWLER:
14   Q.   Can you identify the document where you say that
15   happened?
16   A.   I can produce it if necessary.
17   Q.   Please do.
18        Do you know the timeframe?
19   A.   I'm sorry, timeframe?
20   Q.   Timeframe for that document from CMS?
21   A.   Oh, it would have been before the contract was
22   consummated.  So it would have been at or just before
23   2013.
24   Q.   Okay.
25        The second thing that you have on the first page

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 11 of 26

Page 128

1    in Medicaid.

2    Q.   You state on page 2, I was Chief Statistician on

3    the nationwide CMS supplemental medical review contract

4    and you have open paren, q.v. at HPS and it goes

5    through the site there.  When were you the Chief

6    Statistician for the SMS --- SMRC or whatever you want

7    to call it?

8    A.   Again, that would have been --- what was it?

9    2010, 2011 or 2013 or '14.  Somewhere along in there.

10   That's the SMRC we talked about earlier.

11   Q.   Yep.  You also say, I was a former member of the

12   National Medicare Statistical User Group and certified

13   by CMS as a seen required criteria for sampling

14   extrapolation work.

15       When was that certification?

16   A.   That --- as I said earlier, that would have been

17   prior to the consummation of the contract.  If memory

18   serves, that evaluation was part of the submission of

19   the contract.  Or the proposal, excuse me, the

20   proposal.

21   Q.   And you believe you have that in writing?

22   A.   Yes.

23   Q.   And you can provide that?

24   A.   Yes, I can.

25   Q.   You also state, my methods, curriculum techniques,

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 12 of 26

Page 129

1    and techniques have been recognized by such entities as

2    the Harvard Business School --- Harvard School of

3    Business, the National State Auditor's Association and

4    National Association of State Auditors, Controllers,

5    and Treasures, have facilitated recovery and

6    reconciliation of business of healthcare dollars.

7        Do you have documentation for your recognition by

8    the Harvard School of Business?

9    A.   Yes.

10   Q.   What timeframe was that?

11   A.   Let's see.  2004, 2005 I think.

12   Q.   Can you provide that documentation?

13   A.   Yes.

14   Q.   Can you also provide the documentation from the

15   National State Auditor's Association and the National

16   Association of State Auditors, Controllers and

17   Treasurers?

18   A.   I believe I can.

19   Q.   Okay.

20              ATTORNEY GODLEWSKI:

21              Bruce, are you doing okay?  Are you doing

22   okay?

23              THE WITNESS:

24              I'm ready pretty soon for a break.

25              ATTORNEY FOWLER:

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 13 of 26

1    reviewed the deposition transcript of Mr. D'Zio and

2    that doesn't change your opinions or your expert

3    report?

4    A.    No.

5    Q.    Do you understand that you are required to provide

6    a complete expert report of all your opinions, the

7    basis and reasons for them for you to be an expert in

8    federal court?

9    A.    Yes.

10   Q.    Did you provide a complete statement of all

11   opinions that you will express and the basis and

12   reasons for them in this case?

13   A.    At this point in time to the best of my knowledge,

14   yes.

15   Q.    Does your report --- and I'm quoting here, provide

16   a, quote, complete statement of all opinions the

17   witness will express and the basis and reasons for

18   them?

19   A.    Same answer.

20   Q.    Okay.

21        I want to identify initially what those opinions

22   are and based on their headings and conclusion, I may

23   be able to shorten this just a little bit and then I'll

24   go back and unpack each of them.  But before we take a

25   break, let me just set out what those opinions are.

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 14 of 26

1    You have got headings, starting at page 3 all the way

2    through 13 and then at conclusion you've got bullet

3    points that correspond to those headings with one

4    addition.  So let me just state those and see if there

5    are any other opinion you have other than what you

6    have.  And I will be reading from page 13 of your

7    expert report, which is Government Exhibit 371.  And

8    I'm going to number these just so I can keep track in

9    my head.  Number one I have neither statistical

10   sampling nor extrapolation should have been used.

11   That's one of your opinions in this case.

12        Correct?

13   A.   Correct.

14   Q.   Number two, the universe and therefore the

15   sampling frame in sampling are incomplete and bias.  Is

16   that your opinion number two?

17   A.   Correct.

18   Q.   Number three, sampling size determination is

19   unclear and possibly inappropriate.  Is that one of

20   your opinions in this case?

21   A.   Correct.

22   Q.   Okay.

23        I have number four as SGS relies on sampling

24   standards that do not exist.

25   A.   Correct.

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 15 of 26

1    Q.   Is that one of your opinions in this case?

2    A.   Yes, it is.

3    Q.   Number five is the point estimate cannot be used

4    as the basis for the recoupment amount.  Is that one of

5    your opinions in this case?

6    A.   Correct.

7    Q.   The next bullet point on page 13 does not have a

8    heading, but I will read it regardless.  It states for

9    precision is ignored --- no sorry.  If precision is

10   ignored, the sample is, comma, by definition

11   nonstatistical and cannot be projected.  Is that one of

12   your opinions in this case?

13   A.   Yes it is.

14   Q.   Okay.

15        The next one --- and I didn't number that one

16   because you didn't have a heading for it.

17   A.   Sorry.

18   Q.   But number six I have as the precision of the

19   extrapolation is incorrectly calculated.  Is that one

20   of your opinions, sir?

21   A.   Yes.

22   Q.   And number seven I have as the extrapolation

23   method used is not the method asserted.  Is that one of

24   your opinions, sir?

25   A.   Yes.

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 16 of 26

1   Q.   And number eight I have the extrapolation method
2   used is wholly inappropriate.  Is that one of your
3   opinions?
4   A.   Yes.
5   Q.   Number nine I have other extrapolation methods
6   must be considered.  Is that one of your opinions?
7   A.   Yes.
8   Q.   Ten I have the extrapolated amounts are incorrect
9   regardless of method.  Is that one of your opinions?
10  A.   Yes.
11  Q.   11 I have SGS asserts but did not achieve MPIM
12  compliance.  Is that one of your opinions?
13  A.   Yes.
14  Q.   And 12 I have as evidence of assessment of data
15  and reliability is absent.  Is that one of your
16  opinions?
17  A.   Yes it is.
18  Q.   Okay.
19       Now each of those 12 that I read I gave numbers to
20  has a heading in your report.
21       Is that correct?
22  A.   Yes.
23  Q.   Okay.
24       And we will circle back to the one that didn't
25  have a heading just to make sure I'm not missing

Veritext Legal Solutions
800.743.DEPO (3376)     calendar-carolinas@veritext.com     www.veritext.com
Case 5:19-cv-00512-BO-RJ     Document 90-2     Filed 06/11/25     Page 17 of 26

1    anything, but other than those 12 and possibly the one

2    that doesn't have headings, are there any other

3    opinions in this report other than what you have in

4    your conclusion and what is expressly set out with

5    headings in your report?

6    A.    No.

7    Q.    Okay.

8          And we're going to unpack each of those, but I

9    just want to make sure I know what your opinions are.

10   So it's either 12 or 13 depending on whether you count

11   the one that doesn't have headings.  But before we get

12   into each of those you have a summary that you state at

13   page 3 and your summary of examination findings states

14   the process and procedures designed and executed by SGS

15   are correct in some respects but fail to render

16   sufficient appropriate evidence of a proper random

17   sample or a reasonable extrapolating recoupment

18   assertion.  The intended deficiencies are categorically

19   addressed below.  And then you go into the opinion by

20   opinion.  So that's the over all summary of all your

21   opinions.

22         Correct?

23   A.    Correct.

24   Q.    And you believe that some of the things they did

25   were correct and you're disagreeing with certain things

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ      Document 90-2      Filed 06/11/25      Page 18 of 26

 1     second?

 2                    ATTORNEY FOWLER:

 3                    Sure.

 4                         ---

 5     (WHEREUPON, AN OFF RECORD DISCUSSION WAS HELD.)

 6                         ---

 7     BY ATTORNEY FOWLER:

 8     Q.    Just a technical thing.  Your footnote four has a

 9     site Appendix A, Table A-2.  Did you provide Appendix

10     A, Table A-2 on the bottom of page 6?

11     A.    Dah, dah, dah, dah.

12           I know what it refers to --- oh, my God.  My

13     English teacher would kill me.

14     Q.    So is that a document that you created, sir?

15     A.    Yeah, this is the principles and methods, Table A,

16     Appendix 2.  I may have put something in there and then

17     took --- oh, here it is.  I have an incomplete

18     reference, I'm sorry, even when using changes in

19     estimated error rate.  So this should refer to the

20     methods and principles.  I'm sorry about that.

21     Q.    Can you provide that to us?

22     A.    Do you really want the whole thing?

23     Q.    The part that you relied upon?

24     A.    Oh, the table?

25           Okay.  Sure.  Yeah.

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 19 of 26

1    Q.   The table I asked you ---?

2    A.   Yeah.

3    Q.   Because if you relied upon it, I would like to see

4    it.

5    A.   Sure, sure.

6    Q.   Okay.

7    A.   I hope someone is keeping track ---

8    Q.   I am.

9    A.   --- of these.  Okay.

10   Q.   You refer to changes to the PIM in 2019.  Were any

11   of these changes related to sample sizes?

12   A.    Not that I'm aware of.  But the PIM doesn't really

13   talk about sample size that much, except what we've

14   covered.

15   Q.   Okay.

16        Does the PIM provide that sample size is

17   determined after a thorough assessment involving

18   computer simulations?

19   A.   I don't think so.

20   Q.   Do you know if the Cochran textbook address sample

21   size and what is the appropriate sample size?

22   A.   Yes, it addresses sample size.  But no, it does

23   not try to suggest what an appropriate sample size is.

24   Q.   Okay.

25   A.   It recognizes that you got some flexibility there.

```
 1    Q.    Okay.

 2    A.    I, I've seen --- like I said, it's a multiple

 3    choice ---

 4    Q.    Okay.

 5    A.    --- prospect.

 6    Q.    And I'm sorry to ask this.  But in a False Claims

 7    Act situation, do you know ---

 8                   ATTORNEY GODLEWSKI:

 9                   Objection as to form.

10    BY ATTORNEY FOWLER:

11    Q.    --- if any of these methods of estimating damages

12    has been used?

13    A.    I can't say, I'm sorry.

14    Q.    Okay.

15    A.    I, I live in a very small world, okay, my box is

16    tiny.

17    Q.    And I appreciate your explanation in these

18    numbers.  You provided some supporting documents.

19         Is there anything in those supporting documents

20    that relates to these calculations on pages 11 and 12

21    for your opinion number 10?

22    A.    In the stuff that's been ---?

23    Q.    Right.  In the documents --- the supplemental

24    documents that you've provided?

25    A.    Not completely.
```

1    Q.   Can you provide supplemental documents ---

2    A.   Sure, ---

3    Q.   --- in support of those calculations?

4    A.   --- sure.

5    Q.   Do you have those calculations?

6    A.   Yeah.

7    Q.   I'm assuming you --- you would have ---

8    A.   Yeah, ---

9    Q.   --- held those?

10   A.   --- sure.

11   Q.   Okay.

12   A.   You're going to send me a laundry list.

13        Right?

14        You're going to send me a laundry list?

15             ATTORNEY GODLEWSKI:

16             Yeah.

17             THE WITNESS:

18             Oh, joy.  I love going to the grocery

19   store.

20             COURT REPORTER:

21             Can you hold on one second?

22                        ---

23   (WHEREUPON, AN OFF RECORD DISCUSSION WAS HELD.)

24                        ---

25   BY ATTORNEY FOWLER:

Page 264

1   Q.   Let's go to opinion 11.  SGS asserts but did not
2   achieve MPIM compliance.
3        Tell me why SGS did not achieve MM compliance in
4   your view?
5   A.   Okay.
6   Q.   The short version.
7   A.   For the reasons listed here.  The primary issue
8   is, an absence of criteria rationale or documentation
9   about policy, procedure and process to move from the
10  National Claims Database to the sample.  And then as I
11  referenced, consideration of two-tail and alternate
12  methods of extrapolation.  I had issues with the
13  definition of the universe.  I have to accept the
14  universe at face value.
15       Generally, there would be a set of procedures that
16  one would be able to apply to the database to produce
17  the universe, that's not here.  The same thing is true
18  to get from the universe to the Sampling Frame and
19  ultimately to the sample.
20  Q.   Can you provide specific citations where PIM is
21  violated?  And there are some references in the report
22  that are specific.  So would they all be included in
23  your expert report?
24  A.   Yes.  The primary thing here --- just a minute.
25       Yeah, I mean, if you really want to, we can

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 23 of 26

1    National Claims Database.  There are massive holes in

2    the documentation, and the criteria, and the rationale

3    and the process.

4    Q.   And it's your opinion, because of those holes that

5    you believe are there, that ---

6                    ATTORNEY GODLEWSKI:

7                    Objection to characterizing his opinion.

8    BY ATTORNEY FOWLER:

9    Q.   --- that extrapolation is invalid because of those

10   holes?

11   A.   It could be.

12   Q.   Okay.

13   A.   It could be.  I'm not making a positive statement.

14   I can't do that.

15   Q.   Okay.

16       Let's go to your opinion 12, evidence of

17   assessment of data reliability is absent.  So tell me

18   why the evidence of assessment of data reliability is

19   absent in your opinion.

20   A.   So --- let me try and give you an executive

21   summary of this.

22   Q.   Thank you.

23   A.   So there is a publication by the GAO called The

24   Gray Book, which says, quote, you should assess

25   reliability if the data to be analyzed are intended to

Page 285

1     A.    Thank you.  Number four, there is reference made

2     to the applicability and compliance --- applicability

3     of and compliance with sampling standards despite the

4     fact that the only set --- only thing that rises to the

5     level of standards is the AICPA sampling publication as

6     put out by the Accounting Standards Board.  Number

7     five, the point estimate can't be used because it was

8     in sufficient precision achieved in order to use the

9     point estimate and we have zero confidence in the point

10    estimate.  Number six ---.

11    Q.    Actually, I'm going to call that 5a, if precision

12    is ignored because you didn't have a heading for that.

13    A.    Oh, okay.

14    Q.    I'll just keep the same numbering.

15    A.    Okay.

16    Q.    So 5a, if a precision is ignored, tell me that

17    because that was not one of your headings earlier.

18    A.    Right, right.  That comes straight from the AICPA.

19    It's either 350 or 530.  It should be referenced in

20    here.  If you ignore the precision, the sample is by

21    definition nonstatistical and cannot be projected.  Let

22    me double check that real quick because I'm pretty sure

23    I sourced that.  Just a minute.  Okay, that needs to be

24    sourced because AICPA absolutely says that.  So I'm

25    sorry, Counselor please put that on the list.

Veritext Legal Solutions
800.743.DEPO (3376)    calendar-carolinas@veritext.com    www.veritext.com
Case 5:19-cv-00512-BO-RJ    Document 90-2    Filed 06/11/25    Page 25 of 26

1   Q.   Okay.

2        So you'll provide a source for 5a?

3   A.   Yes, absolutely.  I'm sorry.

4   Q.   Okay.

5        Number six, the precision of extrapolation is

6   incorrectly calculated.

7   A.   That really has to do with T-value versus Z-value

8   and then one-tail versus two-tail.

9   Q.   And does that relate to bias, prejudice,

10  insufficient, or any of those other ---?

11  A.   Yes.

12  Q.   Let's go to seven, extrapolation method used is

13  not the method asserted.

14  A.   That has to do with the difference between some of

15  the disclosures talking about an error rate and then

16  the fact that a mean --- an average dollar value in

17  error was used in the extrapolation.  There are

18  multiple numbers in play to tell us what's happening.

19  Q.   Number eight, the extrapolation method used is

20  wholly inappropriate.  Which of those adjectives ---?

21  A.   That's one-tail versus two-tail and that's

22  presidential --- prejudicial, inappropriate and

23  unreasonable.

24  Q.   Okay.

25       The next I think is nine, extrapolation method

Veritext Legal Solutions
800.743.DEPO (3376)      calendar-carolinas@veritext.com      www.veritext.com
Case 5:19-cv-00512-BO-RJ      Document 90-2      Filed 06/11/25      Page 26 of 26